**Oral Argument Scheduled December 9, 2025**
**No. 25-5320**

---

# In the United States Court of Appeals
# for the District of Columbia Circuit

---

MAKE THE ROAD NEW YORK, *et al.*,

*Plaintiffs - Appellees*,

v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security,
in her official capacity, *et al.*,

*Defendants - Appellants*,

---

On Appeal from the United States District Court for the District of Columbia
Case No. 1:25-cv-00190-JMC, Honorable Jia M. Cobb, District Judge

---

**CORRECTED BRIEF OF *AMICUS CURIAE* FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-APPELLEES AND REVERSAL OF THE DISTRICT COURT'S JUDGMENT**

---

CHRISTOPHER J. HAJEC
*Counsel of Record*
MATT A. CRAPO
DAVID L. JAROSLAV
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 232-5590
chajec@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, *amicus curiae*

Federation for American Immigration Reform makes the following disclosures:

1)      For non-governmental corporate parties please list all parent

corporations: None.

2)      For non-governmental corporate parties please list all publicly held

companies that hold 10% or more of the party's stock: None.

3)      The following entity has an interest in the outcome of this case:

Federation for American Immigration Reform.

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ......................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ................................................1

SUMMARY OF ARGUMENT .................................................................................2

ARGUMENT ............................................................................................................3

    I.     The district court lacked jurisdiction over Plaintiffs' INA and
          constitutional claims .....................................................................................3

    II.    Plaintiffs identify no legally protected liberty interest other than a vague
          right to procedural due process under the Fifth Amendment ...................13

    III.   Even if Plaintiffs could point to a legally protected liberty interest,
          Congress has provided ample procedural protections in the expedited
          removal statute itself ..................................................................................18

CONCLUSION ......................................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## CASES

*American Immigration Lawyers Ass'n v. Reno*,
  18 F. Supp. 2d 38 (D.D.C. 1998) .......................................................6, 7

*American Immigration Lawyers Ass'n v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) ................................................... 6, 12

*Board of Regents v. Roth*,
  408 U.S. 564 (1972)..................................................................14, 15

*Coal. for Humane Immigrant Rights v. Noem*,
  2025 U.S. Dist. LEXIS 148615 (D.D.C. Aug. 1, 2025) ....................................12

*Den ex dem. Murray v. Hoboken Land & Improv. Co.*,
  59 U.S. (18 How.) 272 (1855) ......................................................19, 20

*Dept. of State v. Muñoz*,
  602 U.S. 899 (2024)........................................................14, 15, 16, 19

*DHS v. Thuraissigiam*,
  591 U.S. 103 (2020)..................................................................17, 20

*District Attorney's Office v. Osborne*,
  557 U.S. 52 (2009)...................................................................13, 14

*FCC v. Pottsville Broadcasting Co.*,
  309 U.S. 134 (1940).......................................................................22

*Fiallo v. Bell*,
  430 U.S. 787 (1972).......................................................................16

*Foster v. United States*,
  303 U.S. 118 (1938).......................................................................13

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952)..........................................................................16

*iTech U.S., Inc. v. Renaud*,
   5 F.4th 59 (D.C. Cir. 2021) ...............................................................9

*Kentucky Dept. of Corrections v. Thompson*,
   490 U.S. 454 (1989)..........................................................................14

*Kerry v. Din*,
   576 U.S. 86 (2015).............................................................................19

*Landon v. Plasencia*,
   459 U.S. 21 (1982).......................................................................15, 21

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).....................................................................22, 23

*Make the Rd. N.Y. v. McAleenan*,
   405 F. Supp. 3d 1 (D.D.C. 2019) .......................................................9

*Make the Rd. N.Y. v. Noem*,
   2025 U.S. Dist. LEXIS 169432 (D.D.C. Aug. 29, 2025) .......12, 18, 22

*Make the Rd. N.Y. v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020) .......................................................9, 12

*Nishimura Ekiu v. United States*,
   142 U.S. 651 (1892)......................................................................16, 20

*Roberts v. United States*,
   741 F.3d 152 (D.C. Cir. 2014) .........................................................14

*Shaughnessy v. United States ex rel. Mezei*,
   345 U.S. 206 (1953)..........................................................................21

*Trump v. J.G.G.*,
   604 U.S. 670 (2025)..........................................................................18

*United States v. Baraja-Alvarado*,
  655 F.3d 1077 (9th Cir. 2011) .......................................................................7

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950).....................................................................................20

*Washington v. Glucksberg*,
  521 U.S. 702 (1997).....................................................................................14

*Zadvydas v. Davis*,
  533 U.S. 678 (2001).....................................................................................21

## STATUTES

Immigration and Nationality Act,
  Pub. L. No. 82-414, 66 Stat. 163 (1952) .............................................15

