No. 25-05320

# United States Court of Appeals
## for the
## District of Columbia Circuit

_____

MAKE THE ROAD NEW YORK, et al.,

*Plaintiffs-Appellees*

v.

KRISTI NOEM, et al.,

*Defendants-Appellants*

_____

Appeal From the United States District Court for the District of Columbia
Case No. 1:25-cv-190-JMC (Hon. Jia M. Cobb)

_____

**APPELLEE'S OPPOSITION TO APPELLANTS' RENEWED
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

_____

Morgan Russell
Hannah Steinberg
Michael K.T. Tan
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*mrussell@aclu.org*
*hsteinberg@aclu.org*
*m.tan@aclu.org*
*cwofsy@aclu.org*

Lucia Goin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
(212) 549-2500
*lgoin@aclu.org*

Amy Belsher
Robert Hodgson
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

Anand Balakrishnan
*Counsel of Record*
Sidra Mahfooz
Grace Choi
Omar C. Jadwat
Lee Gelernt
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*smahfooz@aclu.org*
*gchoi@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Arthur B. Spitzer
Aditi Shah
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

All parties, intervenors, and amici appearing in this Court are listed in the Renewed Emergency Motion for Stay Pending Appeal.

I certify under Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 27(a)(4) that Plaintiff Make the Road New York has no parent corporations, and no publicly held company owns 10% or more of Plaintiff Make the Road New York.

### B. Rulings Under Review

References to the rulings at issue appear in the Renewed Emergency Motion for Stay Pending Appeal.

### C. Related Cases

All related cases are referenced in the Renewed Emergency Motion for Stay Pending Appeal.

/s/ Anand Balakrishnan
Anand Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
abalakrishnan@aclu.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................. 3

    I. Defendants Have Failed to Show an Abuse of Discretion ............................... 3

        A. Defendants' Latest Disclosure Reveals the Elimination of Bedrock Procedures for Identifying Asylum Seekers in Expedited Removal. .......... 4

        B. Defendants' Disclosures on Appeal Concerning Purported Procedures for Assessing Continuous Presence Raise Further Questions ...................... 9

        C. The Moving Target Defendants Have Presented Fails to Demonstrate that the District Court Abused Its Discretion. ............................................. 12

    II. The Court Should Deny A Stay Pending Appeal, Particularly Since Defendants' Latest Disclosure Only Strengthens Plaintiff's Due Process Claim. ........................................................................................... 15

CONCLUSION .......................................................................................... 20

CERTIFICATE OF COMPLIANCE ................................................................. 22

CERTIFICATE OF SERVICE ........................................................................ 23

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*A.A.R.P. v. Trump*,
   605 U.S. 91 (2025)..............................................................................2, 18

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004)..............................................................................14

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013)..............................................................*passim*

*Make the Rd. N.Y. v. Noem*,
   2025 WL 3563313 (D.C. Cir. Nov. 22, 2025)...........................................*passim*

*Mathew v. Eldridge*,
   424 U.S. 319 (1976)..............................................................................16

*Mullane v. Central Hanover Bank & Trust*,
   339 U.S. 306 (1950)..............................................................................16

*U.S. ex rel. Oliver v. Philip Morris USA Inc.*,
   763 F.3d 36 (D.C. Cir. 2014)..............................................................3, 12

*Red Earth LLC v. United States*,
   657 F.3d 138 (2d Cir. 2011) ..............................................................13

*Trump v. J.G.G.*,
   604 U.S. 670 (2025)..............................................................................18

