No. 25-5320

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

MAKE THE ROAD N.Y.,
*Appellee,*

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et al.*,
*Appellants.*

———————————

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00190 (Cobb, J.)

———————————

**APPELLANTS' CORRECTED REPLY IN SUPPORT OF THEIR
RENEWED EMERGENCY MOTION FOR A
STAY PENDING APPEAL**

———————————

CAROLINE MCGUIRE
*Senior Litigation Counsel*
ELISSA P. FUDIM
JOSEPH MCCARTER
*Trial Attorneys*
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
General Litigation & Appeals
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney
General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION .........................................................................1

ARGUMENT .................................................................................2

    I.    Plaintiff Has Still Not Met Its Burden to Demonstrate a ......2

    Likelihood of Success on Its Due Process Claim............................2

        A.    The District Court's Stay Violates §1252(f)(1)..............2

        B.    The Expedited-Removal Procedures Congress Provides Satisfy Due Process for These Aliens. ............3

        C.    Even if the Aliens Here Possess Some Liberty Interest, the Procedures Meet the Due Process Clause's Requirements. ...................................................3

        D.    Plaintiff's New Arguments Do Not Undercut Defendants' Likelihood of Success. ...............................9

    II.    Defendants Satisfy the Remaining Stay Requirements. .....13

    III.    The District Court Issued Overbroad Relief........................14

CONCLUSION ...........................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

<u>Cases</u>

*AT&T Corp. v. FCC,*
    970 F.3d 344 (D.C. Cir. 2020) ............................................................... 11

*Biden v. Texas,*
    597 U.S. 785 (2022) .................................................................................. 6

*Butte Cty. v. Chaudhuri,*
    887 F.3d 501 (D.C. Cir. 2017) ......................................................... 6, 13

*DHS v. Thuraissigiam,*
    591 U.S. 103 (2020) .................................................................................. 3

*Garland v. Aleman Gonzalez,*
    596 U.S. 543 (2022) .................................................................................. 2

*Gordon v. Holder,*
    721 F.3d 638 (D.C. Cir. 2013) ....................................................... 12, 13

*Immigrant Defs. L. Ctr. v. Noem,*
    145 F.4th 972 (9th Cir. 2025) ............................................................. 14

*James V. Hurson Assocs., Inc. v. Glickman,*
    229 F.3d 277 (D.C. Cir. 2000) ............................................................. 10

*Make the Road N.Y. v. Noem,*
    2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) ....................................... 1

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) .................................................................................. 3

*Mitchell v. Scully,*
    746 F.2d 951 (2d Cir. 1984) ................................................................... 7

*Mullane v. Central Hanover Bank & Trust,*
    339 U.S. 306 (1950) .................................................................................. 4

*Nat'l Min. Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) ....................................................9

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892) ..................................................................3

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ......................................................10, 11, 12

*Sequoia Orange Co. v. Yeutter*,
    973 F.3d 752 (9th Cir. 1992) ...................................................10

*Trump v. CASA*,
    606 U.S. 831 (2025) .................................................................14

Statutes

5 U.S.C. §705 ...................................................................................1, 14

5 U.S.C. § 706 ......................................................................................13

8 U.S.C. §1252(f)(1) ..............................................................................2

Rules

FED. R. APP. P. 27(a)(3)(B) ...................................................................5

Regulations

8 C.F.R. §235.3(b)(2)(i) ...................................................................10, 11

8 C.F.R. §§235.3(b)(4) ...........................................................................4

*Securing the Border*,
    89 Fed. Reg. 81156 (Oct. 7, 2024) ............................................5

*Agency Information Collection Activities; Revision; Entry Summary*,
    90 Fed. Reg. 46,624 (Sept. 29, 2025) ......................................11

**INTRODUCTION**

The district court's 5 U.S.C. §705 stay remains indefensible: It held the 2025 Designation and Huffman Memorandum—which do nothing more than extend expedited removal to the full class of statutorily eligible aliens—violates the Due Process Clause. It effectively holds unconstitutional longstanding due-process principles the Supreme Court has recently reaffirmed when *rejecting* a due-process challenge to expedited removal. And it does all of this both in the teeth of the INA's jurisdictional bars, and in excess of its equitable authority. Given the immense harm to the Government every day it is unable to utilize expedited removal to the full extent authorized by Congress, the Government renews its request for a full stay pending appeal.

Plaintiff's response attempts to re-litigate whether the procedures for evaluating an alien's credible fear of returning to their home country before an alien is removed through expedited removal are sufficient. A stay panel of this Court already granted a partial stay of the district court's ruling as to the credible-fear procedures. *Make the Road N.Y. v. Noem*, 2025 WL 3563313, at *37 (D.C. Cir. Nov. 22, 2025). Plaintiff attempts to relitigate that issue now based on changes to forms it did not

1

challenge below, that were changed after the administrative decisions they challenged here, and that do not materially alter the due process analysis.

