No. 25-5320

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————

MAKE THE ROAD,
*Appellee*,

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et al.*,
*Appellants*.

—————————

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00190 (Cobb, J.)

—————————

## APPELLANTS' EMERGENCY MOTION FOR AN
## ADMINISTRATIVE STAY AND A STAY PENDING APPEAL
(Relief requested by September 16, 2025)

—————————

BRIAN C. WARD
*Acting Assistant Director*
ELISSA P. FUDIM
CAROLINE McGUIRE
*Trial Attorneys*
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
General Litigation & Appeals
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney
General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

## CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

Plaintiff is Make the Road New York.  Mary and John Doe are Plaintiffs in district court but are not part of this appeal.

Defendants are Kristi Noem, in her official capacity as Secretary of Homeland Security; Todd M. Lyons, in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Rodney S. Scott, in his official capacity as the Commissioner of U.S. Customs and Border Protection ("CBP"); Joseph B. Edlow, in his official capacity as the Director of U.S. Citizenship and Immigration Services ("USCIS"); Pamela J. Bondi, in her official capacity as the Attorney General of the United States.[1]

Immigration Reform Law Institute are Amici in support of Defendants.

### B. Rulings Under Review

---

[1] The current Commissioner of CBP and Director of USCIS are substituted as defendants in the place of the former individuals in those roles.  *See* Fed. R. Civ. P. 25(d).

The ruling under review consists of an order (Docket No. 65) and opinion (Docket No. 64) regarding Plaintiff Make the Road's motion for a stay of agency action under 5 U.S.C. §705, which the district court issued on August 29, 2025.  The opinion and order are attached to this motion as Exhibits A and B.

## C. Related Cases

This case has not previously been before this Court.  Overlapping issues are present in the following case:  *Coalition for Humane Immigrant Rights et al., vs. Noem*, No. 1:25-cv-00872 (D.D.C.), *appeal docketed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025).

/s/ *Drew C. Ensign*
Drew C. Ensign
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

STATEMENT ................................................................................. 3

ARGUMENT .................................................................................. 9

    I.    The Government Is Likely to Succeed on the Merits ............ 9

        A.    The District Court's Stay is Prohibited by 8 U.S.C. §1252(f)(1) ...................................................................... 9

        B.    The Procedures that Congress Provides Satisfy Due Process for Aliens With Less Than Two Years of Presence ................................................................ 11

        C.    Even if the Aliens Here Possess a Liberty Interest in Remaining, the Expedited Removal Procedures Provide Sufficient Process ......................................... 19

    II.    The District Court's Order Irreparably Harms Defendants and the Equities Favor a Stay. ....................... 24

    III.    The District Court's Overbroad Relief Exceeded its Authority ................................................................. 26

CONCLUSION ............................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*A.A.R.P. v. Trump,*
    145 S. Ct. 1367 (2025) ................................................................ 16, 17

*Al-Hela v. Biden,*
    66 F.4th 217 (D.C. Cir. 2023) (en banc) ........................................... 19

*Coal. for Humane Immigrant Rights v. Noem,*
    2025 WL 2192986 (D.D.C Aug. 1, 2025)........................................... 10

*Dep't of State v. Muñoz,*
    602 U.S. 899 (2024) ........................................................................ 18

*DHS v. Thuraissigiam,*
    591 U.S. 103 (2020) ................................... 2, 11, 12, 13, 15, 18, 21, 25

*Garland v. Aleman Gonzalez,*
    596 U.S. 543 (2022) ................................................................. 1, 9, 10

*Immigrant Defs. L. Ctr. v. Noem,*
    145 F.4th 972 (9th Cir. 2025)........................................................... 26

*J. Roderick MacArthur Found. v. FBI,*
    102 F.3d 600 (D.C. Cir. 1996)......................................................... 23

*Kaplan v. Tod,*
    267 U.S. 228 (1925) ........................................................................ 12

*Knauff v. Shaughnessy,*
    338 U.S. 537 (1950) ................................................................... 14, 18

*Landon v. Plasencia,*
    459 U.S. 21 (1982) ............................................................... 13, 18, 19

*Ludecke v. Watkins*,
335 U.S. 160 (1948) ................................................................. 17

*Make the Road N.Y. v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020) ................................................. 11

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ................................................... 17, 18, 19

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892) ................................................................. 12

*Noem v. Perdomo*,
606 U.S. ___, 2025 WL 2585637 (Sept. 8, 2025) ................................. 24

