NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-05320

# United States Court of Appeals
# for the
# District of Columbia Circuit

---

MAKE THE ROAD NEW YORK, et al.,
*Plaintiffs-Appellees*

v.

KRISTI NOEM, et al.,
*Defendants-Appellants*

---

Appeal From the United States District Court for the District of Columbia
Case No. 1:25-cv-190-JMC (Hon. Jia M. Cobb)

---

**APPELLEE'S OPPOSITION TO APPELLANTS'
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

---

Respectfully submitted,

Morgan Russell
Hannah Steinberg
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*mrussell@aclu.org*
*hsteinberg@aclu.org*
*cwofsy@aclu.org*

Amy Belsher
Robert Hodgson
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

*/s/ Anand Balakrishnan*
Anand Balakrishnan
*Counsel of Record*
Michael K.T. Tan
Grace Choi
Sidra Mahfooz
Omar C. Jadwat
Lee Gelernt
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*m.tan@aclu.org*
*gchoi@aclu.org*
*smahfooz@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Arthur B. Spitzer
Aditi Shah
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and Amici**

All parties, intervenors, and amici appearing in this Court are listed in the Emergency Motion for Stay Pending Appeal.

I certify under Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 27(a)(4) that Plaintiff Make the Road New York has no parent corporations, and no publicly held company owns 10% or more of Plaintiff Make the Road New York.

**B.    Rulings Under Review**

References to the rulings at issue appear in the Emergency Motion for Stay Pending Appeal.

*/s/ Anand Balakrishnan*
Anand Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*

## <u>TABLE OF CONTENTS</u>

CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES ...........i

INTRODUCTION.................................................................................................1

BACKGROUND..................................................................................................3

    A.  The Expedited Removal System..................................................3

    B.  Defendants' Expansion of Expedited Removal.........................5

    C.  Proceedings Below.......................................................................6

LEGAL STANDARD..........................................................................................8

ARGUMENT.......................................................................................................8

    I.  Defendants are Unlikely to Succeed on the Merits. ..................8

    A. 8 U.S.C. § 1252(f)(1) Does Not Bar Relief. ..........................8

    B. Noncitizens Subject to the Designation and Guidance Have a Liberty Interest in Remaining in the United States. .............................10

    C. The Procedures Imposed by the Designation and Guidance Violate Due Process. ........................................................................12

    II.  The Equities Weigh Against a Stay. ......................................19

    III. The Scope of Relief is Proper. ..............................................20

CONCLUSION..................................................................................................22

## **INTRODUCTION**

As the district court found in its detailed opinion, Defendants' decision to expand the expedited removal process away from the border and apply it nationwide creates an intolerable risk of erroneous deportations. And it has already caused many such errors, inflicting grave harm on families and communities across the country. Defendants have detained noncitizens who have dutifully appeared for their immigration court hearings and summarily removed them without any meaningful opportunity to contest whether they are lawfully subject to expedited removal at all. And although expedited removal can only be lawfully applied to noncitizens present in the United States for less than two years, Defendants have no process in place to ensure that the people they seek to summarily remove can prove their length of residence. As a result, two of the Plaintiffs in this case who lived in this country for a decade were separated from their U.S. citizen family members and unlawfully removed without hearings. Others who have lived here for even longer have suffered the same harm.

In Defendants' view, those deportations do not implicate any constitutionally protected interest because only people lawfully admitted to the United States have a liberty interest in remaining. On that view, the Constitution would permit summary removal of people who have lived in this country not just for months but for decades. That defies over a century of Supreme Court precedent.

1

The Supreme Court has "long held"—and reaffirmed this year—that "[t]he Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings," such that "'no person shall be' removed from the United States" without reasonable notice and a meaningful opportunity to be heard. *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) (cleaned up) (quoting *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). Defendants' expansion of expedited removal violates due process because it permits Department of Homeland Security ("DHS") officers to summarily remove noncitizens who have already entered the United States—and therefore have a liberty interest in remaining here—with no advance notice and no meaningful opportunity to contest key predicates for removal.

