No. 25-5320

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAKE THE ROAD N.Y.,
*Appellee,*

v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,
*Appellants.*

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00190 (Cobb, J.)

## APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY AND A STAY PENDING APPEAL

BRIAN C. WARD
*Acting Assistant Director*
ELISSA P. FUDIM
CAROLINE McGUIRE
*Trial Attorneys*
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
General Litigation & Appeals
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

I. The Government Is Likely To Succeed on the Merits ....................2

    A. The District Court's Stay Violates 8 U.S.C. §1252(f)(1) .........2

    B. Unadmitted Aliens Receive Only the Process Congress Provides...................................................................................3

    C. The Statutory Procedures Satisfy Due Process ......................6

II. The Remaining Stay Requirements Are Satisfied.........................11

III. The District Court Issued Overbroad Relief.................................12

CONCLUSION...................................................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump,*
 145 S. Ct. 1367 (2025) ................................................................................ 5

*Dep't of State v. Muñoz,*
 602 U.S. 899 (2024) ................................................................................... 6

*DHS v. Thuraissigiam,*
 591 U.S. 103 (2020) ............................................................................ 3, 4, 7

*Garland v. Aleman Gonzalez,*
 596 U.S. 543 (2022) ................................................................................... 2

*Immigrant Defs. Law Ctr. v. Noem,*
 145 F.4th 972 (9th Cir. 2025) ................................................................ 2, 13

*Kaplan v. Tod,*
 267 U.S. 228 (1925) ................................................................................... 5

*Lewis v. Casey,*
 518 U.S. 343 (1996) ................................................................................... 8

*Los Angeles v. Lyons,*
 461 U.S. 95 (1983) ..................................................................................... 9

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ................................................................................... 9

*Mackey v. Montrym,*
 443 U.S. 1 (1979) ....................................................................................... 8

*Mathews v. Eldridge,*
 424 U.S. 319 (1976) ............................................................................... 6, 8

*Nishimura Ekiu v. United States*,
   142 U.S. 651 (1892) ............................................................................... 3

*Noem v. Perdomo*,
   606 U.S. __, 2025 WL 2585637 (2025) ...................................... 8, 9, 11

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................. 11

*Trump v. CASA*,
   606 U.S. 831 (2025) ...................................................................... 12, 13

*United States v. Salerno*,
   481 U.S. 739 (1987) ............................................................................. 11

*United States ex rel. Turner v. Williams*,
   194 U.S. 279 (1904) ............................................................................... 5

*Wong Yang Sung v. McGrath*,
   339 U.S. 33 (1950) ................................................................................. 4

*Yamataya v. Fisher*,
   189 U.S. 86 (1903) ......................................................................... 3, 4, 5

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ............................................................................... 5

**<u>Statutes</u>**

5 U.S.C. §705 ............................................................................... 2, 12, 13

8 U.S.C. §1225(b)(1)(B)(iii) ................................................................. 6

8 U.S.C. §1252(e)(2) ............................................................................ 7

8 U.S.C. §1252(e)(5) ............................................................................ 7

8 U.S.C. §1252(f)(1) ............................................................................. 2

## INTRODUCTION

Expedited removal has been a mainstay of federal immigration enforcement since 1996, and has been applied to aliens who have been in this country for upwards of two years since 2002 (so long as they arrive by sea). The district court nonetheless held the 2025 Designation and Huffman Memorandum—which do nothing more than extend existing expedited-removal procedures to the full class of statutorily eligible aliens—violates the Due Process Clause.

The district court's stay is indefensible. It effectively holds unconstitutional a portion of the INA that has been on the books for decades. It bucks the longstanding due-process principles the Supreme Court has recently reaffirmed when *rejecting* a due-process challenge to expedited removal. And it does all of this both in the teeth of the INA's jurisdictional bars, and in excess of its equitable authority.

In light of those errors and the grave irreparable harm they impose on the Government, this Court should grant an immediate administrative stay and stay pending appeal.

# ARGUMENT

## I. The Government Is Likely To Succeed on the Merits

### A. The District Court's Stay Violates 8 U.S.C. §1252(f)(1)

Section 1252(f)(1) precludes the district court's 5 U.S.C. §705 stay because it "enjoin[s] or restrains" expedited removal. Mot.9-11. Plaintiff insists that §1252(f)(1) does not apply, because that provision is limited to "injunctive relief." Opp.9. But Plaintiff ignores the provision's text, which goes beyond orders that "enjoin," to include those that "restrain." Section 1252(f)(1) thus reaches all relief that prohibits the Government from "carry[ing] out" any of the covered provisions. *Garland* v. *Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). That statutory language plainly captures the stay below. As explained, Mot.9-10, the stay here suffers from the same defects as the order in *Aleman Gonzalez*.