Illegal Immigration Reform and Immigrant Responsibility Act,
  Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) ................................6

Magna Carta 1215, cl. 39 ...............................................................................19

8 U.S.C. § 1182(a)(6)(c) ................................................................................17

8 U.S.C. § 1182(a)(7) ....................................................................................17

8 U.S.C. § 1225(a)(1)...............................................................................17, 21

8 U.S.C. § 1225(a)(3)...............................................................................17, 21

8 U.S.C. § 1225(b)(1)..........................................................................4, 5, 6, 17

8 U.S.C. § 1225(b)(1)(A)(i)......................................................................7, 17

8 U.S.C. § 1225(b)(1)(A)(iii)(I).............................................................3, 17

8 U.S.C. § 1225(b)(1)(A)(iii)(II)....................................................4, 5, 8, 17

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ................................................................22

8 U.S.C. § 1252(a)(2)(A)(ii)-(iv) ...............................................................4, 10

8 U.S.C. § 1252(a)(2)(B)(ii) ...........................................................................9

8 U.S.C. § 1252(e)(3)(A) .................................................................................5

8 U.S.C. § 1252(e)(3)(A)(ii) ............................................................................5

8 U.S.C. § 1252(e)(3)(B) ....................................................................5, 11, 13

28 U.S.C. § 1331 .............................................................................................4

## REGULATIONS

8 C.F.R. § 235.3(b)(1)(ii) ...........................................................................6, 8

8 C.F.R. § 235.3(b)(2) .....................................................................................7

8 C.F.R. § 235.3(b)(2)(i) ...............................................................................21

8 C.F.R. § 235.3(b)(4) .....................................................................................7

8 C.F.R. § 235.3(b)(5) .....................................................................................7

8 C.F.R. § 235.3(b)(7) ...............................................................................7, 21

8 C.F.R. § 1003.42(d)....................................................................................22

8 C.F.R. § 1208.30(g).....................................................................................22

## CONSTITUTIONAL PROVISIONS

U.S. CONST., amend. V ...............................................................................19

## MISCELLANEOUS

H.R. Conf. Rep. No. 104-828 (1996)................................................................3

Exec. Order No. 13767, Border Security and Immigration Enforcement
    Improvements, 82 Fed. Reg. 8793 (Jan. 30, 2017)...................................................8

Eliminating Exception to Expedited Removal Authority for Cuban Nationals
    Encountered in the United States or Arriving by Sea,
    82 Fed. Reg. 4902 (Jan. 17, 2017).......................................................................9

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens;
    Conduct of Removal Proceedings; Asylum Procedures;
    62 Fed. Reg. 10312 (Mar. 6, 1997)..............................................................6, 7, 8

Notice Designating Aliens Subject to Expedited Removal Under Section
    235(b)(1)(A)(iii) of the Immigration and Nationality Act,
    67 Fed. Reg. 68924 (Nov. 13, 2002)....................................................................8

Notice Designating Aliens for Expedited Removal,
    69 Fed. Reg. 48877 (Aug. 11, 2004) ....................................................................8

Notice Designating Aliens for Expedited Removal,
    84 Fed. Reg. 35409 (July 23, 2019)......................................................................8

Notice Designating Aliens for Expedited Removal,
    90 Fed. Reg. 8139 (Jan. 24, 2025)................................................................10, 11

Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited
    Removal, 87 Fed. Reg. 16022 (March 21, 2022) ................................................10

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a non-profit 501(c)(3) public interest organization dedicated to informing the public about the effects of both unlawful and lawful immigration, and to defending in court the interests of Americans in limiting overall immigration, enhancing border security, and ending illegal immigration. FAIR has been involved in more than 100 legal cases since 1980, either as a party or as *amicus curiae*. The decision in this case will likely have an impact on the ability of the executive branch of the federal government to identify and deal efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people. *Amicus* FAIR therefore has direct and vital interests in the outcome of this case.

Also, in early August, FAIR integrated the litigation and investigations programs of its supporting organization Immigration Reform Law Institute (IRLI).[2] Prior to FAIR's acquisition, IRLI appeared as *amicus curiae* and filed multiple *amicus* briefs in the district court proceedings that are the subject of this appeal.

---

[1] All parties have consented to the filing of this brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

[2] *See* FAIR Press Release, "FAIR Expands Its Impact by Adding Litigation and Investigations Divisions," August 20, 2025, https://www.fairus.org/press-release/fair-irli-merger-litigation-and-investigations (last visited Oct. 22, 2025).