**Statutes**

5 U.S.C. § 705.............................................................................................15

8 U.S.C. § 1252(f)(1) .................................................................................15

**Rules and Regulations**

8 C.F.R. § 235.3(b)(2)(i).......................................................................1, 6, 9, 17

62 Fed. Reg. 10,312 (Mar. 6, 1997)........................................................1, 5, 6

85 Fed. Reg. 84,160 (Dec. 23, 2020) ......................................................6

88 Fed. Reg. 47,891 (July 25, 2023) .................................................................7

90 Fed Reg. 46,624 (Sept. 29, 2025) ..............................................................7

90 Fed. Reg. 8139 (Jan. 21, 2025) ..................................................................2

**Other Authorities**

*Implementation Guidance for January 2025 Federal Register Notice,*
    *Designating Aliens for Expedited Removal*, available at
    https://perma.cc/F32YNJ8R .......................................................................10

U.S. Immigr. & Customs Enf't, FOIA ICE Library,
    https://perma.cc/R5U9-WFAE (Nov. 1, 2025) .........................................11

# INTRODUCTION

The only new piece of information in Defendants' latest motion for a stay pending appeal is their disclosure of the previously unannounced elimination of bedrock safeguards that had been in place since expedited removal was first instituted in 1997. Immigration officers conducting expedited removal inspections were always required to both (1) "clearly advise[]" all noncitizens that the inspection interview "may be the only opportunity to present information concerning any fears or concerns about being removed from the United States"; and (2) specifically ask every noncitizen if they have "any fear or concern of being removed." 62 Fed. Reg. 10,312, 10,318-19, 10,355 (Mar. 6, 1997). These fundamental advisal and questioning requirements were always reflected in the Form I-867. *See id.* at 10,318-19, 10,355; 8 C.F.R. § 235.3(b)(2)(i).

Not anymore. Defendants' motion reveals that the second requirement was eliminated nearly a year ago. *See* Mot. 19, n.2. Defendants made this change with no public notice—much less the opportunity for public comment that was likely required because this change effectively revised the expedited removal regulations themselves. And that change alone contravenes the rationale for the one issue on which the motions panel sided with Defendants.

But that is not all. It appears that Defendants may have *also* eliminated the advisal requirement at the same time and likewise without public notice or

opportunity to comment—although even Defendants' latest filing does not acknowledge this apparent change. If Defendants in fact also eliminated that notice of the need to raise protection claims, this case is even more squarely controlled by *A.A.R.P. v. Trump*, 605 U.S. 91 (2025).

Together with Defendants' previous disclosures on appeal of purported guidance on assessing continuous presence, this new revelation fundamentally alters the picture of the procedures for implementing the Designation that Defendants have presented in this litigation. They have insisted that the relevant procedures "have been in place for decades" and that "DHS did not alter any aspect of the expedited-removal procedures that have been applied across Administrations." Appellants' Br. 1, 8; *see also, e.g.*, D. Ct. ECF No. 56 at 2, 18 (Defendants' Opposition to Section 705 Motion) (similar). And they failed to give the district court any answer when asked below if they had adopted any procedures for assessing continuous presence. JA-40.

Particularly in light of Defendants' failure to provide the district court with an accurate picture of the procedures that would be in place under the Designation, they have failed to show that the district court abused its discretion in its preliminary assessment of the "important and novel constitutional question[s]." *See Gordon v. Holder*, 721 F.3d 638, 651 (D.C. Cir. 2013). *See also* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 21, 2025), JA-190-191

("Designation"). The Court should therefore "send the case back to the district court with the [Section 705 stay] intact" to adjudicate the ultimate merits of those important questions with "the benefit of further factual development." *Id.* at 644, 651.

And, in the meantime, the Court certainly should not grant a stay pending appeal based on Defendants' untimely disclosures.

## ARGUMENT

### I.    Defendants Have Failed to Show an Abuse of Discretion

It seems likely that Defendants *still* have not provided a complete or reliable picture of the procedures that would apply under the Designation. But it is increasingly clear that those procedures differ significantly from the picture Defendants presented to the district court. These untimely disclosures and the shifting picture they present make it seem untenable for the Court to perform the due process analysis in the first instance. "[T]he consideration of newly-discovered evidence is a matter for the district court." *U.S. ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 44 (D.C. Cir. 2014). This Court does not "receive new evidence from the parties, determine where the truth actually lies, and base its decision on that determination." *Id.*

Defendants failed to present the district court with basic information concerning relevant procedures, and the contours of those procedures bear directly

3

on the novel and important due process questions this case presents. Therefore, this Court should hold that Defendants have failed to show to show an abuse of discretion by the court below and remand for further proceedings with the interim relief in place. *See Gordon*, 721 F.3d at 644, 651-52.