Critically, Plaintiff's response does not contest the relevance or validity of guidance implementing procedures for determining whether an alien has been continuously present for under two years and is thus subject to expedited removal. That guidance demonstrates why the district court's order should be fully stayed.

## ARGUMENT

### I.    Plaintiff Has Still Not Met Its Burden to Demonstrate a Likelihood of Success on Its Due Process Claim.

#### A.    The District Court's Stay Violates §1252(f)(1).

The district court's nationwide §705 stay runs afoul of 8 U.S.C. §1252(f)(1) because it "enjoin[s] or restrains" the operation of covered provisions (expedited removal) of the Immigration and Nationality Act (INA) "other than with respect to an individual alien against whom proceedings … have been initiated." *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022); Mot.9-11. Plaintiff's response provides no new defense of the district court's §705 stay on this score. Opp.15

**B.    The Expedited-Removal Procedures Congress Provides Satisfy Due Process for These Aliens.**

Due process only entitles unadmitted aliens to "[w]hatever the procedure[s] authorized by Congress." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *see Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892); Mot.11-18.  Plaintiff's response fails to cite *Thuraissigium* or engage with the entry fiction at all.

**C.    Even if the Aliens Here Possess Some Liberty Interest, the Procedures Meet the Due Process Clause's Requirements.**

Plaintiff's response does not even attempt to defend the district court's invocation of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the lawfulness of expedited-removal procedures.  Opp.16.  Instead, Plaintiff argues that the "procedures at issue"[1] fail under *Mullane v. Central Hanover Bank & Trust*, 424 U.S. 319 (1976) "as it now appears Defendants are not providing actual notice required by that decision as key aspects of the expedited removal process: the continuous presence requirement, and as to the right to seek a screening for credible fear."

---

[1] Plaintiff's Exhibit B attached to their opposition reflects the updated Form I-867A.

3

Opp.16-17.  That is wrong.  And the updated documents further undercut that any due-process violation exists.

1.  Regarding the procedures for determining aliens' credible fear of returning to their home country, longstanding expedited-removal procedures guarantee aliens "three levels" of independent administrative review to make the basic showing that there is a "significant possibility" that they might be eligible for asylum or another form of protection from removal—at which point, they are placed in removal proceedings under INA §240.  Opening Br.8-10.  This interlocking system of administrative and judicial review provides abundant process "appropriate to the nature of the case." *Mullane*, 339 U.S. at 313.

The updated Form I-867A/B Plaintiff cites does not materially alter the due process analysis.  While the Form I-867B has changed from using four questions to two questions, it continues to elicit information about why an alien departed their home country, and likewise, procedures exist to evaluate any claim of fear related to returning to that country.  *See* 8 U.S.C.  §§1225(b)(1)(A)(ii),(b)(1)(B)(iii)(II),(b)(1)(B)(iv),(v);  8  C.F.R. §§235.3(b)(4), 208.30; Mot. 19 & Ex. A. The changes are consistent with DHS and DOJ's recent conclusion that the other questions previously

asked are suggestive and account for part of the high rates of referrals and screen-ins that do not ultimately result in a grant of asylum or protection.  89 Fed. Reg. 81156, 81160 (Oct. 7, 2024).

Given these developments, Plaintiff urges this Court to "'send the case back to the District Court with the §705 stay intact' to adjudicate the ultimate merits of those important questions 'with the benefit of further factual development.'"  Opp.3.  The Government obtained a stay of the district court's order finding the procedures for adjudicating fear claims violate due process.  Here, Plaintiff is asking the Court to vacate that partial stay, without actually requesting that relief, in violation of the Rules.  FED. R. APP. P. 27(a)(3)(B) ("The title of the response must alert the court to the request for relief.").  Even if Plaintiff requested such relief, it would fail.  As stated above, the form continues to elicit information about why an alien departed their home country, and procedures exist for evaluating whether an alien has a fear of returning.  *Supra* p.4.

But this Court would not even need to reach that analysis because Plaintiff's lawsuit does not challenge the updated forms.  Rather, this lawsuit challenges the expansion of expedited removal under the 2025 Designation and Huffman Memorandum.  JA-356-388.  Indeed, Plaintiff

5

did not challenge or focus on the Form I-867A/B (or other documents implementing the 2025 Designation) below, such that Defendants would have had reason to address it. The updated Form I-867A/B post-dates those challenged agency actions, and thus, would not be in the administrative record in this case. *Butte Cty. v. Chaudhuri*, 887 F.3d 501, 507 (D.C. Cir. 2017). If Plaintiff wants to challenge the updated forms, that is discrete agency action that it would have to amend its complaint to challenge. *See Biden v. Texas*, 597 U.S. 785, 809 (2022).