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................. 9

*Olim v. Wakinekona*,
461 U.S. 238 (1983) ................................................................. 24

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) .............................................. 22

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ................................................................. 22

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025) ...................................................... 24, 26

*Trump v. J.G.G.*,
145 S. Ct. 1003 (2025) ...................................................... 16, 17

*United States ex rel. Turner v. Williams*,
194 U.S. 279 (1904) ................................................................. 13

*Wong Yang Sung v. McGrath*,
339 U.S. 33 (1950) ......................................................... 12, 13, 17

*Yamataya v. Fisher*,
    189 U.S. 86 (1903) ........................................................................... 16, 17

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ........................................................................... 16

**Statutes**

5 U.S.C. §705 ........................................................................... 1, 8, 10, 26

8 U.S.C. §1158 ........................................................................... 3

8 U.S.C. §1182(a)(6)(C) ........................................................................... 3, 6

8 U.S.C. §1225(a)(1) ........................................................................... 13

8 U.S.C. §1225(b) ..................................... 3, 4, 5, 9, 10, 13, 16, 17, 18, 21

8 U.S.C. §1229a ........................................................................... 5, 9

8 U.S.C. §1252(f)(1) ........................................................................... 1, 9, 10, 11

**Regulations**

8 C.F.R. §208.30 ........................................................................... 5, 20

8 C.F.R. §208.31 ........................................................................... 20

8 C.F.R. §235.3 ........................................................................... 4, 20, 23

8 C.F.R. §1003.42 ........................................................................... 5, 21

*Notice Designating Aliens Subject to Expedited Removal Under Section
    235(b)(1)(A)(iii) of the Immigration and Nationality Act*,
    67 Fed. Reg. 68,924 (Nov. 13, 2002) ................................................... 6

*Designating Aliens for Expedited Removal*,
    69 Fed. Reg. 48,877 (Aug. 11, 2004) ................................................... 6

*Designating Aliens for Expedited Removal*,
   84 Fed. Reg. 35 (July 23, 2019) ........................................................ 6

*Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal*,
   87 Fed. Reg. 16,022 (Mar. 21, 2022). ................................................ 6

*Designating Aliens for Expedited Removal*,
   90 Fed. Reg. 8139 (Jan. 24, 2025**)**. ............................................... 6, 7

## INTRODUCTION

The district court issued a sweeping stay under 5 U.S.C. §705 preventing the Department of Homeland Security (DHS) from exercising its statutory authority to expand expedited removal to inadmissible aliens in the country's interior who lack two years of continuous presence. The district court did so based on an erroneous conclusion that expedited-removal procedures that have been in place for decades violate the Due Process Clause.   This Court should stay the district court's order, which causes immense harm to the Government's ability to swiftly remove inadmissible aliens without the more cumbersome procedures under Immigration and Nationality Act (INA) §240, and its associated backlogs.

The Government is likely to succeed on appeal.   *First*, Congress prohibited lower courts from generally enjoining or restraining the implementation of the expedited-removal statute.  8 U.S.C. §1252(f)(1). The order below does that:  It universally bars the Government from expeditiously removing a class of aliens until it adopts further procedures.   There is no way to square §1252(f)(1)'s bar on non-individualized relief with the district court's nationwide order.  *Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022).  And *second*, the order

contravenes binding Supreme Court precedent, including *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), which holds that these aliens' due process rights consist *solely* of the procedures that Congress provided by statute. And in all events, the expedited-removal procedures here exceed whatever process the Constitution compels.

The Government will also be irreparably harmed absent a stay of the district court's order because it universally invalidates a vital immigration-enforcement tool. A stay is manifestly warranted; at minimum, this nationwide order potentially impacts hundreds of thousands of inadmissible aliens, and thus, is overbroad.

Moreover, as this Court considers this application, it should issue an immediate administrative stay of the order below. This Court already granted an administrative stay in a similar case, arising from the same court, adopting an equally strained argument to stay the Government's parallel attempt to use longstanding expedited-removal procedures. *See Coal. for Humane Immigrant Rights, vs. Noem*, No. 25-5289 (D.C. Cir.), *administrative stay granted* (Aug. 18, 2025).