The district court made clear that it was not "barring the Government from subjecting the group of people affected by the [expansion designation] to expedited removal." Mem. Op. 40, *Make the Road N.Y. v. Noem*, No. 25-cv-190 (Aug. 29, 2025), ECF 64 ("Op.").[1] Instead, Defendants "remain[] free to issue new rules or guidance implementing" even "modest procedural safeguards" to ensure that people are "subjected to expedited removal through constitutionally adequate procedures." *Id.* at 41. But they resist even such modest procedural improvements.

The stay of the policy as authorized by the Administrative Procedure Act ("APA") was proper. And the equities weigh decisively against a stay pending

---

[1] ECF Numbers refer to the district court docket.

appeal. Defendants' interests in speed and efficiency in carrying out removals do not outweigh "the necessity that such interests be pursued in a manner consistent with the Constitution." *A.A.R.P.*, 145 S. Ct. at 1368.

## BACKGROUND

### A.      The Expedited Removal System

Before 1996, all noncitizens facing deportation were entitled to full hearings before immigration judges. They had the opportunity to prepare their cases, to retain and rely on the assistance of counsel, and to present and confront evidence. And they could seek both an administrative appeal and federal court review.

Legislation in 1996 created alternative "expedited removal" proceedings. 8 U.S.C. § 1225(b)(1); Op. 4-5. Expedited removal can consist of two stages, though often concludes after just one: first, inspection by an immigration officer, including questioning about fear of removal; and second, for asylum seekers and others who fear removal, a credible fear interview by an asylum officer and the opportunity for immigration judge review thereof.

When someone applies for admission at a port of entry, an immigration officer must first determine if they are inadmissible either because they have engaged in fraud or lack a valid entry document (such as a visa). 8 U.S.C. § 1225(b)(1)(A)(i), (ii); *id.* § 1182(a)(6)(C), (a)(7). Unless the person claims to be a U.S. citizen, lawful permanent resident, refugee, or asylee, *see id.* § 1225(b)(1)(C), the officer "shall"

3

order them removed "without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). If a noncitizen expresses such an intention or fear, referral to a credible fear interview is mandatory.

During the inspection stage, the person is detained and denied the ability to contact or rely on the assistance of counsel. Op. 5-6. The immigration officer's decision is subject only to a paper review by a supervisor; there is no administrative appeal. Op. 6, 34-35.

Asylum seekers may reach the second stage, which does not remotely approach the process afforded in regular immigration proceedings. Op. 5-6. At the credible fear interview, the applicant must show "a significant possibility" that they "could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v). Noncitizens are generally detained during credible fear interviews, 8 C.F.R. § 235.3(b)(4)(ii); Op. 5-6, and asylum officers normally conduct the interviews by phone even though the officer must evaluate the noncitizen's "credibility," 8 U.S.C. § 1225(b)(1)(B)(v).

Noncitizens who meet the screening standard are placed in regular removal proceedings. Someone who does not pass the credible fear interview may request review by an immigration judge, but receives only a limited hearing and has no right to further administrative or judicial review. 8 U.S.C. §§ 1225(b)(1)(B)(iii)(II)-(III), 1252(a)(2)(A)(iii).

**B.    Defendants' Expansion of Expedited Removal**

Congress authorized the DHS Secretary to expand expedited removal to encompass, at maximum, certain noncitizens who were not lawfully admitted or paroled into the country and not continuously physically present for at least two years. 8 U.S.C. § 1225(b)(1)(A)(iii)(I)-(II). For twenty years, until the first Trump administration, the government chose not to expand expedited removal to its statutory limits. Op. 9-10. At least one prior administration—that of President George W. Bush—rejected such an extreme expansion due to concerns it would be illegal. ECF 50-23 at 226. With just minor exceptions, the government has used expedited removal only at and near the border.