Echoing the district court, Plaintiff also insists §1252(f)(1) cannot apply to §705 stays, because it does not apply to §706 vacaturs. Opp.9. But even assuming the latter premise, those remedies are materially distinct. Unlike vacatur, a §705 stay is a form of "interim equitable relief" that functions exactly as a preliminary injunction—*i.e.*, it prevents the Government from using an otherwise available source of legal authority. *Immigrant Defs. Law Ctr. v. Noem*, 145 F.4th 972, 995-96 (9th Cir. 2025).

2

### B. Unadmitted Aliens Receive Only the Process Congress Provides

Due process only entitles unadmitted aliens to "[w]hatever the procedure[s] authorized by Congress." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *see Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892); Mot.11-14. Plaintiff's contrary arguments fail.

1. Plaintiff cannot distinguish *Thuraissigiam*. It tries to limit that case to its facts—as about 25 yards, and nothing more. Opp.10-11. That is wrong. The reason *Thuraissigiam* was able to extend the entry fiction into the interior of the country so readily is the longstanding precedent that an alien does not "effect an entry" for constitutional purposes until he is lawfully admitted. 591 U.S. at 138-40. Nowhere did the Court suggest that its analysis would be different if the alien was seized 50 yards into the country; or 50 miles; or 500 miles. What matters is whether this country has consented to the alien's presence—which controls this case.

2. Plaintiff relies on *Yamataya v. Fisher*, 189 U.S. 86 (1903), for the proposition that aliens who enter the United States "have a liberty interest in remaining—no matter how they entered." Opp.11-12. But *Yamataya* specifically disclaimed that proposition, expressly not answering

3

"whether an alien can rightfully invoke the due process clause of the Constitution who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population." 189 U.S. at 100.

That disclaimer makes sense: Unlike this case, *Yamataya* did not involve an alien who entered without inspection, but instead one who lawfully entered at a port of entry, who was then placed into statutory procedures as a public charge. 189 U.S. at 87, 100-01. *Yamataya* interpreted the scope of that statute—*i.e.*, the process Congress thought due—and held that the statutory processes satisfied due process. *Id.* at 100; *see Wong Yang Sung v. McGrath* 339 U.S. 33, 49-50 (1950).

*Yamataya* thus cannot bear the weight that Plaintiff places upon it. Ensuing decisions make that plain. As explained (Mot.14)—and Plaintiff ignores—the Supreme Court has consistently applied the entry fiction to aliens paroled into this country, including those here for years. *Thuraissigiam*, 591 U.S. at 139. If *Yamataya* held what Plaintiff says it did, one would expect the Court to at least try to address why parolees (that is, aliens who presented at a port of entry and were consensually let in) were being treated *worse* for due-process purposes than those who snuck

4

through illegally. But the Court did not, because it never held that aliens never lawfully admitted can claim any such constitutional entitlement. Instead, such aliens must be "regarded as stopped at the boundary line," and for constitutional purposes, as having "no foothold in the United States." *Kaplan v. Tod*, 267 U.S. 228, 229-30 (1925).

Plaintiff's reliance (Opp.12) on *Zadvydas v. Davis*, 533 U.S. 678 (2001), is similarly unavailing. For purposes of *admission and removal*, the Supreme Court has been clear that the Due Process Clause compels nothing more than what the political branches provide. The fact a different rule applies for *detention* (where there is a liberty interest irrespective of lawful status) is immaterial. Likewise, Plaintiff's reliance on the Alien Enemies Act cases is misplaced. Like *Yamataya*, those cases rested on a federal statute, and explicated what procedures were required under *that* source of law. Of course, the Supreme Court applied established due-process principles to inform that analysis. *A.A.R.P. v. Trump*, 145 S. Ct. 1367, 1367-69 (2025). But in so doing, it did not disrupt a century-plus-worth of precedent that has used a clear constitutional distinction turning on whether an alien has been lawfully admitted. *See, e.g., United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904).

5

3. Accordingly, Plaintiff's reliance on the *Mathews v. Eldridge*, 424 U.S. 319 (1976), framework is misplaced. Opp.12. Aliens who are never lawfully admitted to this country lack a liberty interest in remaining in this country against our laws. Mot.18 (citing *Dep't of State v. Muñoz*, 602 U.S. 899 (2024)). Without that interest, *Mathews* has no force.

### C. The Statutory Procedures Satisfy Due Process

Even if the Due Process Clause poses independent requirements on expedited removal, the current system easily exceeds them.