## SUMMARY OF ARGUMENT

Congress has conferred upon the Secretary of Homeland Security the "sole and unreviewable discretion" to designate certain classes of aliens to be subject to expedited removal procedures. Congress has further provided that any challenge to such a designation must be initiated within 60 days of the date on which it is first implemented. The Secretary first expanded expedited removal to its statutory limits in 2019. Although the expansion decision was challenged within the requisite 60-day jurisdictional period, that challenge was unsuccessful.

Here, Plaintiffs challenge the Secretary's 2025 decision to reinstitute the 2019 expansion of expedited removal. But reinstating an expedited removal designation does not restart the 60-day window in which to seek redress in court. Instead, the statute provides that a district court only retains jurisdiction to review expedited removal procedures when they are first implemented. Because the action challenged here merely reinstates a prior expansion of expedited removal, Plaintiffs' challenge is untimely and should have been dismissed by the district court for lack of jurisdiction.

As for the merits, to show a likelihood of success in their due process claim, Plaintiffs must allege a legally protectable liberty interest, and that interest must be rooted in something more than the Fifth Amendment's Due Process Clause itself. Plaintiffs must, instead, identify some specific substantive liberty interest protected

by either the Constitution or statute. Here, Plaintiffs failed to do so, and their due process claims are therefore likely to fail.

Even assuming Plaintiffs were able to show that they have a protected liberty interest at stake, the procedures established by Congress for expedited removal comport with due process under the Fifth Amendment. Under the expedited removal process, aliens have the opportunity to make their case before an immigration officer, and that officer's supervisor must approve the removal decision. If the alien is dissatisfied, he or she may appeal that adverse decision to an immigration judge who will review the case de novo. This process, established by Congress, comports with due process under the Fifth Amendment.

## ARGUMENT

### I.   The district court lacked jurisdiction over Plaintiffs' INA and constitutional claims

In unequivocal language, Congress delegated discretionary authority to the Secretary of Homeland Security to invoke and implement expedited removal procedures against a designated "subclause II" class of aliens.[3] 8 U.S.C. § 1225(b)(1)(A)(iii)(I) ("Such designation shall be in the *sole and unreviewable*

---

[3] The purpose of the expedited removal procedure is "to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted …, while providing an opportunity for such an alien who claims asylum to have the merits of his or her claim promptly assessed by officers with full professional training in adjudicating asylum claims." H.R. Conf. Rep. No. 104-828, at 209 (1996).

*discretion* of the [Secretary] and may be modified at any time.") (emphasis added). Subclause II aliens are those who are "not admitted or paroled into the United States," and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" made under "this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Using the phrase "notwithstanding any other provision of law"—which by its own terms includes both APA jurisdiction and general federal question jurisdiction under 28 U.S.C. § 1331—Congress also stripped the courts of jurisdiction to review, inter alia, "a decision" by the Secretary "to invoke the provisions" of the expedited removal statute; "the procedures and policies adopted by the [Secretary] to implement the provisions of" 8 U.S.C. § 1225(b)(1); or the "application of such section to individual aliens." 8 U.S.C. § 1252(a)(2)(A)(ii)-(iv). For each of these three jurisdiction-stripping subclauses, Congress provided precise and limited exceptions, "except as provided in subsection [8 U.S.C. § 1252](e)." Under subsection (e), review is narrowly available for "determinations under section [1225](b) and its implementation…." 8 U.S.C. § 1252(e)(3)(A).

As relevant here, the exceptions include restrictions (1) on venue (U.S. District Court for the District of Columbia), *id.*; (2) on subject matter ("whether … a regulation, or a written policy directive, or … written procedure issued … to

implement [section 1225(b)(1)] is unconstitutional; or … not consistent with the applicable provisions of this title or is otherwise in violation of law"), § 1252(e)(3)(A)(ii); and (3) a jurisdictional limitation on the time for filing a challenge ("no later than 60 days after the date the challenged … regulation, directive, … or procedure … *is first implemented*"), § 1252(e)(3)(B) (emphasis added).

Congress directed that unless the jurisdictional venue, subject matter, and time limitation conditions of 8 U.S.C. § 1252(e)(3) are met, no court may "enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) …." 8 U.S.C. § 1252(e)(1)(A). Absent notice by the Secretary of Homeland Security that expedited removal procedures will be applied to all aliens described in § 1225(b)(1)(A)(iii)(II), no such alien could ever be ordered removed under 8 U.S.C. § 1225(b)(1). The text "any action pertaining to an [expedited removal] order" thus clearly encompasses implementation of such notices, including the agency action challenged by the Plaintiffs.