### A. Defendants' Latest Disclosure Reveals the Elimination of Bedrock Procedures for Identifying Asylum Seekers in Expedited Removal.

As they have in this Court, Defendants argued below that the procedures to be used under the Designation "have been in place for nearly 27 years." *See* D. Ct. ECF No. 56 (Defendants' Opposition to Section 705 Motion) at 2; *see also, e.g.*, *id.* at 18 (asserting that Plaintiff's due process claim "challenges features of the procedures implementing expedited removal that have been in place since the statute's adoption decades ago"). Over the course of this appeal, it has become increasingly clear that was incorrect.

The procedures that *had* been in place set out essential steps to screen for potential asylum seekers. Immigration officers conducting expedited removal inspections had to (1) advise all noncitizens of the availability of protection and the need to raise any fear of removal; and then (2) specifically ask all noncitizens if they feared removal. *See* JA-33-34. The advisal was contained on Form I-867A and stated:

> Except as I will explain to you, you are not entitled to a hearing or review.

4

> U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country. If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance. You will have the opportunity to speak privately and confidentially to another officer about your fear or concern. That officer will determine if you should remain in the United States and not be removed because of that fear.

D. Ct. ECF No. 50-23 at 94. In turn, the companion Form I-867B contained four

questions, the second and third of which specifically asked about fear of harm if

removed:

> 1. Why did you leave your home country or country of last residence?
> 2. Do you have any fear or concern about being returned to your home country or being removed from the United States?
> 3. Would you be harmed if you are returned to your home country or country of last residence?
> 4. Do you have any questions or is there anything else you would like to add?

JA-33-34.

The prior advisal and questioning to identify asylum seekers had been in

place since the expedited removal regulations first took effect on April 1, 1997—

the same date that the original expedited removal regulations took effect. *See* 62

Fed. Reg. at 10,312; Exhibit A (Prior Form I-867) (reflecting that the original

version of the form was adopted on "4-1-97").

And since then, the regulations have required that, "in every case in which

the expedited removal provisions will be applied," the "immigration officer shall

read (or have read) to the [noncitizen] all information contained on Form I-867A"

and ask "the questions contained on Form I-867B." 8 C.F.R. § 235.3(b)(2)(i); 62 Fed. Reg. at 10,355-56. Consistent with the original version of the Form I-867—which was not substantively changed for decades—the preamble to the 1997 rulemaking specifically stated the form both (1) "clearly advises the alien that this may be the only opportunity to present information concerning any fears or concerns about being removed from the United States, and that any information concerning that fear will be heard confidentially by another officer"; and also (2) asks "if the [noncitizen] has any fear or concern of being removed or of being sent home." 62 Fed. Reg. at 10,319-20.

As the U.S. Department of Homeland Security ("DHS") acknowledged during the first Trump administration, although "[t]he regulatory text at 8 C.F.R. § 235.3(b)(2)(i)" itself refers only to the information on Form I-867A and the questions on Form I-867B—without specifying the information and questions—"the preamble to the [1997] regulation made clear that all aliens placed into expedited removal were to be questioned about a fear of return" after being advised of the importance of doing so. 85 Fed. Reg. 84,160, 84,179 (Dec. 23, 2020) (citing 62 Fed. Reg. at 10,319). It was therefore DHS's "longstanding practice . . . to ask every [noncitizen] subject to expedited removal about a potential fear of return." *Id.*