2. Plaintiff also reiterates its arguments that the procedures for determining whether aliens have been continuously present for two years are deficient. The record undercuts Plaintiff's contention.

Plaintiff complains that the 2025 Guidance is deficient to evaluate an aliens' continuous presence. Opp.19. Specifically, Plaintiff argues that the period aliens are authorized to obtain evidence of continuous presence is triggered "only by a 'claim to have access to such evidence[,]'" "[n]or is there any *guarantee* of adequate time or even mechanisms to obtain records[.]" *Id.* Plaintiff never identifies aliens with procedural objections to expedited removal on this basis and lacks associational stand-

ing to pursue this claim.  Br.20-22.  Moreover, the statute places the burden on the alien to demonstrate continuous presence, making proving two years' continuous presence analogous to an affirmative defense.  Like in criminal cases, "[a]n affirmative defense stands differently; due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed." *Mitchell v. Scully*, 746 F.2d 951, 956-57 (2d Cir. 1984).

Plaintiff further protests that Defendants' disclosures about procedures for evaluating continuous presence on appeal raise further questions. For example, Plaintiff questioned whether the 2025 ICE Guidance implementing the expanded designation applies to U.S. Border Patrol. Opp.11.  Defendants disclosed the governing U.S. Border Patrol guidance at the panel's request after argument. Appellants' 28(j) Letter (Dec. 23, 2025), Ex. A.  That guidance is identical to the guidance U.S. Border Patrol used when the Secretary expanded expedited removal to its statutory limit in 2019, and is substantially similar to the February 2025 ICE Guidance.  *Id.*  Plaintiff now questions whether the 2019 CBP Guidance "is binding on USBP officers or any other CBP officers" and complain that

7

the Guidance is attached to an email "for reference." Opp.11-12. As reflected in the exhibit Defendants submitted, that guidance reflects the materials disseminated to Border Patrol agents authorized to effectuate expedited removal as expanded by the Secretary. Plaintiff asks this Court to engage in speculation about whether the guidance is operative.

Plaintiff also casts doubt on whether this guidance is operational because it allegedly conflicts with the 2025 Huffman Memorandum. Opp.12 n.2. But these guidance documents are not mutually exclusive. The Huffman Memorandum does not direct DHS agents to blindly terminate INA §240 removal proceedings in favor of expedited removal proceedings. Instead, it encourages a holistic evaluation of an alien's case to assess the alien's eligibility for expedited removal. Memorandum from Benjamine C. Huffman, Acting Secretary to [Senior DHS Officials] re *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025), https://perma.cc/W3CL-SNDN.

**D.    Plaintiff's New Arguments Do Not Undercut Defend-ants' Likelihood of Success.**

Plaintiff also contends that the new Form I-867A/B needed to un-dergo notice-and-comment rulemaking, and that given the record devel-opments on appeal, this Court should remand the case to the district court with the §705 stay intact.  Neither withstands scrutiny.

1.  There is no basis for this Court to consider Plaintiff's claims about the new Form I-867B because Plaintiff's complaint does not chal-lenge that discrete agency action.  *Supra*, p.6.  This same conclusion ap-plies to Plaintiff's new contention that the changes to Form I-867A/B re-quired notice and comment.

On the merits, Plaintiff's argument also fails. The updated Form I-867A/B did not require notice-and-comment because the changes do not constitute a legislative rule.  A legislative rule is one that "purports to impose legally binding obligations or prohibitions on regulated parties— and that would be the basis for an enforcement action for violations of those obligations or requirements."  *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014).  By contrast, procedural rules are exempt from notice-and-comment.  A "critical feature of the procedural exception is that it covers agency actions that do not themselves alter the rights or

9

interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000). That a procedural policy may have some impact on benefits applicants does not make it a substantive rule. *Sequoia Orange Co. v. Yeutter*, 973 F.3d 752, 757 (9th Cir. 1992). Because the forms function as internal agency instruments used to memorialize statements during expedited removal proceedings, and do not create rights, assign duties, or impose obligations, they are not legislative rules and do not trigger notice-and-comment requirements.

Plaintiff's contention that the revised forms "effectively amend" 8 C.F.R. §235.3(b)(2)(i) misunderstands both the regulation and the function of the forms. Opp.7. The regulation does not prescribe the specific content of Form I-867A or the precise questions that must appear on Form I-867B. Because the regulation leaves the content of the forms to agency discretion, modifying that content does not amend the regulation. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 103 (2015).