## STATEMENT

**A. Expedited Removal**.    Congress authorized DHS to expeditiously remove from the United States certain inadmissible aliens who arrive at ports of entry or who recently entered unlawfully.  *See* 8 U.S.C. §1225(b)(1).  Under this expedited removal process, an alien "arriving in the United States" who an immigration officer determines lacks valid entry documentation or makes a material misrepresentation shall be "order[ed] … removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. §1158] or a fear of persecution."  8 U.S.C. §§1225(b)(1)(A)(i), 1182(a)(6)(C), (a)(7).

Congress delegated authority to the Executive Branch to apply expedited removal beyond only arriving aliens.  Specifically, the DHS Secretary "may … designate[]" certain classes of inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal.  8 U.S.C. §1225(b)(1)(A)(iii).  That designation "shall be in the sole and

3

unreviewable discretion of the [Secretary] and may be modified at any time." *Id.*

Implementing regulations establish procedures to be used before effectuating expedited removal.  Immigration officers must "advise the alien of the charges against him or her," provide "an opportunity to respond … in the sworn statement," and provide an interpreter if needed. 8 C.F.R. §235.3(b)(2)(i).  Aliens are afforded an opportunity to establish that they have been admitted or paroled, have been physically present continuously for the prior 2-year period, have been lawfully admitted for permanent residence or as a refuge, or were granted asylum, or are a U.S. citizen.  *See* 8 U.S.C. §1225(b)(1)(C); 8 C.F.R. §235.3(b)(1)(ii).  "[A]ny removal order," the "sworn statement," and any claims concerning an alien's status, "must be reviewed and approved by the appropriate supervisor before the order is considered final."  8 C.F.R. §235.3(b)(7).

Additional procedures apply if an alien indicates an intention to apply for asylum or expresses a fear of return to the alien's country.  8 U.S.C. §1225(b)(1)(A)(ii); *see* 8 C.F.R. §235.3(b)(4).  If so, the alien receives a non-adversarial interview with an asylum officer, who determines whether the alien has a "credible fear of persecution" or

torture.  8 U.S.C. §1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (b)(1)(B)(iv), (v); *see* 8 C.F.R. §208.30.  Following an adverse determination, that alien may pursue *de novo* review by an immigration judge.  8 U.S.C. §1225(b)(1)(B)(iii)(III); 8 C.F.R. §§1003.42(d), 1208.30(g).

If the asylum officer or immigration judge determines that the alien has a credible fear of persecution or torture, the individual is generally placed in removal proceedings under 8 U.S.C. §1229a (known as Section 240 proceedings).  *See* 8 C.F.R. §§208.30(f), 1208.30(g).  If the officer and immigration judge do not find a credible fear of persecution or torture, the alien shall be "removed from the United States without further hearing or review."  8 U.S.C. §§1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§1003.42(f), 1208.30(g)(2)(iv)(A).  During the credible fear process, aliens may consult with attorneys or representatives and engage interpreters.  8 C.F.R. §208.30(d)(4), (5).

**B. 2025 Designation.**  The Secretary (and earlier, the Attorney General and INS Commissioner) has designated aliens for expedited removal under §1225(b)(1)(A)(iii) on five occasions.  Dkt. 36, at 6–8.

Those designations include a 2002 designation authorizing expedited removal of "all aliens" (except Cubans) "who arrive in the

United States by sea, … who are not admitted or paroled" into the United States, and who "have not been physically present in the United States continuously for the two-year period prior to the determination of inadmissibility." 67 Fed. Reg. 68,924 (Nov. 13, 2002). In 2004, the Secretary authorized expedited removal of certain aliens encountered within 100 air miles of the border and within fourteen days of their date of illegal entry regardless of the alien's arrival method. 69 Fed. Reg. 48,877 (Aug. 11, 2004).

On January 24, 2025, the Acting Secretary published a Federal Register notice restoring the scope of expedited removal to "the fullest extent authorized by Congress." 90 Fed. Reg. 8139 (Jan. 24, 2025).[1] The notice enabled DHS "to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [8 U.S.C. §1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the

---

[1] The Secretary previously expanded expedited removal to the fullest extent authorized by Congress on July 23, 2019. 84 Fed. Reg. 35,409–01 (July 23, 2019). The 2019 Designation was rescinded during the Biden Administration. 87 Fed. Reg. 16,022 (Mar. 21, 2022).

United States continuously for the two-year period immediately preceding" the inadmissibility determination, who were not covered by previous designations. *Id.* at 8139–40. The notice explained that this action aimed to "enhance national security and public safety—while reducing government costs—by facilitating prompt immigration determinations" and would "enable DHS to address more effectively and efficiently the large volume of aliens who are present in the United States unlawfully … and ensure [their] prompt removal." *Id.* at 8139.