On January 21, 2025, the Acting DHS Secretary issued a notice authorizing the expedited removal of certain noncitizens arrested anywhere in the country who cannot show "to the satisfaction of an immigration officer" that they have been continuously present for at least two years. Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 21, 2025) ("Designation"). On January 23, 2025, the Acting Secretary issued a memorandum implementing the Designation that directs officers to consider applying expedited removal to any noncitizen "who is amenable to expedited removal." ECF 50-23 at 9-10 ("Guidance").

### C.    Proceedings Below

On March 22, 2025, Plaintiffs Make the Road New York ("MRNY") and Mary and John Doe filed the operative complaint challenging the Designation and Guidance on due process and statutory grounds. MRNY is a membership organization with "over 28,000 members" in the greater New York City area, including "noncitizens who have been in the country for between 14 days and two years, and who are therefore subject to expedited removal under" the Designation. Op. 12-13. MRNY sued "on behalf of its members." Op. 13. Mary and John Doe are a mother and son who were subjected to expedited removal under the Designation after living in the United States for a decade, and despite having entered legally through a port of entry. Op. 14-15.

Defendants did not immediately implement the Designation at scale but "enforcement efforts significantly ramped up" in May 2025. Op. 11. Defendants "set a goal that month of making 3,000 immigration arrests each day" and "began targeting for expedited removal people already in [regular] removal proceedings, many of whom are pursuing asylum and other collateral relief." *Id.* Defendants also "launched a series of workplace raids as part of a 'new phase of the Trump administration's immigration crackdown.'" Op. 12.

On June 10, 2025, in response to this ramp-up and fearing irreparable harm to its many members susceptible to expedited removal, MRNY moved the district court

to stay the Designation and Guidance pursuant to the APA, 5 U.S.C. § 705, which the district court granted on August 29.

Applying the procedural due process balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), the district court first concluded that MRNY's members and others at risk of expedited removal under the Designation and Guidance have a weighty liberty interest in remaining in the United States. Op. 21-28.

The district court then closely examined the procedures imposed by the Designation and Guidance and concluded that the second factor—the risk of erroneous deprivation in the generality of cases—also heavily favored Plaintiff. Op. 29-36. The court concluded that the Designation and Guidance create an intolerable risk of error in: (1) "determining whether a noncitizen has been present for two years," due to Defendants' "woefully inadequate procedures" for making that determination, Op. 33-36; (2) referring noncitizens who fear removal to the required credible fear screening interviews, Op. 29-33; and (3) ensuring that noncitizens with credible fears of persecution or torture are placed in full removal proceedings, Op. 31-32.

Finally, the district court concluded that the government's interests in swift removals does not outweigh the value of modest procedural safeguards, such as adopting policies that "ensure that individuals are asked about, and have an

opportunity to contest, their eligibility based on continuous presence grounds" or ensure a "meaningful opportunity to ask counsel or third parties for help in gathering evidence to prove either a credible fear or their continual presence." Op. 36-39.

## LEGAL STANDARD

The government bears the burden on four factors: (1) a "strong showing" it is likely to succeed; (2) irreparable injury; (3) whether a stay "will substantially injure" other parties; and (4) "the public interest." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

## ARGUMENT

### I.    Defendants Are Unlikely to Succeed on the Merits.

Defendants fail to make the necessary strong showing that they are likely to prevail. First, the bar on classwide *injunctive* relief in 8 U.S.C. § 1252(f)(1) does not apply to stays of agency action under the APA. Second, Defendants' assertion that noncitizens who unlawfully entered the United States have no constitutionally protected liberty interest in remaining here defies more than a century of Supreme Court precedent. And third, Defendants identify no error in the remainder of the district court's *Mathews* analysis.