1. Plaintiff largely ignores that aliens subject to expedited removal receive three separate opportunities to demonstrate that they have a credible fear of persecution or torture in their country—before an asylum officer, supervisory official, and finally an immigration judge (IJ). *See* Mot.20-21.

As important, Plaintiff seriously misunderstands the purpose of the credible-fear screening process: It is designed to weed out unmeritorious claims of asylum or protection from removal. If an alien is able to prove to any of the three officials above that there is a "significant possibility" of "eligibility for asylum" or other protection they are placed in full removal proceedings under §240, 8 U.S.C. §1225(b)(1)(B)(iii).

Further, Plaintiff overlooks that Congress *has* provided for tailored judicial review with expedited removal, through habeas corpus. In such a proceeding, the court may review the petitioner's claim that he is not in fact an alien; that he has not been ordered removed under Section 1225(b)(1); or that he has been admitted as a lawful permanent resident, refugee, or asylee and retains such status. 8 U.S.C. §1252(e)(2). Habeas review thus remains available to ensure that an expedited-removal order "in fact was issued and … relates to the" particular alien. 8 U.S.C. §1252(e)(5). That protects individuals who assert that they have a legal status reflecting substantial connections to the United States.

2. Against all this, Plaintiff insists that aliens lack a *meaningful* opportunity to be heard. Opp.17-18. But that contention is belied by the three-level scheme above, which has been in effect for decades—processing claims at the border (where aliens have far fewer resources), as well as for sea-arriving aliens who have been here for years. It is both fair and efficient: Indeed, "nearly 77% of screenings have resulted in a finding of credible fear." *Thuraissigiam*, 591 U.S. at 111. It defies credulity to think that figure is the product of a process where aliens lack a meaningful opportunity to be heard.

7

Plaintiff invokes studies indicating that a small percentage of aliens who express a fear of removal are not referred for screening. Opp.17. Evening assuming this error-rate is true, "[t]he specific dictates of due process must be shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases rather than the rare exceptions." *Mackey v. Montrym*, 443 U.S. 1, 14 (1979). And in all events, under *Mathews*, that small error rate must be balanced against the government's weighty interest in enforcing the immigration laws. *Noem v. Perdomo*, 2025 WL 2585637, at *4 (2025) (Kavanaugh, J., concurring).

3. Plaintiff also takes issue with the procedures in place for an alien to challenge his eligibility for expedited removal in the first place—*i.e.*, that he has continuously been here for over two years. This too fails.

a. Plaintiff lacks standing for this challenge. Mot.22-23. Plaintiff responds that "'only one plaintiff must have standing.'" Opp.15. But Article III standing is required "for each claim." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). After all, standing is not "dispensed in gross" and Plaintiff cannot secure relief for an injury that it has failed to show will affect *any* of its members. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

8

Plaintiff's assertion that it has "other members previously on the verge of completing two years of presence have now done so" does not help. Opp.15. None of those members have asserted a likelihood of erroneous expedited-removal proceedings, and standing to obtain future injunctive relief "does not exist merely because plaintiff[] experienced past harm and fear[s] its recurrence." *Perdomo*, 2025 WL 2585637, at *2 (Kavanaugh, J., concurring) (citing *Los Angeles v. Lyons*, 461 U.S. 95 (1983)).

Plaintiff further contends that any "remaining factual question[s]" about its standing "can [be] addressed" by "the district court … at summary judgment." Opp.15 n.4. Not so: To obtain equitable relief, Plaintiff must establish standing with evidence *now*. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

b. Even if Plaintiff had standing to challenge the continuous-presence procedures, those procedures satisfy due process. Foremost, Plaintiff is wrong that aliens are unable to meaningfully show that they have been here for over two years. As the Castano Declaration explains and DHS guidance provides, aliens are given an opportunity to contest their eligibility for expedited removal on this basis, and given many means to do so—including "banknotes, leases, deeds, licenses, bills, church records,

9

receipts, birth records, school records, employment records, tax records, and or the alien's statements to an immigration officer or agent." Castano Decl. ¶ 6; *see* Dkt.25-1, *Make the Road N.Y. v. McAleenan*, No. 1:19-cv-02369 (D.D.C. Aug. 28, 2019). More fundamental, Plaintiff does not explain why this implicates the Due Process Clause at all. For aliens who do not have a legal entitlement to be here (*e.g.*, an asylum claim), they have no constitutional footing to insist on process for its own sake—*i.e.*, more layers to adjudicate a concededly lawful removal. The Due Process Clause cares only about whether procedures are adequate for handling a cognizable legal interest. And if the credible-fear screening process described above does so, then there is no separate constitutional defect with being placed in that process to begin with.