The 60-day time limitation at 8 U.S.C. § 1252(e)(3)(B) is jurisdictional and not a statute of limitations. "Congress designed the statute so that the 60 days ran from a fixed point, the initial implementation of the challenged provisions, rather than from the date of application of IIRIRA to a particular alien." *American*

*Immigration Lawyers Assn. v. Reno*, 18 F. Supp. 2d 38, 46-47 (D.D.C. 1998), *aff'd* 199 F.3d 1352 (D.C. Cir. 2000) ("*AILA*").

For more than a generation, the agency has progressively implemented expedited removal for subclause II aliens by publishing notices in the Federal Register. First, the expedited removal statute was implemented in 1996. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, § 302(a) (1996). Next, final regulations implementing 8 U.S.C. § 1225(b)(1) were published in 1997. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures; 62 Fed. Reg. 10312 (Mar. 6, 1997). The Attorney General implemented these regulations only after conducting full and proper APA notice-and-comment procedures. The constitutionality and legality of the expedited removal statute and its implementing regulations was upheld long ago by the D.C. Circuit in *AILA*, 199 F.3d 1352 (D.C. Cir. 2000).

The 1997 regulations continue to govern all aspects of expedited removal. Part 235 "regulate[s] how the inspecting officer is to determine the validity of travel documents, how the officer should provide information to and obtain information from the alien, and how and when an expedited removal order should be reviewed." *AILA*, 18 F. Supp. 2d at 43. *See, e.g.*, 8 C.F.R. § 235.3(b)(1)(ii) (delegating sole discretion to apply expedited removal procedures at any time to

any class of aliens described in "subclause II," effective upon publication of a notice in the Federal Register); 8 C.F.R. § 235.3(b)(2) (requiring that an examining immigration officer create a record of the proceedings, inform the alien of due process rights, solicit and record the alien's responses to questions as to status and inadmissibility, and serve a Notice and Order of Expedited Removal); 8 C.F.R. § 235.3(b)(4) (providing for mandatory diversion for credible fear screening); 8 C.F.R. § 235.3(b)(5) (adding review procedures if U.S. citizen, lawful permanent resident, or asylee status is claimed); and 8 C.F.R. § 235.3(b)(7) (requiring concurrence of supervising officer to issue order). Section 235.3 specifies the record an immigration officer must create during the expedited removal process and the advisements that the officer must give to individuals subject to expedited removal. *United States v. Baraja-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011). This Circuit recognizes these regulations as the "implementing regulations" for the expedited removal system. *See AILA*, 18 F. Supp. 2d at 43-45.

Attorney General Janet Reno initially exercised her discretion to apply expedited removal only to the mandatory class of "arriving aliens" seeking entry into the United States. 8 U.S.C. § 1225(b)(1)(A)(i). The 1997 regulations, however, expressly reserved the agency's right "to apply the expedited removal procedures to additional classes of aliens within the limits set by the statute, if, in the Commissioner's discretion, such action is operationally warranted." 62 Fed. Reg.

at 10314. Attorney General Reno chose not to apply the screening to any subclause II aliens due to uncertainty at that time about the agency's operational capabilities and resources. *Id.* at 10312-13.

On January 25, 2017, President Trump signed an Executive Order directing the Secretary of Homeland Security to apply expedited removal to "all" aliens described in subclause II who had not already been designated for such screening. *See* Exec. Order No. 13767, Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8793 (published Jan. 30, 2017) ("Executive Order"). On July 23, 2019, pursuant to the Executive Order and 8 C.F.R. § 235.3(b)(1)(ii), a notice was published in the Federal Register designating as subject to expedited removal all remaining subclass II aliens described in 8 U.S.C. § 1225(b)(1)(A)(iii)(II) who were "not previously designated" in 2002, 2004, or 2017.[4] *See* Notice Designating Aliens for Expedited Removal, 84 Fed. Reg. 35409

---

[4] In 2002, the agency applied expedited removal screening for aliens who arrived by sea, were not admitted or paroled, and, prior to a determination of inadmissibility by an immigration officer, had not been continuously physically present in the United States for two years. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68925-26 (Nov. 13, 2002). In 2004, the government again expanded the use of expedited removal to subclause II aliens encountered by an immigration officer within 100 air miles of a land border who fail to establish to the satisfaction of an immigration officer that they had been continuously physically present in the United States for 14 days. *See* Notice Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877 (Aug. 11, 2004). In 2017, the acting Secretary exercised her discretion to eliminate an existing exemption—for subclause II aliens who were Cuban nationals—from the

(July 23, 2019). This 2019 designation expanded the class of aliens subject to the statutory limit.

Various plaintiffs, including some of the very same plaintiffs in this case, timely challenged the 2019 designation of all subclause II aliens, and the district court granted a preliminary injunction. *See generally Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1 (D.D.C. 2019). The D.C. Circuit reversed, however, holding that there is "no cause of action under the APA to scrutinize the Secretary's designation decision so long as it falls within statutory and constitutional bounds." *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020).[5] Following remand,

---

expedited removal screening designations implemented by the 2002 and 2004 Federal Register notices. *See* Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea, 82 Fed. Reg. 4902 (Jan. 17, 2017).