6

Defendants' motion reveals they eliminated these fundamental, longstanding protections without any notice shortly after the Designation was issued. As far as Plaintiff is aware, Defendants' latest filing in this appeal reflects the very first public notice by the government that the Form I-867B was revised on February 11, 2025 to eliminate this fundamental protection. This change was made without compliance with notice and comment procedures, even though it effectively amended a decades-old DHS regulation adopted after notice and comment. Nor does it appear that DHS even issued either a Federal Register notice or any other public announcement concerning the change *after* it was made.[1]

Moreover, it appears that even Defendants' latest filing may have acknowledged only part of their changes to the longstanding protections embedded in the Form I-867. Alerted by Defendants' new disclosure of the elimination of the fear questions from the Form I-867B, Plaintiff has now identified at least one example of a Form I-867A that appears to reflect that a new version of *that* form was *also* adopted on February 11, 2025. And that apparent new version of the Form I-867A entirely eliminates the advisal about the availability of protection from persecution or torture and the importance of raising any fears during inspection. *See* Exhibit B (Redacted Form I-867A with Feb. 11, 2025 version

---

[1] Meanwhile, DHS regularly provides the public with advance notice and the opportunity to comment on proposed revisions to other agency forms. *See, e.g.*, 90 Fed Reg. 46,624 (Sept. 29, 2025); 88 Fed. Reg. 47,891 (July 25, 2023).

date). It is impossible to know whether this reflects an official, across-the-board change to the Form I-867A in the absence of any public acknowledgment of the change by Defendants. But the elimination of the asylum advisal on the Form I-867A would seem to be in keeping with the elimination of the related questions on the companion Form I-867B.

In short, Defendants' latest submission shows that DHS had fundamentally altered core procedural protections even while Defendants asserted to the district court that the relevant procedures had been in place for decades. *See, e.g.*, D. Ct. ECF No. 56 at 2, 18; *see also, e.g.*, Appellants' Brief 1 ("DHS did not alter any aspect of the expedited-removal procedures that have been applied across Administrations.").

Because Defendants never disclosed their changes to the fundamental expedited removal procedures reflected in the Form I-867, the district court's analysis necessarily assumed that the baseline of the longstanding advisal and questions were still in place. JA-30-35. The district court concluded that notwithstanding that baseline, Plaintiff's evidence demonstrated a constitutionally significant risk of error in identifying asylum seekers when applied to noncitizens with a liberty interest in remaining in the United States. JA-30-34.

And as discussed in Part II, *infra*, the motions panel's different conclusion on this issue was based specifically on the fact that the prior version of the form

gave "affirmative and official notice to individuals that their fear of harm is relevant to their potential removal through the immigration officer's repeated raising of the issue." Motions Panel Order, *Make the Rd. N.Y. v. Noem*, 2025 WL 3563313, at *30 (D.C. Cir. Nov. 22, 2025) (citing 8 C.F.R. § 235.3(b)(2)(i) and D. Ct. ECF No. 50-23 at 94 (Text of Form I-867AB)). But it appears this was incorrect—and that Defendants had in fact changed those procedures well before their filings in the district court.

### B. Defendants' Disclosures on Appeal Concerning Purported Procedures for Assessing Continuous Presence Raise Further Questions.

Meanwhile, the record before the district court with respect to procedures for assessing continuous presence reflected a "complete lack of process for an individual to demonstrate how long they have been present." JA-37; *see also, e.g.*, JA-35-36 ("there is no . . . procedure for presenting evidence bearing on continuous presence"); Motions Panel Order, 2025 WL 3563313, at *28 ("[A]t least on this record, detained individuals (1) are not informed that they are facing a form of summary removal that could be cut off by evidence of continuous residency, so they do not even know to raise the issue, (2) are highly unlikely to carry with them at all times evidence proving their residency for two continuous years, and (3) have no realistic opportunity to contact a third party able to bring

evidence to the detained individual before Expedited Removal occurs."); *id.* at *29 (noting the "complete absence of any process regarding residency length").