10

Moreover, Plaintiff's reliance on language from the 1997 regulatory preamble is misplaced. Opp.6. While the preamble discussed INS's expectations regarding questioning about fear of return, a preamble does not impose binding legal obligations unless those obligations are reflected in the regulatory text itself—which is not the case here. *AT&T Corp. v. FCC*, 970 F.3d 344, 351 (D.C. Cir. 2020).

Plaintiff further argues that because 8 C.F.R. §235.3(b)(2)(i) was adopted via notice and comment, any change to the forms referenced in that regulation must undergo notice and comment. As noted, the change to the forms is not inconsistent with the regulation and therefore does not constitute an amendment. *Perez*, 575 U.S. at 103-04. Moreover, even if DHS regularly provided for APA notice-and-comment with respect to revisions to other forms, Opp.7, n.1—it does not[2]—does not mean it needed to do so here. *See Perez*, 575 U.S. at 102.

---

[2] Plaintiffs cite only two examples. One invited comment based on the Paperwork Reduction Act, not the APA. 90 Fed. Reg. 46,624 (Sept. 29, 2025).

11

2.  Plaintiff also argues that Defendants failed to show the District Court abused its discretion to issue the stay given the disclosures on appeal.  Opp.3.  Thus, Plaintiff urges this Court to "'send the case back to the District Court with the §705 stay intact' to adjudicate the ultimate merits of those important questions 'with the benefit of further factual development.'"  *Id.*  There is no basis for ordering such relief.

Plaintiff relies on *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013), and argues that it requires this Court to remand this case to the district court with the §705 stay intact because this case presents a "close" constitutional question incapable of a merits resolution without further factual development. Opp.13-14.  Not so.  In *Gordon*, resolution of the due process question required further factual development into whether a single tobacco sale in a state is sufficient in the internet age to establish minimum contacts in that state, 721 F.3d at 652. By contrast, this Court need only assess whether Defendants' existing procedures, as applied in the context of the 2025 Designation and Huffman Memorandum, satisfy due process.  That is not the sort of granular factual question contemplated in *Gordon*.

12

Nor could the district court even consider Form I-867A/B on remand: Plaintiff brought claims under the Administrative Procedure Act, JA-383-87, factual development would not be subject to discovery like in *Gordon*, 721 F.3d at 652, but would be limited to a Certified Administrative Record of decisional documents that predated the 2025 Designation and the Huffman Memorandum, *see* 5 U.S.C. § 706. The updated Form I-867A/B post-dates the challenged agency actions here and would not even be in such record. *Butte Cty.*, 887 F.3d at 507.

Moreover, any change in the record on appeal would be harmless if this Court resolves the §1252(f)(1) question in the Government's favor. The district court would lack jurisdiction to enter the relief Plaintiff requests.

## II.   Defendants Satisfy the Remaining Stay Requirements.

The district court's stay is causing immense irreparable harm to the Government. Nearly thirty-thousand aliens were removed using expedited-removal between January 2025 and when the district court entered its §705 stay in August. Castano Decl.¶10. That includes many aliens who have serious criminal records. *Id.* The district court's order blocks

this indispensable tool, and channels those aliens to an already overburdened INA §240 system suffering a historic "backlog" with over six-million pending cases. *Id.* ¶9.

The harm to the Government vastly outweighs the harm to Plaintiff's members. Plaintiff waited five months to file this suit, and when it did, identified only *two* members who *might* now be placed in expedited removal proceedings. That is not the sort of imminent and irreparable harm that warrants extraordinary, nationwide relief.

## III. The District Court Issued Overbroad Relief

At minimum, the district court exceeded its authority by issuing a *universal* stay. Section 705 only allows courts to issue stays "to the extent necessary to prevent irreparable injury," 5 U.S.C. §705. "Irreparable injury" in the context of interim equitable relief refers to injury to the plaintiff—not third parties, *Trump v. CASA*, 606 U.S. 831, 841-46 (2025).

*CASA* did not address APA relief, but the Ninth Circuit has held that *CASA*'s "complete-relief principle provides some useful guidance for crafting interim equitable relief" in §705 cases. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 996 (9th Cir. 2025). Plaintiff is inviting a circuit

14

split on this question.  Indeed, a stay running to Plaintiff's members would provide complete relief to Plaintiff's members.

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

CAROLINE McGUIRE
*Senior Litigation Counsel*
ELISSA P. FUDIM
JOSEPH McCARTER
*Trial Attorneys*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
/s/ *Drew C. Ensign*
DREW C. ENSIGN
*Deputy Assistant Attorney General*

Drew.C.Ensign@usdoj.gov
(202) 514-2000

TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dated:  February 18, 2026

15

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,600 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Century Schoolbook type.

/s/ *Tyler J. Becker*
Tyler J. Becker

Dated: February 18, 2026        Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Tyler J. Becker*
Tyler J. Becker

Dated: February 18, 2026          Attorney for Appellants