**C. The Huffman Memorandum.** On January 23, 2025, the then-Acting DHS Secretary published an internal memorandum explaining "how to exercise enforcement discretion in implementing these policies." Memorandum from Benjamine C. Huffman, Acting Secretary to [Senior DHS Officials] re *Interim Policy Changes Regarding Charging, Sentencing, and Immigration Enforcement* (Jan. 23, 2025), https://perma.cc/W3CL-SNDN. The Huffman Memorandum instructs immigration enforcement to take "all steps necessary to review [an] alien's case" to evaluate and consider whether individuals should be placed into expedited removal. *Id.* Moreover, the memorandum prompts consideration of, *inter alia*, "aliens eligible for expedited removal who

7

failed to apply for asylum within the statutory deadline." *Id.* (citations omitted).

**D. District Court Proceedings:** On January 22, 2025, Plaintiff, Make the Road, filed this suit seeking to invalidate the 2025 Designation. Dkt. 1. Plaintiff amended its complaint in March, adding new claims and additional parties, namely two Doe Defendants who were allegedly placed in expedited removal proceedings and removed on January 28. Am. Compl. ¶¶12, 13, 105 (Dkt. 27). Make the Road asserted associational standing on behalf of four members who entered the country illegally, are not in expedited removal proceedings, and lack final orders of removal. *Id.* ¶¶98–101. One of these individuals allegedly filed a pending asylum application with USCIS. *Id.* ¶99. Plaintiffs allege various claims, including that the 2025 Designation violates the Due Process Clause. *Id.* ¶¶107–109. Plaintiff Make the Road moved to stay the agency action under 5 U.S.C. §705. Dkt. 50. Only Plaintiff Make the Road brought that motion, not the individual Plaintiffs. *Id.* at 2 n.1.

On August 29, 2025, the district court granted Plaintiff's motion, concluding that it was likely to succeed on its due process claim. Dkt. 64

(Op.), at 26–39.  On September 5, the district court denied Defendants'
motion for a stay pending appeal.  Dkt. 70.

## ARGUMENT

A stay pending appeal turns on (1) likelihood of success on the
merits; (2) irreparable injury; (3) balancing the equities; and (4) where
the public interest lies.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Each
factor favors a stay here.

## I.    The Government Is Likely to Succeed on the Merits

### A.    The District Court's Stay is Prohibited by 8 U.S.C. §1252(f)(1)

Section 1252(f)(1) strips courts "(other than the Supreme Court)" of
"jurisdiction or authority" to "enjoin or restrain the operation of" INA
provisions, including §§1225 and 1229a, "other than with respect to the
application of such provisions to an individual alien against whom
proceedings ... have been initiated."  8 U.S.C. §1252(f)(1).  Expedited
removal is a covered provision.

The order below does what §1252(f)(1) proscribes:  It bars the
Government nationwide from applying existing expedited removal
procedures to a certain class of aliens, unless it adopts an (indeterminate)
set of procedures purportedly compelled by due process.  In *Aleman*

*Gonzalez*, the district court enjoined the Government class-wide from taking actions under a specified provision (detaining aliens under §1231(a)(6)) until it provided additional process (a bond hearing). 596 U.S. at 547. The Court held that injunction was "barred" by §1252(f)(1), because an injunction that stops the Government from implementing a statutory provision until certain conditions are satisfied is one that "enjoin[s] or restrain[s]" the provision's operation. *Id.* at 551. So too here: The nationwide stay below "enjoin[s] or restrain[s] the operation of [§1225(b)(1)] because [it] requires officials to take actions that (in the Government's view) are not required," and to "refrain from actions that (again in the Government's view) are allowed by [§1225(b)(1)]." *Id.* The district court thus issued the exact type of order that §1252(f)(1) forbids.

The district court claimed a §705 stay is different from an injunction. Op.19 (incorporating by reference, *Coal. for Humane Immigrant Rights v. Noem* ("*CHIR*"), 2025 WL 2192986, at *13 (D.D.C. Aug. 1, 2025)). But for purposes of §1252(f)(1), that is a distinction without a difference. The provision is concerned with the *effect* of a remedy on the operation of certain provisions of the INA. *See Aleman Gonzalez*, 596 U.S. at 551. Notably, §1252(1)'s text extends beyond

injunctions, to expressly include any order that "restrain[s]" the operation of a covered statute. So regardless of whether a stay effectively "enjoins" an action, there is no colorable argument that a stay preventing the Government from taking certain actions does not "restrain" the Government from taking those actions. It falls within the heartland of §1252(f)(1).