#### A.  8 U.S.C. § 1252(f)(1) Does Not Bar Relief.

Section 1252(f)(1) does not apply to stays of agency action under the APA, 5 U.S.C. § 705. An unbroken line of cases has rejected Defendants' contrary argument. *Coal. for Humane Immigrant Rts. v. Noem*, 2025 WL 2192986, at *13 n.16 (D.D.C. Aug. 1, 2025) (collecting cases). Section 1252(f)(1) is "nothing more or less than a

limit on *injunctive relief*." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) (emphasis added). And courts have long distinguished stays from injunctions. *Nken*, 556 U.S. at 428-29. Compared to injunctions, vacatur under the APA is "less drastic," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010)—and stays under Section 705 are a "temporary form of vacatur," *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 254 (5th Cir.), *rev'd on standing grounds*, 602 U.S. 367 (2024); *accord Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022).

Defendants' interpretation of Section 1252(f)(1) would preclude *any* systemic relief, despite that provision's express authorization of "'[c]hallenges on [the] validity of the system,'"—apparently "including declaratory relief"—thereby eviscerating the latter statute's guarantee of review of the validity of the expedited removal system. *See Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *4, 14. This Court should reject reading Section 1252(f)(1) to "impute to Congress a purpose to paralyze with one hand what it sought to promote with the other." *Grace v. Barr*, 965 F.3d 883, 893 (D.C. Cir. 2020) (quoting *Clark v. Uebersee Finanz-Korporation*, 332 U.S. 480, 489 (1947)) (rejecting effort to eliminate review under Section 1252(e)(3)).

**B.  Noncitizens Subject to the Designation and Guidance Have a Liberty Interest in Remaining in the United States.**

The district court correctly relied on "more than a century of precedent holding that those who have entered the United States have a liberty interest in remaining—no matter how they entered." Op. 23.

*Yamataya v. Fisher*, 189 U.S. 86 (1903), held that a noncitizen who entered the United States in violation of law could not be "deprived of [her] liberty" without receiving "due process of law." *Id.* at 100-01. Most recently, in *A.A.R.P.*, the Supreme Court reiterated that it has "long held that 'no person shall be' removed from the United States" without due process. 145 S. Ct. at 1367 (quoting *Yamataya*, 189 U.S. at 101); *see also, e.g.*, *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953) (Noncitizens "who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (citing *Yamataya*, 189 U.S. at 100-01).

Defendants claim that *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), upended this line of cases to hold that only noncitizens who have been "lawfully admitted" to the United States have due process rights in remaining here. Appellants' Emergency Mot. Admin. Stay and Stay Pending Appeal 18-19 ("Mot."). Not so. *Thuraissigiam* held that a noncitizen apprehended "25 yards into U.S. territory" was entitled only to the process Congress provided because he had not "'effected an entry.'" 591 U.S. at 139-140 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). Because that was

10

the only situation *Thuraissigiam* addressed, it did not and could not overrule the Supreme Court's earlier holdings that noncitizens who have entered the United States, even if unlawfully, have due process rights.[2]

Defendants argue *Yamataya* left the rule unsettled as to unlawful entrants, Mot. 16-17, but the noncitizen there was arrested and charged with deportation four days after the government asserted she had "surreptitiously, clandestinely, unlawfully, and without any authority come into the United States." 189 U.S. at 87; *see also* ECF 58-1 at 40, 46-47, 49, 51 (Br. for U.S., *Yamataya v. Fisher*, No. 171 (U.S. Oct. 2, 1901)) (stating noncitizen had entered "clandestinely" and "surreptitiously" through "evasion of inspection"). The Court nonetheless held that she could not be "deprived of [her] *liberty*" without receiving "due process of law." 189 U.S. at 100-01 (emphasis added); *see also id.* at 100 (deportation "involv[es] the liberty of persons").

And the Supreme Court's opinion this year in *A.A.R.P.* refutes both Defendants' reading of *Yamataya* and their suggestion (Mot. 17) that *A.A.R.P.* turned on statutory rather than constitutional grounds. First, the Court stated that "[t]*he Fifth Amendment* entitles [noncitizens] to due process of law in the context of removal proceedings." *A.A.R.P.*, 145 S. Ct. at 1367 (emphasis added) (quoting *Trump v.*

---

[2] *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892), on which Defendants rely (Mot. 11-12), is similarly inapposite: the petitioner there was seeking initial admission at a port of entry and therefore had not effected an entry. *Id.* at 662.