4. Tellingly, Plaintiff does not acknowledge many of the procedural reforms it pressed to the district court—including the requirement of a "neutral adjudicator," inverting the burden of proof, or requiring something close to a right-to-counsel. *See* Dkt.50-1 at 16-17. But the district court countenanced those procedures, Op.27, and the Government would be pressed to adopt them if the order below stands.

That is untenable. Not only are these procedures unnecessary to responsibly make the threshold determination at issue, they are also irreconcilable with the notion of *expedited* removal in the first place. But "the Judiciary does not set immigration policy." *Perdomo*, 2025 WL 2585637, at *4 (Kavanaugh, J., concurring). Absent a compelling basis in precedent or practice, the federal courts should be loath to blue-pencil an immigration system designed by the political branches.

5. At minimum, Plaintiff has no coherent answer to justify the facial relief it received. Even if "many" aliens who have been continuously present for over two years *also* have asylum claims, Opp.13, Plaintiff brought a facial challenge. It was thus required to establish that the procedures were constitutional under "no set of circumstances," *United States v. Salerno*, 481 U.S. 739, 745 (1987). It failed to do so.

## II. The Remaining Stay Requirements Are Satisfied

The district court's stay is causing immense irreparable harm to the Government. Nearly thirty-thousand aliens have been removed using expedited-removal since January, including many who have serious criminal records. Castano Decl. ¶10. The district court's order blocks this indispensable tool, and channels those aliens to an already overburdened

11

§240 system suffering a historic "backlog" with over six-million pending cases. Castano Decl. ¶ 9.

The harm to the Government vastly outweighs the harm to Plaintiff. Plaintiff waited five months to file this suit, and when it did, identified only *two* members who *might* now be placed in expedited-removal proceedings. That is not the sort of imminent and irreparable harm that warrants extraordinary relief—especially at this scale. Nor has Plaintiff ever explained why its members would not be able to satisfy a credible-fear-screening interview (or at least have a meaningful opportunity to do so). No such claim would be plausible, given that the members cited by Plaintiff have *already* put together asylum claims.

### III. The District Court Issued Overbroad Relief

At minimum, the district court exceeded its authority by issuing a *universal* stay. Section 705 only allows courts to issue stays "to the extent necessary to prevent irreparable injury," 5 U.S.C. §705, and "irreparable injury" in the context of interim equitable relief refers to the plaintiff— not third parties, *Trump v. CASA*, 606 U.S. 831, 841-46 (2025).

12

*CASA* did not address APA relief, Opp.21, but the Ninth Circuit has held that *CASA*'s "complete-relief principle provides some useful guidance for crafting interim equitable relief" in §705 cases. *Immigrant Defs.*, 145 F.4th at 996. Plaintiff is inviting a circuit split on this question.

Plaintiff then claims that a universal stay is necessary for "complete relief." Opp.22. That is baseless. A stay running to Plaintiff's members would provide complete relief to Plaintiff's members. Plaintiff raises a number of objections to having to disclose its membership list. But that would hollow *CASA* for every membership organization.

Finally, Plaintiff also contends the district court's stay should not be limited to aliens who entered unlawfully. Opp.22. But Plaintiff has identified *no* members outside this context, Mot.27, and thus fails to explain how the court had jurisdiction to stay the 2025 Designation and Huffman Memorandum beyond that context.

## CONCLUSION

The Court should grant an immediate administrative stay and a stay pending appeal.

13

Respectfully submitted,

| | |
|---|---|
| BRIAN C. WARD<br>*Acting Assistant Director*<br><br>ELISSA P. FUDIM<br>CAROLINE McGUIRE<br>*Trial Attorneys*<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>P.O. Box 868 Ben Franklin Station<br>Washington, DC 20044 | BRETT A. SHUMATE<br>*Assistant Attorney General*<br><br>/s/ *Drew C. Ensign*<br>DREW C. ENSIGN<br>*Deputy Assistant Attorney General*<br><br>Drew.C.Ensign@usdoj.gov<br>(202) 514-2000<br><br>TYLER J. BECKER<br>*Counsel to the Assistant Attorney General*<br>U.S. Department of Justice, Civil Division<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |

Dated:  September 17, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,531 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Century Schoolbook type.

/s/ *Drew C. Ensign*
Drew C. Ensign

Dated: September 17, 2025        Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Drew C. Ensign*
Drew C. Ensign

Dated: September 17, 2025    Attorney for Appellants