[5] The *Make the Road* Court declined to read 8 U.S.C. § 1252(a)(2)(B)(ii) as preventing judicial review of the Secretary's discretionary expansion of expedited removal. *Make the Rd. N.Y. v. Wolf*. 962 F.3d at 630 ("In short, the statutory text, confirmed by the Supreme Court's holding in *Kucana* and reaffirmed in *Nasrallah*, focuses Clause (ii)'s bar on individualized forms of discretionary relief from removal or exclusion, which is not the type of generally applicable rulemaking governing removal *procedures* undertaken by the Secretary in this case") (emphasis in original); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii) (stripping courts of jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority of which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security"). The Court's holding in *Make the Road* with respect to the jurisdictional bar at § 1252(a)(2)(B)(ii) is on shaky ground. While the *Make the Road* Court read "Clause (ii)'s bar" as being focused "on individualized forms of discretionary relief from removal or exclusion," 962 F.3d at 630, this Court has subsequently declared that clause (ii) "is not a narrowly cabined provision" limited to denials of discretionary relief. *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 64 (D.C.

the plaintiffs voluntarily dismissed their case shortly after the 2019 designation was rescinded. *See* Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal, 87 Fed. Reg. 16022 (March 21, 2022); *see also Make the Rd. N.Y. v. McAleenan*, No. 1:19-cv-02369, Docket entry 91 (D.D.C. June 3, 2022).

On January 24, 2025, the second Trump Administration again designated all subclause II aliens as being subject to expedited removal. *See* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Plaintiffs in this case filed their Complaint the day after the 2025 designation became effective. Again, Congress has clearly stated that no court shall have jurisdiction to review, *inter alia*, "a decision" by the Secretary "to invoke the provisions" of the expedited removal statute; "the procedures and policies adopted by the [Secretary] to implement the provisions of" 8 U.S.C. § 1225(b)(1); or the "application of such section to individual aliens." 8 U.S.C. § 1252(a)(2)(A)(ii)-(iv). For each of these jurisdiction-stripping subclauses, Congress only allowed exceptions "as provided in subsection (e)." *Id*. Most relevant here is subsection (e)'s 60-day jurisdictional time limitation, which permits the filing of a challenge "no later than 60 days after

---

Cir. 2021); *see also id.* at 65 ("[I]f Congress intended 'any other decision or action' to be limited to those actions 'regarding the granting of relief,' it either would have said so in the relevant portion of clause (ii), or left out the limiting language in clause (i).").

the date the challenged … regulation, directive, … or procedure … is *first implemented*." 8 U.S.C. § 1252(e)(3)(B) (emphasis added).

There is no dispute that full expansion of expedited removal, or the designation of all subclause II aliens for expedited removal procedures, was first implemented on July 23, 2019. *See* 84 Fed. Reg. at 35411 (describing the 2019 designation as "[f]ully exercising DHS's statutory expedited removal authority"). And the 2025 Notice simply reinstated the 2019 designation. See 90 Fed. Reg. 8139 ("[T]he intended effect of this notice is to apply expedited removal to the fullest extent authorized by statute").

The 60-day jurisdictional deadline for challenging the Secretary's discretionary decision to apply expedited removal procedures to all subclause II aliens runs from the 2019 designation because that is when that policy choice was "first implemented." The 2025 Notice cannot and did not restart the jurisdictional 60-day time window for challenging that discretionary policy choice because the 2025 Notice merely reinstated the 2019 designation. In other words, to the extent that the 2025 Notice is an implementation of this policy choice, it is not its "first implement[ation]." The challenge Plaintiffs brought before the district court was therefore untimely and should have been dismissed for lack of jurisdiction.

In sum, the 1996 expedited removal statute and the 1997 regulations were the final government actions that first "implemented" virtually all aspects of

11

expedited removal procedures, and the constitutionality and legality of the statute and its implementing regulations were upheld by the D.C. Circuit in *AILA*, 199 F.3d 1352 (D.C. Cir. 2000). The 60-day jurisdictional deadline passed for challenging the Secretary's discretionary decision to apply expedited removal procedures to all subclause II aliens in September 2019, and the challenge to that first implementation of expedited removal to that class of aliens was unsuccessful. *See Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020). Congress restricted the courts' jurisdiction to review only the first implementation of any expedited removal policy choice. Because the 2025 Notice challenged here reinstates a prior, unsuccessfully challenged, designation or policy choice, Plaintiffs' challenge was untimely and the district court lacked jurisdiction over this case, on which basis the district court should have dismissed Plaintiffs' suit.