Defendants did not lack the opportunity to present evidence of any such procedures before the district court. They identified none in their opposition to Plaintiff's motion for relief. *See* D. Ct. ECF No. 56. And when the district court asked Defendants at the oral argument on that motion "what would happen if" a noncitizen "wants 'to demonstrate that they've been here for a period of two years but they don't have any paperwork on them,' the Government came up empty, offering only 'to take that back to the agency to give [the court] an answer.'" JA-40 (citation omitted); *see also* JA-76-77 (transcript). But Defendants never provided the district court with an answer in the seven weeks between that argument and the district court's order. JA-40.

It was not until their merits brief to this Court, filed on October 20, 2025, that Defendants for the first time disclosed that Immigration and Customs Enforcement ("ICE") had issued a new guidance on February 28, 2025, which Defendants asserted provided noncitizens an adequate opportunity to demonstrate their continuous presence using "banknotes, leases, . . . and the like." Appellants' Merits Br. 50 (citing a February 28 ICE memorandum titled *Implementation Guidance for January 2025 Federal Register Notice, Designating Aliens for Expedited Removal* ("2025 ICE Guidance"), available at

10

https://perma.cc/F32YNJ8R). Defendants had never cited or filed the 2025 ICE

Guidance with the district court below. Indeed, the 2025 Guidance was only posted

online on October 20, 2025—the same date Defendants filed their merits brief. *See*

U.S. Immigr. & Customs Enf't, FOIA ICE Library, https://perma.cc/R5U9-WFAE

(Nov. 1, 2025).

And it was only in a letter filed with this Court on December 23, 2025, that

Defendants disclosed a January 22, 2025 email from a U.S. Border Patrol

("USBP") assistant chief informing USBP corridors of the 2025 Designation. That

email attaches a U.S. Customs and Border Protection ("CBP") guidance

memorandum dated July 26, 2019, which concerns the previous expansion of

expedited removal in January 2019. *See* Exhibit A to Appellants' Letter, Doc. No.

2151957 (Dec. 23, 2025) ("2019 CBP Guidance").

It is unclear whether that 2019 CBP Guidance is currently binding on USBP

officers or any other CBP officers. The USBP email that Defendants filed directs

its recipients to "disseminate the below message/attachments to your respective

sectors." *Id.* But as to the attachment the government relies upon, the email simply

states: "attached is the July 2019 CBP Guidance memorandum *for reference*"

(emphasis added). *Id.* The email does not indicate that the 2019 CBP Guidance is

11

once again in effect or that it is binding on USBP officers implementing the 2025

Designation.[2]

### C. The Moving Target Defendants Have Presented Fails to Demonstrate that the District Court Abused Its Discretion.

Defendants' series of disclosures concerning the basic procedures that would

be in effect under the Designation presents this Court with a difficult situation. It

makes little sense for the Court to conduct appellate review of novel due process

questions based on the inaccurate picture of procedures presented to the district

court. At the same time, this Court is not in the practice of basing its decisions on

"consideration of newly-discovered evidence" not first presented to the district

court. *See U.S. ex rel. Oliver*, 763 F.3d at 44. That is particularly true because this

---

[2] There are other reasons to doubt whether the 2019 CBP Guidance is operative. The 2019 CBP Guidance conflicts with the January 23, 2025 Huffman Memorandum. *See* Memorandum from Benjamine C. Huffman, Acting DHS Secretary, to Caleb Vitello, Acting ICE Director, Guidance Regarding How to Exercise Enforcement Discretion (Jan. 23, 2025), JA-192-193. The Huffman Memorandum directs DHS officers to "[t]ake all steps necessary" to consider applying expedited removal to noncitizens to whom it "has not been applied" including "steps to terminate any ongoing removal proceedings and/or any active parole status." JA-193. By contrast, the 2019 CBP Guidance instructs that the agency "should ensure that agents and officers are directed not to revisit a determination made prior to July 23, 2019 to place an alien in section 240 removal proceeding, even if the alien is amenable to expedited removal under this new designation." The 2019 CBP Guidance further directs promulgation of "training and guidance." It is unknown whether that training and guidance was ever issued, what it contains, and whether it remains in effect.