Section 1252(f)(1) is not the only jurisdictional bar that applies to the decision below. For the reasons provided by Judge Rao, Sections 1252(a)(2)(A) and (B) independently stripped the district court here of jurisdiction. *See Make the Road N.Y. v. Wolf*, 962 F.3d 612, 638-45 (D.C. Cir. 2020) (Rao, J., dissenting). The Government preserves those grounds in the event of further review.

### B. The Procedures that Congress Provides Satisfy Due Process for Aliens With Less Than Two Years of Presence

1. The Supreme Court has long held that "the due process rights of an alien seeking initial entry" are no greater than "[w]hatever the procedure[s] authorized by Congress." *Thuraissigiam*, 591 U.S. at 139. For such aliens, "the decisions of executive or administrative officers,

acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892).

The Supreme Court has also long applied this so-called "entry fiction" to aliens beyond those literally seeking entry at the border. For instance, "aliens who arrive at ports of entry … are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139. And most relevant, so too are aliens who have been "paroled elsewhere in the country for years pending removal." *Id.*; *accord Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925).

Across its cases, the Supreme Court has distinguished between aliens who have at some point been allowed to enter the country lawfully, and those whose presence has never been sanctioned. While the former may claim due-process protections beyond what Congress has provided, even when their legal status changes (*e.g.*, an alien who overstays a visa, or is later determined to have been admitted in error), *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 49–50 (1950), the Supreme Court has never held that aliens who have entered the country clandestinely are entitled to such additional rights. That is, "once an alien gains admission to our country and begins to develop the ties that go with permanent

12

residence"—a status that, by definition, unlawful entrants are legally barred from obtaining—"his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). But before then, an alien who clandestinely enters "does not become one of the people to whom these things are secured by our Constitution by an attempt to enter, forbidden by law." *United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904); *accord Wong Yang Sung*, 339 U.S. at 49–50.

Those principles resolve this case—as the Supreme Court affirmed in *Thuraissigiam*. There, the Court upheld the current expedited removal system against a due-process challenge. 591 U.S. at 140. It held that where an alien is legally "treated" as an "applicant for admission," he is entitled to only what process the political branches provide. *Id.* And that describes those aliens covered by the 2025 Designation and Huffman Memorandum: Where—as here—an alien "has not been admitted" lawfully into this country at any point, he is treated under the federal immigration laws as an "applicant for admission." 8 U.S.C. 1225(a)(1). For them, "[w]hatever the procedure authorized by Congress is, it is due

13

process." *Thuraissigiam*, 591 U.S. at 139 (quoting *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).[2]

2.  The district court sought to limit *Thuraissigiam* to its facts, holding it applies to those stopped at the border—and "25 yards" beyond—but not to any aliens who had reached the "interior" of the country, one way or another. Op.11–12. That is untenable.

To start, the court's rationale is irreconcilable with *Thuraissigiam* itself. The *Thuraissigiam* Court stressed that the law's "entry fiction" applied in full measure to those aliens paroled into the country "for years" pending their removal. 591 U.S. at 139. This is because an alien's physical presence is not what is necessary for him to "effect an entry" into the United States; he must be "admitted into the country pursuant to law" at some point. *Id.* at 138–39 (quotations omitted).

Indeed, it would be wholly nonsensical for the Constitution to treat *worse* those aliens who the United States has decided to parole into the

---

[2] Plaintiff identifies only members who entered the country unlawfully, not aliens subject to the 2025 Designation who entered lawfully, such as aliens who were paroled into the country but have had their parole revoked. Plaintiff thus lacks standing to assert claims of the latter group, *see infra* p.27. Regardless, neither group of aliens has ever been "admitted."

nation, than those who simply barge past the border, against our consent. Neither the Due Process Clause nor the Supreme Court's precedents on it offer a windfall for those who successfully circumvent our laws.

The district court's contrary view would thrust the federal courts into an area that the Constitution exclusively assigns to the political branches. Whether an alien has "established connections" sufficient to merit additional process is a political judgment that falls to the political branches, *see Thuraissigiam*, 591 U.S. at 107, and courts lack any judicially manageable standard to make such a determination. Even Plaintiff agrees that aliens here for short periods of time can be subject to expedited removal, Op.16 n.12, but offer no cogent principle for courts to determine whether due process attaches at 14 days, 3 months, or 5 years. The difficulty with such line-drawing is one reason the Court has long recognized that "the power to set the procedures to be followed in determining whether an alien should be admitted" falls to the political branches. *Thuraissigiam*, 591 U.S. at 139.