*J.G.G.*, 145 S. Ct. 1003, 1006 (2025), in turn quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993), in turn citing *Yamataya*, 189 U.S. at 100-01). Then, citing *Yamataya* directly, the Court reaffirmed "'no person shall be' removed from the United States 'without opportunity, at some time, to be heard.'" *Id.* (quoting *Yamataya*, 189 U.S. at 101).

Congress cannot dictate whether someone has "effected an entry" and is therefore a person "within the United States" for due process purposes. *Zadvydas*, 533 U.S. at 693; *see also id.* at 695 ("Executive and Legislative Branch decisionmaking" concerning removal "is subject to important constitutional limitations."); *Landon v. Plasencia*, 459 U.S. 21, 24-26, 32-34 (1982) (noncitizen apprehended at the border and therefore categorized by Congress as subject to streamlined "exclusion" proceedings rather than more robust "deportation" proceedings nonetheless had constitutional due process rights); *cf. Boumediene v. Bush*, 553 U.S. 723, 765 (2008) (rejecting the notion that "the political branches have the power to switch the Constitution on or off at will").

## C. The Procedures Imposed by the Designation and Guidance Violate Due Process.

The district court correctly applied the *Mathews* balancing test to conclude that the Designation and Guidance likely violate the due process rights of the noncitizens to whom they apply. Op. 27-41. Defendants largely fail to engage with the district court's fact-bound analysis based on the record below. And the objections

they do raise all fail.

1.    Defendants briefly assert that the district court erred because it "never differentiated between" noncitizens "who assert substantive immigration claims" from noncitizens who "have been continuously present in the United States for more than two years." Mot. 19. But those purported "categories" overlap: many noncitizens who have lived in the United States for two years or more *also* have claims for asylum and related protection.

In any event, the district court identified unacceptable risks of error concerning both purported "categories." Op. 29-36. And Defendants' arguments about both those sets of defects lack merit.

2.    The "complete lack of process for an individual to demonstrate how long they have been present . . . creates a significant risk of erroneous removal" when "expedited removal is applied to people in the interior of country." Op. 35-36. These defects have resulted in repeated erroneous expedited removals, including those of Plaintiffs Mary and John Doe, who had lived continuously in the United States for *ten years*, and another noncitizen who had lived here for *thirty*. Defendants argue that "the district court was incorrect to assert that no procedures exist" because noncitizens "ha[ve] an opportunity to demonstrate continuous presence" using "banknotes, leases, . . . and the like." Mot. 23. But the newly filed declaration the government cites in support just states that "an officer considers" such documents.

13

Mot., Ex. C. ¶ 6. It nowhere indicates that noncitizens receive a *meaningful opportunity* to gather and present them.[3]

And Defendants admit the opposite: they have in place no "distinct protocol for assessing continuous presence" nor even guidance directing "immigration officers to expressly ask" noncitizens about the issue. Mot. 23. Without any such process, noncitizens who have the necessary continuous presence receive *no notice whatsoever* that avoiding summary deportation with no hearing depends on raising the issue. Even those who happen to have relevant documents on them when apprehended have no notice of the need to present them and so are unlikely to do so. As the Supreme Court made clear in *A.A.R.P.*, summary removal without any meaningful notice of the steps required to receive a hearing to contest that removal "surely does not pass muster" under the Due Process Clause. 145 S. Ct. at 1368; *see also Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) ("due process require[s] the government to accord the plaintiff a hearing to prove or disprove a particular fact or set of facts . . . relevant to the inquiry at hand").