The district court essentially glossed over this jurisdictional bar by briefly referring to "a slew of barriers" raised by the government, *Make the Rd. N.Y. v. Noem*, 2025 U.S. Dist. LEXIS 169432 (D.D.C. Aug. 29, 2025) at *29, and then distinguished a stay of agency action from injunctive relief.[6] The district court

---

[6] The district court's incorporation of its reasoning in *Coal. for Humane Immigrant Rights v. Noem*, 2025 U.S. Dist. LEXIS 148615 (Aug. 1, 2025), is to no avail. In that case, the district court observed that "the Challenged Actions have had effects independent of the preexisting 1997 regulation and cannot be understood merely to restate that regulation." *Id.* at *57. Whereas here, there is no question that the challenged designation is precisely reinstating the 2019 statutory-limit designation.

erred by failing adequately to address the time limitation in 8 U.S.C.

§ 1252(e)(3)(B). *See Foster v. United States*, 303 U.S. 118, 120 (1938) ("Courts

should construe laws in harmony with the legislative intent and seek to carry out

legislative purpose.").

## II.     Plaintiffs identify no legally protected liberty interest other than a vague right to procedural due process under the Fifth Amendment

Plaintiffs point to no specific liberty interest other than a vague Fifth

Amendment right to Due Process. JA-383 at ¶¶ 107-108, JA-120, 122-24. Because

they claim "no specific constitutional guarantee safeguarding" a specific

recognized liberty interest, they are unlikely to succeed on their due process

claims. *District Attorney's Office v. Osborne*, 557 U.S. 52, 67 (2009) (observing in

a Fourteenth Amendment case that "[p]rocess is not an end in itself, so a necessary

premise of this argument is that he has an entitlement (what our precedents call a

'liberty interest') … to determine what process (if any) is due"); *accord*, *Paul v.

Davis*, 424 U.S. 693, 700 (1976) (discussing Fourteenth Amendment Due Process

Clause).

The Supreme Court has pointed out that "the procedural guarantees of the

Due Process Clause cannot be the source" of a legally protected liberty interest.

*Paul*, 424 U.S. at 701. Where plaintiffs claim a liberty interest and rest that claim

solely in procedural due process, their claim must fail. To succeed, they must

articulate some liberty interest guaranteed either by law or the Constitution. *See*

13

*District Attorney's Office*, 557 U.S. at 67; *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014). *See also, e.g., Dept. of State v. Muñoz*, 602 U.S. 899, 908-09 (2024) (noting that a U.S. citizen plaintiff alleged that she had a "fundamental right to live with her spouse in her country of citizenship"). Thus, in evaluating procedural due process claims, courts ask two questions: 1) whether plaintiffs possess a liberty or property interest that has been interfered with by the government; and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).[7]

To "have a [protected] interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). While *Board of Regents* addresses a property rather than a liberty interest, the logic is instructive. The Court determined that a plaintiff must have a "legitimate claim of entitlement" to a

---

[7]  For substantive due process, on the other hand, the two factors are:

(1) Whether the Due Process Clause of the Fourteenth Amendment "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition;" and

(2) A "careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997).

14

benefit before constitutional protections apply. A "unilateral expectation" is

insufficient to create a liberty interest for purposes of procedural due process.

Plaintiffs appear to suggest that they have a liberty interest in avoiding removal.

JA-120. But the Supreme Court has expressly rejected the existence of such an

interest. *See, e.g., Muñoz*, 602 U.S. at 912. Indeed, Plaintiffs cannot derive a

"right" not to be removed from the country from either statute or the Constitution.

Congress, when enacting the Immigration and Nationality Act (INA), Pub. L. No.

82-414, 66 Stat. 163 (1952), codified, as amended, at 8 U.S.C. §§ 1101, *et seq.*,

ensured that Plaintiffs lack any "legitimate [statutory] claim of entitlement" to

remaining in this country. *See Board of Regents*, 408 U.S. at 577 (requiring that

plaintiffs must have more than an abstract need, desire for, or even unilateral

expectation of a right). The expedited removal process described in 8 U.S.C.

§ 1225(b), moreover, itself establishes that certain classes of aliens, including

Plaintiffs here, may be lawfully removed under that streamlined process. In a word,

Congress has accorded Plaintiffs no "right" to remain, or liberty interest in

remaining, in the country.

   Nor does the Constitution give Plaintiffs such a right or liberty interest.