Court cannot be confident even now that Defendants have provided a full picture of the procedures that *are* in effect.

Because Defendants failed to provide the district court with accurate information about the procedures relevant to the resolution of the novel constitutional questions raised by this case, the Court should hold that Defendants have failed to demonstrate that the district court abused its discretion in issuing the Section 705 stay. And the Court should remand so that the district court can develop a complete picture of the relevant procedures and address the ultimate merits of the significant and novel constitutional issues in this case.

Such a resolution of the appeal is appropriate under *Gordon*, where this Court explained:

> [A]s the Supreme Court admonished in *Ashcroft v. ACLU*, where "the underlying constitutional question is close" we must "uphold the [preliminary] injunction and remand for trial on the merits." 542 U.S. 656, 664-65 (2004); *see also Red Earth LLC v. United States*, 657 F.3d 138, 145 (2d Cir. 2011) (per curiam) ("Because the district court reached a reasonable conclusion on a close question of law, there is no need for us to decide the merits at this preliminary stage."). Under *Ashcroft*, if the district court's analysis of the preliminary injunction factors reflects a reasonable conclusion about a close question of constitutional law, and contains no other legal error, then we must send the case back to the district court with the preliminary injunction intact. We must refrain from resolving novel and difficult constitutional questions, leaving them to be settled at a later stage, with the benefit of further factual and legal development.

*Gordon*, 721 F.3d at 644.

*Gordon* presented novel due process questions concerning the taxation of tobacco deliveries. *Id.* at 645. The Court explained that further factual development would shed light on relevant policy questions including the types of services "states provide to delivery sellers" and the difficulty "for a delivery seller to identify and calculate applicable taxes at the point of sale." 721 F.3d at 652. And it concluded: "Without this knowledge, we find no reason to upset the district court's reasonable conclusion that [the plaintiff had] demonstrated a likelihood of success on the merits of his due process challenge." *Id.*; *see also Ashcroft*, 542 U.S. at 671-72 ("By affirming the preliminary injunction and remanding for trial, we allow the parties to update and supplement the factual record to reflect current technological realities.").

Here, as in *Gordon*, this appeal presents "important and novel constitutional question[s]," and their ultimate resolution "would benefit from fuller factual development." 721 F.3d at 651-52. Because Defendants failed to present an accurate picture of their own policies to the district court, this Court should hold that they have also failed to demonstrate that the district court abused its discretion in entering interim relief.

Accordingly, the Court should affirm the Section 705 stay and remand for the district court to conduct the necessary factfinding and adjudicate the merits.

**II. The Court Should Deny A Stay Pending Appeal, Particularly Since Defendants' Latest Disclosure Only Strengthens Plaintiff's Due Process Claim.**

Defendants' arguments that they are likely to succeed on appeal repeat assertions that were rejected by the motions panel and are currently being considered by the merits panel after full briefing. And Defendants' new disclosure of the elimination of key procedural safeguards only underscores the district court's conclusion that the expansion of expedited removal likely violates due process—and contravenes the rationale for the one issue on which the motions panel sided with Defendants.

First, Defendants reiterate their argument that the stay issued pursuant to 5 U.S.C. § 705 violates 8 U.S.C. § 1252(f)(1). Mot. 9-11. The renewed motion for stay pending appeal adds nothing to the two rounds of appellate briefing on the issue. Plaintiff have addressed these arguments twice now. *See* Appellee's Opposition to Emergency Motion for Stay ("Opp. Stay") 8-10; Appellee Br. 40-45. And the motions panel correctly rejected Defendants' arguments. Motions Panel Order, 2025 WL 3563313, at *15.