In holding otherwise, the district court misread controlling precedent. The court reasoned that the Due Process Clause "applies to all persons within the United States, including aliens, whether their

15

presence here is lawful, unlawful, temporary, or permanent," so even aliens who are not lawfully present in the country must receive more process in their removal proceedings than is granted by statute. *See* Op.21 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

Yet the district court's primary authority, *Zadvydas*, involved due-process objections to potentially indefinite *detention* of aliens with final orders of removal, not the constitutionality of expedited removal procedures. 533 U.S. at 682. As a matter of constitutional avoidance, *Zadvydas* interpreted the relevant statute to limit detention presumptively to six months. *Id.* at 699–702. While the Court stated that the Due Process Clause extends to all "persons" in the United States, it acknowledged that "the nature of that protection may vary depending upon status and circumstance." *Id.* at 693. The Court did not purport to resolve what process is due to aliens never admitted to the country and subject to expedited removal under §1225(b).

Likewise, the district court invoked decisions like *Yamataya v. Fisher*, 189 U.S. 86 (1903), *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), and *A.A.R.P. v. Trump*, 145 S. Ct. 1367 (2025). But these decisions offer no help. In *Yamataya*, the Court expressly left "on one side the question

whether an alien can rightfully invoke the due process clause of the Constitution who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population." *Yamataya*, 189 U.S. at 100; *see also Wong Yang Sun* v. *McGrath*, 339 U.S. 33, 49–50 (1950). And with *J.G.G.* and *A.A.R.P.*, the Court was reviewing actions taken under the Alien Enemies Act—a statute where Congress *provided* statutory procedures that would amount to due process. *See Ludecke v. Watkins*, 335 U.S. 160, 163, 171 n.17 (1948); *see also* Gov't Br. at 18–20, *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) (No. 24A931).

3. Because inadmissible aliens lack a liberty interest in remaining in the country, the district court thus further erred in applying the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to evaluate the constitutionality of expedited-removal procedures available under §1225(b). Regardless, the expedited removal procedures provide all the process that *Mathews* would require. *Mathews* governs how courts assess "the specific dictates of due process" when the government seeks to deprive an individual of a constitutionally protected liberty or property interest. 424 U.S. at 335. Courts weigh: (1) the private interest at stake,

17

(2) the risk of erroneous deprivation under the existing procedures and the probable value of additional safeguards, and (3) the government's interest, including fiscal and administrative burdens. *Id.*

*Mathews* does not govern here because it presupposes the existence of a liberty or property interest. *Id.* at 332. But there is simply no right "deeply rooted in this Nation's history and tradition" for aliens not lawfully admitted to remain in the country. *See Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quotations omitted). "On the contrary, the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Id.* at 911–12. Aliens subject to expedited removal under §1225(b) are applicants for admission. Such individuals, at least those present for less than two years, are entitled only to "whatever the procedure authorized by Congress is," and nothing more. *Thuraissigiam*, 591 U.S. at 139 (quoting *Knauff*, 338 U.S. at 544).

The district court instead concluded that "individuals who have effected entry to the United States have a 'weighty' liberty interest in staying." Op.28 (quoting *Landon*, 459 U.S. at 34). Yet the case on which the district court relied involved a "permanent resident alien" seeking to

18

re-enter the country, not—as here—aliens who have never been lawfully admitted. *See Landon*, 459 U.S. at 35.

### C. Even if the Aliens Here Possess a Liberty Interest in Remaining, the Expedited Removal Procedures Provide Sufficient Process

Even accepting the district court's faulty premise of a liberty interest, the court misapplied the remaining *Mathews* factors. The court never differentiated between categories of aliens who fall under the 2025 Designation, treating as a single group both: (1) aliens who assert substantive immigration claims, such as asylum eligibility or protection under the Convention Against Torture ("CAT"); and (2) those whose claims are purely procedural—for example, those claiming they have been continuously present in the United States for more than two years. That is a critical error because "the requirements of due process are flexible and highly dependent on context." *Al-Hela v. Biden*, 66 F.4th 217, 237 (D.C. Cir. 2023) (en banc). Regardless, the procedures available to both categories of aliens are sufficient.