Defendants assert that MRNY lacks "standing" to complain of this defect because it did not "assert that any [of its] members were placed or were likely to be placed in expedited removal after being in the United States for more than two

---

[3] Defendants failed to assert the existence of any such procedures below, despite the district court's invitation to do so. Op. 6 n.3, 39; *see Chichakli v. Tillerson*, 882 F.3d 229, 234 (D.C. Cir. 2018) (arguments not raised below are forfeited).

years." Mot. 22-23. But "only one plaintiff must have standing" to stay the Designation and Guidance on due process grounds, and Defendants do not question the standing of MRNY's members present for less than two years. *See In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012); *see also Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (a party need only "demonstrate standing for each *claim* he seeks to press and for *each form of relief* that is sought") (emphasis added).

In any event, MRNY has "many members who have been present for greater than two years," ECF 50-2 ¶¶ 41, and the district court properly found that "many of its 'members [] would have difficulty affirmatively demonstrating two years of physical presence, particularly if suddenly detained or given only a short period of time to do so.'" Op. 37 (quoting ECF 50-2 ¶ 42). Other members previously on the verge of completing two years of presence have now done so; members John Doe 1 and Jane Doe 1 "entered the United States without inspection in July 2023" and "August 2023," respectively, and have "been in the country since then." ECF 50-2 ¶¶ 20, 24.[4]

Additionally, "risk of error" is assessed based on "the generality of cases,"

_____

[4] Defendants raised this standing argument for the first time on appeal, despite ample opportunity to do so below—either in opposing the Section 705 stay or in seeking a stay pending appeal from the district court—which would have permitted MRNY to submit clarifying evidence. To the extent there is any remaining factual question, the district court can address it at summary judgment.

rather than any one member's experience. *See Mathews*, 424 U.S. at 344. The district court found Defendants' procedures for assessing continuous presence so deficient that *anyone* would lack adequate notice and opportunity to contest it. The "unsurprising" result has been repeated erroneous expedited removals of people who have lived continuously in the United States for longer than two years—sometimes "far longer." Op. 36; *see, e.g.*, *Co Tupul v. Noem*, No. 25-cv-2748, 2025 WL 2426787, at *1 (D. Ariz. Aug. 4, 2025) (noncitizen present for 30 years); ECF 50-7 ¶¶ 3-11 (Plaintiffs Mary and John Doe, who had lived in the United States for ten years); *Tamay v. Scott*, No. 2:25-cv-438-JAW, 2025 WL 2507011, at *1 (D. Me. Sept. 2, 2025) (noncitizens present for six years); *Orellana Juarez v. Moniz*, 2025 WL 1698600, at *1 (D. Mass. June 11, 2025) (three years); ECF 50-4 ¶ 23 (same); *Domingo-Ros v. Archambeault*, 2025 WL 1425558, at *3 (S.D. Cal. May 18, 2025) (longer than two years); *Chogllo Chafla v. Scott*, No. 2:25-cv-437-SDN, 2025 WL 2531027, at *1 (D. Me. Sept. 2, 2025) (same); *Hernandez Torrealba v. DHS*, No. 1:25-cv-1621, 2025 WL 2444114, at *1-2 (N.D. Ohio Aug. 25, 2025) (same); *Castillo Lachapel v. Joyce*, No. 25-cv-4693-JHR, 2025 WL 1685576, at *1-2 (S.D.N.Y. June 16, 2025) (same).

3.     Defendants argue that the procedures the Designation applies to noncitizens who fear persecution or torture are adequate because regulations provide for screening interviews. Mot. 19-20. But many asylum seekers' claims for

16

protection never reach that (mandatory) step. As the district court found, the evidence below—including a series of "congressionally authorized" studies—indicate that immigration enforcement officers have failed to refer *15 percent* of noncitizens who express fear of removal to credible fear screening interviews. Op. 29-30 (citing ECF 50-23 at 46); *see also* ECF 50-24 at 106 (separate study finding that DHS erroneously failed to refer 12% of people who expressed fear). And the court found that uncontroverted evidence from immigration practitioners further documented the persistence of these errors. Op. 30.