Rather, under the Constitution, the government's authority to admit or exclude

aliens is a "sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

Aliens, especially those in the country illegally, thus cannot have any constitutional

right to remain; rather, Congress's prerogative—which it has exercised by thoroughly regulating the field of immigration, placing conditions on aliens' remaining, and providing for the removal, and even expedited removal, of certain aliens—demonstrates its absence. *See Muñoz*, 602 U.S. at 907 (reciting Congress's authority over immigration and deferring to Congress's pronouncements regarding admission or exclusion of aliens); *Fiallo v. Bell*, 430 U.S. 787, 792 (1972)("Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control" (citations omitted)).

Congress, moreover, has delegated "to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" *Muñoz*, 602 U.S. at 907 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-91 (1952). When Congress, acting within its constitutional authority, delegates the responsibility to investigate and determine whether an alien is admissible to an official within the Executive, that official "is made the sole and exclusive judge of the existence of those facts." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892).

When Congress and the Attorney General crafted the expedited removal process in the late 1990s, they ensured that certain illegal aliens lacked "a legitimate claim of entitlement" to their continued presence in the United States.

16

First, Congress has statutorily determined that any alien, whether crossing through a port of entry or not, remains an applicant for admission, a status requiring inspection by an immigration officer. *See* 8 U.S.C. §§ 1225(a)(1), 1225(a)(3); *DHS v. Thuraissigiam*, 591 U.S. 103, 108-109 (2020). Second, the expedited removal process applies only to those aliens who (1) have not been admitted or paroled into the United States and (2) have been here less than 2 years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Third, to qualify for expedited removal, the alien must be someone who "by fraud of willfully misrepresenting a material fact, seeks to procure… a visa, other documentation, or admission into the United States" or who "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality…" 8 U.S.C.§§ 1182(a)(6)(c), 1182(a)(7). Fourth, Congress delegated complete discretionary authority to the Secretary of Homeland Security to invoke and implement expedited removal procedures against the aliens described in 8 U.S.C. § 1225(b)(1)(A)(i), (ii) and 8 U.S.C. § 1225(b)(1)(A)(iii)(II). *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I).

With that statutory regime in place, those in the country illegally for less than two years lack the requisite "legitimate claim of entitlement" to non-removal necessary to create a liberty interest to maintain their procedural due process

17

claims. Accordingly, Plaintiffs cannot demonstrate any likelihood of success on their due process claims, and the district court should have denied their motion to postpone agency action for that reason alone.

In accepting Plaintiffs' arguments, moreover, the district court turned the Fifth Amendment on its head. The district court in essence took the logical leap from the proposition that the Fifth Amendment protects due process in general, *see, e.g., Make the Rd. N.Y. v. Noem*, 2025 U.S. Dist. LEXIS 169432 at *39 (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) for the proposition that "the Fifth Amendment entitles aliens to due process of law") to concluding that these Plaintiffs in particular have shown they have a specific identifiable legally protected liberty interest in remaining in the United States, when they have not. Because Plaintiffs fail to identify a protected liberty interest at stake, they cannot establish any likelihood of success.

### III.   Even if Plaintiffs could point to a legally protected liberty interest, Congress has provided ample procedural protections in the expedited removal statute itself

While the Plaintiffs cannot establish that they have a liberty interest sufficient to trigger procedural due process protections, assuming, *arguendo*, that they are due some measure of procedural protection, the expedited removal process is sufficient to satisfy the Fifth Amendment.

18

The Fifth Amendment provides that the government may not deprive anyone "of life, liberty, or property, without due process of law." U.S. CONST., amend. V; *see also Muñoz*, 602 U.S. at 909-910 (2024). Discussing the history of the concept of procedural due process, the Court in *Den ex dem. Murray v. Hoboken Land & Improv. Co.*, 59 U.S. (18 How.) 272 (1855) noted that the words "were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in the Magna Charta." *Id.* at 276. Sir Edward Coke "thoroughly described the scope of interests that could be deprived only pursuant to 'the law of the land.'" *Kerry v. Din*, 576 U.S. 86, 91 (2015). Similarly, Sir William Blackstone discussed procedural due process "in terms closer to the 'life, liberty, or property' terminology used in the Fifth Amendment." *Id.* at 91-92. Prior to the Constitution's ratification, states largely adopted the text from Magna Carta, stating that they followed "the language of the great charter more closely, generally contain[ing] the words, 'but by the judgment of his peers, or the law of the land.'" *Murray*, 59 U.S. at 276.

Clause 39 of Magna Carta states in full: "No free man shall be seized, imprisoned, dispossessed, outlawed, exiled or ruined in any way, nor in any way proceeded against, except by the lawful judgement of his peers and the law of the land." Magna Carta 1215, cl. 39, The contents of Magna Carta, UK Parliament (translation from Latin), https://www.parliament.uk/about/living-

heritage/evolutionofparliament/originsofparliament/birthofparliament/overview/ma

gnacarta/magnacartaclauses/ (last visted Oct. 22, 2025). The *Murray* Court noted

that this same language was adopted by Congress in enacting the Northwest

Ordinance. *See* 59 U.S. at 276.