Second, Defendants repeat their argument that Plaintiff's due process claim fails because noncitizens who have not been lawfully admitted have no protected liberty interest in remaining in the United States. Mot. 11-16. Again, Defendants repeat arguments that Plaintiff has twice addressed. *See* Opp. Stay 10-12, Appellee

Br. 14-23. And again, the motions panel examined "more than a century of precedent" to conclude Defendants' unlikely to succeed on their argument. Motions Panel Order, 2025 WL 3563313, at *21.

Defendants then reiterate their ancillary argument that, because Plaintiff's members lack a liberty interest in remaining in the United States, the balancing test of *Mathew v. Eldridge,* 424 U.S. 319 (1976), does not apply. Instead, Defendants argue, *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950) solely governs the due process inquiry. Plaintiffs have previously addressed this argument as well. Appellee Br. 23-24. But even *if* Defendants were correct, the procedures at issue nonetheless fail Defendant's preferred test under *Mullane*, as it now appears Defendants are not providing the actual notice required by that decision as to key aspects of the expedited removal process: the continuous presence requirement, and as to the right to seek a screening for credible fear.

Third, Defendants argue that the procedures are constitutionally sufficient as to the credible fear process. Mot. 18-19. Defendants rely on the motions panel's conclusion that the credible fear process is sufficient to protect against erroneous denials of asylum or withholding claims. Mot. 18. However, Defendants' latest disclosure concerning the changes to the Form I-867 directly contravenes the motions panel's reasoning on this point.

16

The motions panel specifically concluded that Defendants were likely to prevail on their argument that the asylum screening procedures imposed by the Designation satisfied due process because of the specific advisal and questioning about fear of removal required by the prior version of the form. The panel explained: "[U]nlike the procedures' marked silence with respect to residency length, the Credible Fear Procedures give affirmative and official notice to individuals that their fear of harm is relevant to their potential removal through the immigration officer's repeated raising of the issue." Motions Panel Order, 2025 WL 3563313 at *30. In support, the panel cited the regulation requiring the use of Form I-867A and B and a page of the record containing the text of the form's asylum-specific advisal and questions. *Id.* (citing 8 C.F.R. § 235.3(b)(2)(i) and D. Ct. ECF No. 50-23 at 94).

As explained above, however, it turns out that Defendants had in fact revised the Form I-867B a year ago, without any public notice, to eliminate the requirement to ask noncitizen if they "have any fear or concern about being returned to [their] home country or being removed" and if they would "be harmed if [they] are returned to [their] home country." *Supra* at 5. Moreover, while it is impossible to be sure without any official acknowledgment by Defendants, it appears that they may have *also* revised the Form I-867A at the same to

17

completely eliminate the advisal of noncitizens' right to seek protection and the need to raise any fears of removal during inspection. *Supra* at 8.

Thus, it now appears that immigration officers no longer give *any* "affirmative and official notice to individuals that their fear of harm is relevant to their potential removal"—much less "repeated[ly] rais[e] . . . the issue." *See* Motions Panel Order, 2025 WL 3563313 at *30. This deficit only strengthens Plaintiff's claim that the procedures the Designation imposes on noncitizens in the interior of the United States violate due process. As the Supreme Court made clear in *A.A.R.P.*, summary removal without meaningful notice of how "to contest that removal" and receive a hearing "surely does not pass muster" under the Fifth Amendment. 605 U.S. at 95; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("[N]otice must be afforded within a reasonable time and in such a manner as will allow [noncitizens] to actually seek habeas relief.").