1. As to aliens claiming a substantive right to protection or legal status, those aliens already receive additional procedural safeguards in expedited removal. Individuals who express a fear of return are referred

19

for a credible fear interview with an asylum officer, and, if found to have a credible fear, receive full consideration in §240 removal proceedings. *See* 8 C.F.R. §§235.3(b)(4), 208.30. Those who claim lawful permanent resident status, U.S. citizenship, or prior asylum or refugee status must be referred to an immigration judge for review if their status cannot be verified. 8 C.F.R. §235.3(b)(5). And those who may qualify for protection under CAT receive the same fear-screening process. 8 C.F.R. §208.31. These procedures include notice, interviews with trained officers, supervisory review, and in many cases, further adjudication before an immigration judge.

The district court's critique of the credible-fear process rests on alleged deficiencies in how asylum screenings are conducted—suggesting that immigration officers hold too much discretion, that the process may be rushed or error-prone, and that access to counsel or evidence is often limited. Op.29–34. None of that constitutes a facial due process violation. Moreover, the credible fear process includes layers of procedural safeguards. If an asylum officer declines to refer an alien for asylum proceedings, the decision is subject to supervisory review and then to a prompt de novo hearing before an immigration judge. 8 U.S.C.

§1225(b)(1)(B)(iii)(III); 8 C.F.R. §§1003.42(d), 1208.30(g).  The additional procedural enhancements the district court identified—such as guaranteed access to counsel, longer preparation times, or greater evidentiary disclosure—involve policymaking.  But the due process inquiry focuses on what process is due, not what processes a district judge deems ideal.  *Thuraissigiam*, 591 U.S. at 139–40.

In short, this interlocking system of multiple procedures, with multiple decisionmakers and ample opportunities to test allegations, satisfies whatever due process might require, even if illegal aliens have a cognizable and weighty liberty interest.  As the Supreme Court summarized:  "An alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear."  *Thuraissigiam*, 591 U.S. at 110.  That satisfies the Constitution.

2.  As to the other group of aliens the district court identified—*i.e.*, aliens with procedural objections, such as that they were present for *more* than two years, Op. 33–38—those claims are even more flawed.  To start,

21

Plaintiff never identifies anyone who contests expedited removal on this basis and thus lacks associational standing to pursue such a claim.

For Plaintiff to sue on behalf of its members, it must demonstrate that its members would have "standing to sue in their own right." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quotations omitted). Absent identification of "at least one identified member had suffered or would suffer harm," the group lacks associational standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). But here, Make the Road was the only Plaintiff who requested preliminary relief; Mary and John Doe, who were allegedly subject to expedited removal after more than two years of continuous presence, disclaimed "seek[ing] interim relief through this motion." Dkt. 50-1, at 2 n.1. Moreover, none of Make the Road's allegations assert that any members were placed or were likely to be placed in expedited removal after being in the United States for more than two years. Dkt. 27 ¶¶98–101; Dkt. 50-2, Exh. A (Decl. of John Doe 4), Exh. B (Decl. of Jane Doe 2). Indeed, Plaintiff admits its Doe members were never placed in expedited removal proceedings at all, and the only identified members in removal proceedings are in §240 proceedings, not

22

expedited ones. *See* Dkt. 27 ¶¶98, 100–101; Dkt. 50-2, Exh. A (Decl. of John Doe 4), Exh. B (Decl. of Jane Doe 2). Make the Road lacks associational standing for this claim. *See J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C. Cir. 1996).

This claim fails on the merits regardless, because the statute and regulations provide all the process due for allowing an alien to demonstrate continuous presence. The district court was incorrect to assert that no procedures exist to identify individuals who have been present for more than two years. Op.34–37. While there is no distinct protocol for assessing continuous presence and no express prompt on Form I-867A for immigration officers to expressly ask, Op.33, the statute and regulations plainly allow such claims to be raised and considered. Specifically, the alien has the burden to demonstrate that they are not subject to expedited removal, including by showing two years of continuous physical presence, 8 C.F.R. §235.3(b)(1)(ii)—something that should not be difficult to prove. An alien has an opportunity to demonstrate continuous presence by offering, *inter alia*, banknotes, leases, deeds, licenses, bills, receipts, employment records, and the like. Declaration of Liana J. Castano ("Castano Decl."), Exh. C, ¶6.