Defendants' reliance on immigration judge review of negative determinations by asylum officers, Mot. 20, does nothing to address this root problem. Enforcement officers' "error[s] in [not] referring people for credible fear interviews" are "not reviewable" by immigration judges. Op. 30 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). Similarly, the statutory right to "consult with a person" prior to a credible fear interview attaches only to someone found "eligible for such an interview," and so is of no aid to those erroneously denied interviews. Op. 31 (citing 8 U.S.C. §1225(b)(1)(B)(iv)).

Unacceptable risks of error continue during the rushed credible fear interview and review process. "[N]oncitizens are not afforded a meaningful opportunity to prepare for or present evidence at their credible fear interviews, are stuck with the record they make during those interviews, and must appeal the adverse

determinations coming out of those interviews [to an immigration judge] without knowing the basis for the negative findings." Op. 32-33; *see also* Op. 31 (existing policies often "leave [] noncitizens unable to obtain 'medical records' and other proof that would substantiate their claims of fear") (quoting ECF 50-11 ¶ 22).

Reasonable safeguards—such as directives that "afford individuals with a *meaningful* opportunity to ask counsel or third parties for help in gathering evidence to prove [a claim of] credible fear" — "would substantially improve the reliability of the proceedings." Op. 37 (emphasis added). Defendants' only response is that "[t]he additional procedural enhancements the district court identified . . . involve policymaking." Mot. 20. But *Mathews* explicitly "requires consideration" of any "probable value . . . of additional or substitute procedural safeguards." 424 U.S. at 335. And contrary to Defendants' suggestion (Mot. 21), *Thuraissigiam* never suggested otherwise, since the Court there never reached the balancing analysis. 591 U.S. at 139-40.

Ultimately, Defendants wave away the district court's fact-bound *Mathews* analysis by asserting that there can be no "facial due process violation" even where low-level officers exercise unreviewable discretion over who to refer for credible fear screenings, the process is "rushed or error-prone," and "access to counsel or evidence is often limited." Mot. 20. But Congress specifically authorizes systemic review of expedited removal directives, 8 U.S.C. § 1252(e)(3), which is precisely

what the district court engaged in, while foreclosing essentially any opportunity for as-applied challenges, *id.* § 1252(e)(2), (4)-(5). Moreover, the Supreme Court in *A.A.R.P.* held that a process that failed to ensure noncitizens adequate notice, time, and access to counsel to "pursue appropriate relief" from removal did "not pass muster" under the Due Process Clause. 145 S. Ct. at 1368. And this Court has invalidated policies concerning much less weighty interests due to similar defects. *E.g.*, *Propert v. District of Columbia*, 948 F.2d 1327, 1332, 1333-36 (D.C. Cir. 1991) (holding that District "policy with respect to the towing and destruction of supposed 'junk' vehicles . . . violate[d] due process" because, inter alia, the process failed to provide adequate notice).

## II.    The Equities Weigh Against a Stay.

Defendants claim that being required to process noncitizens through regular rather than expedited removal proceedings constitutes irreparable harm. Mot. 24-25. But that requirement has been true for decades, and those regular proceedings permit Defendants to continue to detain and remove noncitizens from the interior of the United States while also providing constitutionally adequate safeguards. Moreover, the district court made clear that it was not wholly barring Defendants from expanding expedited removal, only from doing so without "modest procedural safeguards." Op. 41.

Nor do Defendants show that the equities and the public interest favor a stay. They question whether MRNY's members risk expedited removal. Mot. 26. But they ignore the "uncontested evidence that the Government [was] systematically targeting individuals attending their immigration court proceedings for placement into expedited removal [] in New York" and that MRNY "has identified a number of its members who are at risk of being placed in expedited removal pursuant to the [] Designation, some of whom have impending immigration court dates, others of whom have already had their section 240 proceedings dismissed." Op. 42. And "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021). Indeed, in *A.A.R.P.*, even the government's purported "national security interests" in quickly removing supposed gang members did not outweigh "the necessity that such interests be pursued in a manner consistent with the Constitution." 145 S. Ct. at 1368.