Procedural due process in the immigration context does not require hearings

before an Article III court. Instead, Congress may, through statute, imbue the

Executive Branch, and officials within the Executive Branch, with the ability to

administer due process. *See*, *e.g.*, *Thuraissigiam*, 591 U.S. at 138 ("[A]s to

'foreigners who have never been naturalized, nor acquired any domicil or

residence within the United States, nor even been admitted into the country

pursuant to law,' 'the decisions of executive or administrative officers, acting

within powers expressly conferred by Congress, are due process of law.'" (quoting

*Nishimura Ekiu*, 142 U.S., at 660).

Second, the specific measure of due process is a sliding scale, in which the

amount of process due depends on how long an alien has been in the country.

Those seeking entry to the United States may be denied entry with few-to-no due

process rights. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542

(1950); *Nishimura Ekiu*, 142 U.S. at 660. Those who have lived in the country

more than a couple of years receive more in the way of traditional due process

because they may have "develop[ed] the ties that go with permanent residence."

*Landon*, 459 U.S. at 32. *See also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)

(observing that an alien detained shortly after unlawful entry not due the same due

process as "aliens who have once passed through our gates, even illegally");

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212-213 (1953) (holding

that an alien harbored at Ellis Island may be excluded without a hearing; but "a

lawful resident alien may not captiously be deprived of his constitutional rights to

procedural due process").

Congress, through the expedited removal statute, provided not only a

hearing before a trained immigration officer but included the opportunity to appeal

an adverse decision both to a supervisor and an impartial immigration judge. All

aliens must be interviewed by an immigration officer. Those who have entered the

country illegally are still, by law, not admitted and are considered "applicants for

admission." 8 U.S.C. § 1225(a)(1), (3). During that hearing, the immigration

officer must "advise the alien of the charges against him or her" and provide "an

opportunity to respond to those charges in [a] sworn statement." 8 C.F.R.

§ 235.3(b)(2)(i).

Once the immigration officer decides to order the alien removed, the

information—including the removal order, sworn statement, and any claims

concerning the alien's status—"must be reviewed and approved by the appropriate

supervisor before the order is considered final." 8 C.F.R. § 235.3(b)(7). If the alien

disagrees with the immigration officer's and supervisor's decisions, the alien may

pursue a review of the decisions by an immigration judge, which review must be

de novo. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(d) and

1208.30(g).

Congress has thus provided ample opportunity for aliens subject to

expedited removal to receive "meaningful notice and the opportunity to a fair

hearing before a neutral decisionmaker" prior to their actual removal. JA-120. That

is all procedural due process demands here. As the Supreme Court explained in

*Mathews v. Eldridge*, 424 U.S. 319 (1976), inappositely relied on by the district

court, *Make the Rd. N.Y. v. Noem*, 2025 U.S. Dist. LEXIS 169432 at *42-62:

> The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies "preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts." *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143 (1940). The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S., at 171-172 (Frankfurter, J., concurring). All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard," *Goldberg v. Kelly*, 397 U.S., at 268-269 (footnote omitted), to insure that they are given a meaningful opportunity to present their case.

*Mathews*, 424 U.S. at 348-49 (footnotes omitted). The expedited removal statute

gives those subject to expedited removal "a meaningful opportunity to present their

case." That is all due process requires.

## CONCLUSION

For the foregoing reasons the judgment of the district court should be

reversed.

Date: October 28, 2025                    Respectfully submitted,

                                          /s/ Christopher J. Hajec
                                          CHRISTOPHER J. HAJEC
                                          D.C. Bar No. 492551
                                          *Counsel of Record*
                                          MATT A. CRAPO
                                          D.C. Bar No. 473355
                                          DAVID L. JAROSLAV
                                          D.C. Bar No. 90021286
                                          *On the Brief*
                                          Federation for American Immigration Reform
                                          25 Massachusetts Ave., NW, Ste. 33
                                          Washington, DC 20001
                                          (202) 232-5590
                                          chajec@fairus.org
                                          mcrapo@fairus.org
                                          djaroslav@fairus.org

                                          Counsel for *Amicus Curiae*
                                          Federation for American Immigration Reform

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 27(d)(2) because it contains 5,497 words, as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

Date: October 28, 2025                Respectfully submitted,
                                                         /s/ Christopher J. Hajec

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of October 2025, I electronically filed the foregoing *amicus* brief with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the parties' counsel.

s/ Christopher Hajec