Fourth, Defendants argue that the procedures for assessing continuous presence satisfy due process. Mot. 20-24. In addition to reraising previously briefed arguments,[3] Defendants rely on their recently disclosed ICE and CBP documents to suggest that noncitizens have "adequate opportunity to demonstrate

---

[3] Plaintiff has previously addressed Defendants' arguments as to standing and redressability. *See* Opp. Stay 14-16, Appellee Br. 30-32; Merits Hear. Tr. 54:07-55:05 (addressing membership). Plaintiff has also previously briefed the risk of error in the continuous presence assessment, *see* Appellee Br. 24-29.

continuous presence." Mot. 23. But even crediting the documents disclosed on appeal, the procedures set out fall woefully short. There is no "point in the process where an individual is given notice of the relevance of their residence length." Motions Panel Order, 2025 WL 3563313, at *27. *See also id.* (expedited removal forms "do not ask about the length of residence, provide no notice of the legal relevance of the person's length of residence, do not request any documentation of residence"); JA-35 (district court finding that "there is nothing in the expedited removal interview process that would prompt an individual to put forward the 'affirmative[]' evidence of continuous two-year presence that is required under the statute"; and that "the procedures used do not afford individuals meaningful notice of a key element of the "case against" them—the allegation that they have been present in the country for less than two years").

And while the newly disclosed guidance documents nowhere require that noncitizens be given actual notice of the continuous presence requirement, the "brief" period they purportedly authorize for noncitizens to obtain relevant evidence is triggered only by a "claim[] to have access to such evidence." 2025 ICE Guidance at 3; 2019 CBP Guidance at 3. Nor is there any *guarantee* of adequate time or even mechanisms to obtain records – a crucial guarantee given the reality of detention and difficulties in accessing counsel or a third party that are attendant to expedited removal. Defendants state that continuous presence "should

19

not be difficult to prove," but their unsupported assertion is directly contradicted by the record evidence. *See, e.g.*, JA-36-39, 157, 164-165; D. Ct. ECF 50-21, Cooper Decl. ¶¶ 6–7; Appellee Br. 25-30; Motions Panel Order, 2025 WL 3563313, at *28.

Finally, Defendants reiterate their previous arguments regarding irreparable harm and the equities and urge the Court to narrow the scope of the stay. Mot. 24-27. Plaintiff has previously addressed these arguments at length, as did the motions panel. *See* Opp. Stay 19-22, Appellee Br. 46-56, Motions Panel Order, 2025 WL 3563313, at *31-*36.

Notably, Defendants offer no new evidence and raise no new arguments that the district court's order is hampering Defendants' ability to detain and remove noncitizens from the United States that would warrant reversing course and entering a stay at this stage of the appeal. In contrast, the new information that has been presented demonstrates the opposite. As the revised expedited removal forms reflect, the Designation places noncitizens at even *greater* risk of erroneous removal to persecution or torture, as they are provided no notice or advisal of the credible fear process.

## CONCLUSION

The Court should deny Defendants' renewed motion for a stay pending appeal and affirm the interim relief ordered below.

Dated: February 9, 2026

Morgan Russell
Hannah Steinberg
Michael K.T. Tan
Cody Wofsy
American Civil Liberties Union
Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*mrussell@aclu.org*
*hsteinberg@aclu.org*
*m.tan@aclu.org*
*cwofsy@aclu.org*

Lucia Goin
American Civil Liberties Union
Foundation
Immigrants' Rights Project
915 15th Street NW
Washington, DC 20005
(212) 549-2500
*lgoin@aclu.org*

Amy Belsher
Robert Hodgson
New York Civil Liberties Union
Foundation
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

Respectfully submitted,

*/s/ Anand Balakrishnan*
Anand Balakrishnan
*Counsel of Record*
Sidra Mahfooz
Grace Choi
Omar C. Jadwat
Lee Gelernt
American Civil Liberties Union
Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*smahfooz@aclu.org*
*gchoi@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Arthur B. Spitzer
Aditi Shah
American Civil Liberties Union
Foundation of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d)(2)(A), I hereby certify that the preceding document complies with the type-volume limitation of the Rules, containing 4,711 words, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Anand Balakrishnan*
Anand Balakrishnan
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Anand Balakrishnan*
Anand Balakrishnan
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*