Regardless, there is no constitutional requirement that the government affirmatively inform every alien of every possible defense to expedited removal—particularly when the underlying claim does not implicate a liberty interest in remaining in the country. *Cf. Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("An expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.").

## II.    The District Court's Order Irreparably Harms Defendants and the Equities Favor a Stay.

The district court's order significantly harms the Government and the public. The government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551–53 (2025) (quotations omitted). That is "particularly" true "given the millions of individuals illegally in the United States, the myriad significant economic and social problems caused by illegal immigration, and the Government's efforts to prioritize stricter enforcement of the immigration laws enacted by Congress." *Noem v. Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *4 (Sept. 8, 2025) (No. 25A169) (Kavanaugh, J., concurring) (cleaned up).

24

The district court's order halts expedited removal of as to potentially hundreds of thousands of inadmissible aliens here from fifteen days to two years who are encountered more than 100 miles from the border, despite clear statutory authorization to expand expedited removal to those aliens. And the order interferes with the Executive's constitutional and statutory responsibility to remove aliens who have no right to remain in the country—including aliens with criminal records. Castano Decl. ¶¶10, 12. The order also imposes substantial administrative burdens by requiring DHS to litigate §240 removal hearings if it chooses to pursue removal. *See id.* ¶¶5, 7, 12–14. The consequence is reduced detention capacity for aliens who are removal priorities. *Id.* ¶12. And longer detention times from initiating §240 removal proceedings means the government is incurring an increased cost to detain those aliens. *Id.* ¶11.

The harm to Defendants and the public interest outweighs the harms of Plaintiff's members. The streamlined expedited-removal process stems from Congress's decision to permit DHS to remove aliens expeditiously without the more cumbersome and duplicative proceedings under §240. *Id.* ¶¶5, 7, 12–14; *Thuraissigiam*, 591 U.S. at 108–09, 118.

25

And Plaintiff does not even allege that any of its members are currently in expedited-removal proceedings. *Supra* pp.8, 22–23. Thus, the balance of harms favors Defendants.

## III. The District Court's Overbroad Relief Exceeded its Authority

At minimum, the district court exceeded its authority by issuing a universal stay. Plaintiff sued on behalf of its members, and complete relief is provided by a remedy that applies to those members it can identify as affected by the challenged agency actions.

Section 705 states a court may order relief only "to the extent necessary to prevent irreparable injury." 5 U.S.C. §705. The phrase "irreparable injury," in the context of interim equitable relief, refers to irreparable injury to the plaintiff—not third parties. *CASA*, 145 S. Ct. at 2551–53. The Ninth Circuit recently held *CASA*'s "complete-relief principle provides some useful guidance for crafting interim equitable relief" in §705 cases, which use the same traditional equitable principles that govern the preliminary injunctions at issue in *CASA*. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 996 (9th Cir. 2025). Based on *CASA*, the Ninth Circuit proceeded to "limit the district court's §705 Stay order" to plaintiff's clients. *Id*. This Court should do the same.

26

This Court should at least make clear that the district court's stay applies only to aliens who were never lawfully present in the country. Plaintiff Make the Road asserted associational standing on behalf of four members who all entered the country unlawfully. *See* Dkt. 27 ¶¶ 98–101; *supra* p.8. Plaintiff does not identify any member who *entered* the country *lawfully*, *i.e.*, because they were granted humanitarian parole that was subsequently revoked. The district court therefore lacked jurisdiction to stay agency actions beyond the context of aliens who entered the country unlawfully and are subject to expedited removal.

## CONCLUSION

The Court should grant an immediate administrative stay and, after briefing, a stay pending appeal.

Respectfully submitted,

BRIAN C. WARD
*Acting Assistant Director*

ELISSA P. FUDIM
CAROLINE McGUIRE
*Trial Attorneys*
U.S. Department of Justice,
Civil Division
Office of Immigration
Litigation
P.O. Box 868 Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*

/s/ *Drew C. Ensign*
DREW C. ENSIGN
*Deputy Assistant Attorney General*

Drew.C.Ensign@usdoj.gov
(202) 514-2000

TYLER J. BECKER
*Counsel to the Assistant Attorney
General*
U.S. Department of Justice, Civil
Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dated: September 9, 2025

28

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5,159 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Century Schoolbook type.


<u>/s/ *Drew C. Ensign*</u>
Drew C. Ensign

Dated:  September 9, 2025          Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Drew C. Ensign*
Drew C. Ensign

Dated:  September 9, 2025          Attorney for Appellants

30