## III.   The Scope of Relief Is Proper.

The district court's order is authorized by statute. Through 8 U.S.C. § 1252(e)(3), Congress expressly authorized district courts in the District of Columbia to review challenges to the expedited removal system. And 5 U.S.C. § 705 authorizes district courts to "postpone the effective date of an agency action"—and thus runs against the agency action itself.

This Court has long held that APA relief is not limited to the plaintiffs. *See*

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) (Section 705 permits the court to "stay an *agency order* pending review") (emphasis added). The Supreme Court, too, has stayed an agency rule in its entirety. *West Virginia v. EPA*, 577 U.S. 1126, 1126 (2016); *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2567 (2025) (Kavanaugh, J., concurring) ("[U]nder the [APA], plaintiffs may ask a court to preliminarily 'set aside' a new agency rule."). Other courts, including other district courts in this Circuit, have consistently held that § 705 stays apply to the challenged policies in full. *See, e.g.*, *Career Colls. & Schs. of Tx. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted on other grounds*, 145 S. Ct. 1039 (2025); *Cabrera v. U.S. Dep't of Labor*, No. 25-cv-1909, 2025 WL 2092026, at *8 (D.D.C. July 25, 2025) (collecting cases).

*CASA*'s ruling that the Judiciary Act of 1789 does not authorize universal injunctions is inapposite because the Court did not address "the distinct question" of APA relief. 145 S. Ct. at 2554; *see, e.g.*, *Cabrera*, 2025 WL 2092026, at *8; *see also Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring) ("the APA and related statutory review provisions … empower [] the judiciary to act directly against the challenged agency action.") (cleaned up) (quoting J. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012 (2018)).

And even if *CASA* were relevant to the scope of Section 705 stays in some contexts, a full stay would be necessary to provide MRNY complete relief: "[R]equiring [MRNY] to identify its members puts those members at risk of 'retaliation'" such as "their placement in removal proceedings"; "[MRNY] likely cannot exhaustively list those that might be 'affected by the challenged agency actions,' as the Government insists it must," "[b]ecause [MRNY] does not 'collect immigration status information' from its members." ECF 70 at 3 (citations omitted) (quoting ECF 50-2 ¶¶ 14-15, 27). And "requiring [MRNY] to disclose its membership" could potentially violate its members' constitutional rights. *Id.* (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)).

Finally, Defendants suggest that the court of appeals should allow the continued use of the Designation on noncitizens "who entered the country lawfully, i.e., because they were granted humanitarian parole that was subsequently revoked." Mot. 27. But the Designation is not divisible or severable in this respect, since its operative provisions never mention either parole or lawful or unlawful entry. 90 Fed. Reg. at 8140.

## CONCLUSION

The Government's motion should be denied.

22

Dated: September 15, 2025

Respectfully submitted,

*/s/ Anand Balakrishnan*

Morgan Russell
Hannah Steinberg
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*mrussell@aclu.org*
*hsteinberg@aclu.org*
*cwofsy@aclu.org*

Amy Belsher
Robert Hodgson
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

Anand Balakrishnan
*Counsel of Record*
Michael K.T. Tan
Grace Choi
Sidra Mahfooz
Omar C. Jadwat
Lee Gelernt
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*m.tan@aclu.org*
*gchoi@aclu.org*
*smahfooz@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Arthur B. Spitzer
Aditi Shah
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs-Appellees*

23

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P 27(D)(2)(A)

Pursuant to Fed. R. App. P. 27(d)(2)(A), I hereby certify that the preceding document complies with the type-volume limitation of the Rules, containing 5,108 words, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Anand Balakrishnan*
Anand Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Anand Balakrishnan
Anand Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
abalakrishnan@aclu.org