No. 25-5320

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

MAKE THE ROAD,
*Appellee,*

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, et al.,
*Appellants.*

———————

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00190 (Cobb, J.)

———————

## APPELLANTS' RENEWED EMERGENCY MOTION FOR A STAY PENDING APPEAL
(Relief originally requested by September 16, 2025)

———————

CAROLINE MCGUIRE
Senior Litigation Counsel
ELISSA P. FUDIM
JOSEPH McCARTER
Trial Attorneys
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
General Litigation & Appeals
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
Assistant Attorney General
DREW C. ENSIGN
Deputy Assistant Attorney
General
TYLER J. BECKER
Counsel to the Assistant Attorney
General
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES

## A. Parties and Amici

Plaintiff is Make the Road New York. Mary and John Doe are Plaintiffs in district court but are not part of this appeal.

Defendants are Kristi Noem, in her official capacity as Secretary of Homeland Security; Todd M. Lyons, in his official capacity as the Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement ("ICE"); Rodney S. Scott, in his official capacity as the Commissioner of U.S. Customs and Border Protection ("CBP"); Joseph B. Edlow, in his official capacity as the Director of U.S. Citizenship and Immigration Services ("USCIS"); Pamela J. Bondi, in her official capacity as the Attorney General of the United States.[1]

Federation for Immigration Reform Law Institute are Amici in support of Defendants. The States of California, Arizona, Colorado, Delaware, Connecticut, Hawaii, Illinois, Maine, Maryland,

---

[1] The current Commissioner of CBP and Director of USCIS are substituted as defendants in the place of the former individuals in those roles. *See* FED. R. CIV. P. 25(d).

Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Vermont, Washington, and the District of Columbia are Amici in support of Plaintiff.

## B. Rulings Under Review

The ruling under review is the district court's 5 U.S.C. §705 stay of agency action, issued on August 29, 2025. The district court's opinion (Docket No. 64) and order (Docket No. 65) are located in the Joint Appendix attached to the parties' merits briefing at JA-01-049. This Court previously denied the Government's emergency motion for an administrative stay pending appeal of that order, and granted in part and denied in part the motion for a stay pending appeal. *See Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025). The Government now renews its request for a stay pending disposition of the appeal.

## C. Related Cases

Overlapping issues are present in the following case: *Coalition for Humane Immigrant Rights et al., vs. Noem*, No. 1:25-cv-00872 (D.D.C.), *appeal docketed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025). Plaintiff also recently filed a new case in the district court related to certain guidance

implementing the 2025 Designation: *Make the Road v. Noem, et al.*, 1:25-

cv-04455 (JMC) (D.D.C.)

/s/ *Drew C. Ensign*
Drew C. Ensign
U.S. Department of Justice, Civil
Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION ...................................................................... 1

STATEMENT ............................................................................ 2

ARGUMENT ............................................................................. 9

    I.    The Government Is Likely to Succeed on the Merits ............. 9

        A.    The District Court's Stay Violates 8 U.S.C. §1252(f)(1) ................................................................... 9

        B.    The Expedited-Removal Procedures Congress Provides Satisfy Due Process for Aliens With Less Than Two Years of Presence ...................................... 11

        C.    Even if the Aliens Here Possess a Liberty Interest in Remaining, the Expedited Removal Procedures Provide Sufficient Process ........................................... 18

    II.    The District Court's Order Irreparably Harms Defendants and the Equities Favor a Stay ........................... 24

    III.    The District Court's Overbroad Relief Exceeded its Authority ............................................................................. 25

CONCLUSION ....................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump,*
   605 U.S. 91 (2025) ......................................................................... 16, 17

*Dep't of State v. Muñoz,*
   602 U.S. 899 (2024) ............................................................................ 17

*DHS v. Thuraissigiam,*
   591 U.S. 103 (2020) ..................................... 2, 11, 12, 13, 14, 15, 18, 25

*Garland v. Aleman Gonzalez,*
   596 U.S. 543 (2022) ......................................................................... 2, 10

*Immigrant Defs. L. Ctr. v. Noem,*
   145 F.4th 972 (9th Cir. 2025) ............................................................. 26

*J. Roderick MacArthur Found. v. FBI,*
   102 F.3d 600 (D.C. Cir. 1996) ............................................................. 22

*Kaplan v. Tod,*
   267 U.S. 228 (1925) ............................................................................ 12

*Landon v. Plasencia,*
   459 U.S. 21 (1982) .............................................................................. 13

*Lewis v. Casey,*
   518 U.S. 343 (1996) ............................................................................ 22

*Make the Rd. N.Y. v. Noem,*
   2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) ...................... 17, 18, 19, 20

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ............................................................................ 17

*Mitchell v. Scully*,
746 F.2d 951 (2d Cir. 1984) ................................................. 24

*Mullane v. Central Hanover Bank & Trust*,
339 U.S. 306 (1950) ............................................................. 17

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892) ............................................................. 11

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................... 9

*Qatanani v. Att'y Gen.*,
144 F.4th 485 (3d Cir. 2025) ............................................... 16

*Russello v. United States*,
464 U.S. 16 (1983) ............................................................... 11

*Starbucks v. McKinney*,
602 U.S. 339 (2024) ...................................................... 26, 27

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ............................................................. 21

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ............................................................. 21

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ...................................................... 24, 26

*Trump v. J.G.G.*,
604 U.S. 670 (2025) ...................................................... 16, 17

*United States ex rel. Turner v. Williams*,
194 U.S. 279 (1904) ............................................................. 13

*Wong Yang Sung v. McGrath,*
339 U.S. 33 (1950) ........................................................ 12

*Yamataya v. Fisher,*
189 U.S. 86 (1903) ........................................................ 16

*Zadvydas v. Davis,*
533 U.S. 678 (2001) ...................................................... 15

## Statutes

5 U.S.C. §705 ........................................................ 1, 8, 10, 26

8 U.S.C. §1158 ................................................................ 3

8 U.S.C. §1225(a)(1) ................................................... 13, 18

8 U.S.C. §1225(b)(1) .......................................................... 2

8 U.S.C. §1225(b)(1)(C) ...................................................... 4

8 U.S.C. §1229a .............................................................. 4

8 U.S.C. §1252(f)(1) ...................................................... 1, 9

8 U.S.C. §§1182(a)(6)(C) .............................................. 5, 6, 7, 8

## Regulations

8 C.F.R. §208.30 ............................................................ 4

8 C.F.R. §208.30(d)(4) ................................................... 5, 20

8 C.F.R. §208.31 ........................................................... 19

8 C.F.R. §235.3(b)(1)(ii) ................................................ 4, 23

8 C.F.R. §235.3(b)(2)(i) .................................................... 3

iv

8 C.F.R. §235.3(b)(4) ................................................................. 4, 19, 20

8 C.F.R. §235.3(b)(5) .................................................................. 19, 20

8 C.F.R. §235.3(b)(7) ......................................................................... 4

8 C.F.R. §§208.30(f) ........................................................................... 4

8 C.F.R. §§1003.42(d) ................................................................... 4, 19

8 C.F.R. §§1003.42(f) .......................................................................... 5

*Designating Aliens for Expedited Removal,*
    90 Fed. Reg. 8139 (Jan. 24, 2025) ...................................................... 5

# INTRODUCTION

Five months ago, the district court issued a sweeping 5 U.S.C. §705 stay preventing the Department of Homeland Security (DHS) from exercising its statutory authority to expand expedited-removal to inadmissible aliens in the country's interior who lack two years of continuous presence. The district court did so based on an erroneous conclusion that decades-old expedited-removal procedures violate the Due Process Clause. The Government renews its request to stay the district court's Order pending disposition of the appeal, now that this Court has the benefit of full merits briefing and argument on the same. The order below continues to impede the Government's ability to swiftly remove inadmissible aliens without the more cumbersome Immigration and Nationality Act (INA) §240 procedures, and their associated backlogs.

The Government is likely to succeed on appeal. *First*, Congress prohibited lower courts from enjoining or restraining the implementation of the expedited-removal statute. 8 U.S.C. §1252(f)(1). The order below does that: It universally bars the Government from expeditiously removing a class of aliens until it adopts further procedures. There is no

way to square §1252(f)(1)'s bar on non-individualized relief with the district court's nationwide order. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022). And *second*, the order contravenes binding Supreme Court precedent, including *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), which holds that these aliens' due process rights consist *solely* of the procedures that Congress provides. In all events, the existing expedited-removal procedures exceed whatever process the Constitution compels.

The Government is irreparably harmed every day the district court's order remains in place, because it universally invalidates a vital immigration-enforcement tool. A stay is manifestly warranted.

## STATEMENT

**A. Expedited Removal.** Congress authorized DHS to expeditiously remove certain inadmissible aliens. *See* 8 U.S.C. §1225(b)(1). Under this expedited removal process, an alien "arriving in the United States" who an immigration officer determines lacks valid entry documentation or makes a material misrepresentation shall be "order[ed] … removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum

under [8 U.S.C. §1158] or a fear of persecution." *Id.* §1225(b)(1)(A)(i) (citing §§1182(a)(6)(C), (a)(7)).

Congress delegated the Executive Branch authority to apply expedited removal beyond arriving aliens. Specifically, the DHS Secretary "may … designate[]" certain classes of inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal. 8 U.S.C. §1225(b)(1)(A)(iii). That designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." *Id.*

Implementing regulations establish procedures prior to effectuating expedited removal. Immigration officers must "advise the alien of the charges against him or her," provide "an opportunity to respond … in the sworn statement," and provide an interpreter if needed. 8 C.F.R. §235.3(b)(2)(i). Aliens are afforded an opportunity to establish that they have been admitted or paroled, have been physically present continuously for the prior 2-year period, have been lawfully admitted for permanent residence or as a refuge, or were granted asylum, or are a U.S.

citizen. *See* 8 U.S.C. §1225(b)(1)(C); 8 C.F.R. §235.3(b)(1)(ii). "[A]ny removal order," the "sworn statement," and any claims concerning an alien's status, "must be reviewed and approved by the appropriate supervisor before the order is considered final." 8 C.F.R. §235.3(b)(7).

Additional procedures apply if an alien indicates an intention to apply for asylum or expresses a fear of return to the alien's country. 8 U.S.C. §1225(b)(1)(A)(ii); 8 C.F.R. §235.3(b)(4). If so, the alien receives a non-adversarial interview with an asylum officer, who determines whether the alien has a "credible fear of persecution" or torture. 8 U.S.C. §§1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (b)(1)(B)(iv), (v); 8 C.F.R. §208.30. Following an adverse determination, that alien may pursue *de novo* review by an immigration judge. 8 U.S.C. §1225(b)(1)(B)(iii)(III); 8 C.F.R. §§1003.42(d), 1208.30(g).

If the asylum officer or immigration judge determines that the alien has a credible fear of persecution or torture, the individual is generally placed in 8 U.S.C. §1229a removal proceedings (§240 proceedings). *See* 8 C.F.R. §208.30(f). If the officer and immigration judge do not find a credible fear of persecution or torture, the alien shall be "removed from the United States without further hearing or review." 8 U.S.C.

§§1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§1003.42(f), 1208.30(g)(2)(iv)(A). During the credible fear process, aliens may consult with attorneys or representatives and engage interpreters. 8 C.F.R. §208.30(d)(4), (5).

**B. 2025 Designation.** The Secretary (and earlier, the Attorney General and INS Commissioner) has designated aliens for expedited removal under §1225(b)(1)(A)(iii) on five occasions. Gov't Merits Br. 12-18.

On January 24, 2025, the then-Acting Secretary published a Federal Register notice restoring the scope of expedited removal to "the fullest extent authorized by Congress." 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to place in expedited removal … aliens determined to be inadmissible under [8 U.S.C. §§1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding" the inadmissibility determination. *Id.* at 8139-40. This Designation "enhance[s] national security and public safety—while reducing

government costs—by facilitating prompt immigration determinations" and "ensure the prompt removal" of "the large volume of [unlawfully present] aliens." *Id.* at 8139.

**C. The Huffman Memorandum.** The then-Acting DHS Secretary published an internal memorandum explaining "how to exercise enforcement discretion in implementing these policies." Memorandum from Benjamine C. Huffman, Acting Secretary to [Senior DHS Officials] re *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025), https://perma.cc/W3CL-SNDN ("Huffman Memorandum"). The Huffman Memorandum instructs immigration enforcement to take "all steps necessary to review [an] alien's case" to evaluate and consider whether individuals should be placed into expedited removal. *Id.*

**D. 2025 Guidance.** To implement the 2025 Designation, ICE issued guidance to its agents. *Implementation Guidance for January 2025 Federal Register Notice, Designating Aliens for Expedited Removal*, U.S. Immig. & Customs Enforcement (Feb. 28, 2025) ("2025 Guidance"), https://www.ice.gov/doclib/foia/policy/jan2025_ExpeditedRemovalImpGu idance.pdf. The guidance instructs that for aliens to establish continuous presence for the two-year period preceding the determination of

inadmissibility, they may use "bankbooks, leases, deeds, licenses, bills, receipts, letters, birth records, church records, school records, employment records, evidence of prior law enforcement encounters or tax payments, and/or the alien's credible sworn testimony." *Id.* "If an alien is unable to personally provide such evidence at the time of encounter but claims to have access to such evidence, the alien shall be permitted a brief but reasonable opportunity to obtain it or communicate with a third party to obtain such evidence." *Id.* Border Patrol issued guidance to its officers that is materially identical to the 2025 Guidance. Appellants' 28(j) Letter (Dec. 23, 2025), Ex. A ("Border Patrol Guidance").

**E. District Court Proceedings:** On January 22, 2025, Plaintiff Make the Road filed this suit challenging the 2025 Designation. Plaintiff amended its complaint in March, adding new claims and two Doe Defendants who were allegedly placed in expedited-removal proceedings and removed on January 28, 2025. JA-356-388 ¶¶12-13, 105. Make the Road asserted associational standing on behalf of four members who illegally entered the country, are not in expedited-removal-proceedings, and lack final removal orders. *Id.* ¶¶98-101. One of these individuals allegedly filed an asylum application with USCIS. *Id.* ¶99. Plaintiffs

allege various claims, including that the 2025 Designation violates the Due Process Clause.  *Id.* ¶¶107-109.  Plaintiff Make the Road—not the Individual Plaintiffs—moved for a 5 U.S.C. §705 stay.  JA-108 n.1.

On August 29, 2025, the district court granted Plaintiff's motion, concluding that it was likely to succeed on its due process claim.  JA-021-042.

**F. D.C. Circuit Proceedings.** The Government appealed on September 5, 2025.  On September 17, 2025, the parties completed briefing on the Government's emergency motion for an immediate administrative stay, and for a stay pending appeal.  On October 6, 2025, the parties participated in argument on the same.  That same day, this Court issued an expedited merits briefing schedule, which the parties completed on November 10, 2025.  On November 22, nearly three months after the Government filed its stay request, the Stay Panel denied the Government's request for an administrative stay and granted in part and denied in part the motion for a stay pending appeal.  The Court held argument on the parties' merits briefing on December 9, 2025.  There, the Government orally renewed its request for a stay pending appeal.

Merits Hear. Tr. 52:22-53:24. This Court has not yet ruled on that request, so the Government makes this written application.

## ARGUMENT

A stay pending appeal turns on (1) likelihood of success on the merits; (2) irreparable injury; (3) balancing the equities; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each factor favors a stay here.

## I. The Government Is Likely to Succeed on the Merits

### A. The District Court's Stay Violates 8 U.S.C. §1252(f)(1)

Section 1252(f)(1) strips courts "(other than the Supreme Court)" of "jurisdiction or authority" to "enjoin or restrain the operation of" INA provisions, including §§1225 and 1229a, "other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated." 8 U.S.C. §1252(f)(1). Expedited removal is a covered provision.

The order below does what §1252(f)(1) proscribes: It bars the Government nationwide from applying existing expedited-removal procedures to a certain class of aliens, unless it adopts an (indeterminate) set of procedures purportedly compelled by due process. In *Aleman Gonzalez*, the district court enjoined the Government class-wide from

taking actions under a specified provision (detaining aliens under §1231(a)(6)) until it provided additional process (a bond hearing). 596 U.S. at 547. The Court held that injunction was "barred" by §1252(f)(1), because an injunction that stops the Government from implementing a statutory provision until certain conditions are satisfied is one that "enjoin[s] or restrain[s]" the provision's operation. *Id.* at 551. So too here: The nationwide stay below "enjoin[s] or restrain[s] the operation of [§1225(b)(1)] because [it] requires officials to take actions that are not required," and to "refrain from actions that are allowed by [§1225(b)(1)]." *Id.* The district court issued the exact type of order that §1252(f)(1) forbids.

A §705 stay is no different from an injunction for §1252(f)(1) purposes. The provision is concerned with the *effect* of a remedy on the operation of certain INA provisions. *Aleman Gonzalez*, 596 U.S. at 551. Notably, §1252(f)(1)'s text extends beyond injunctions, to include any order that "restrain[s]" the operation of a covered statute. So notwithstanding whether a stay "enjoins" an action, there is no colorable argument that a stay preventing the Government from taking certain actions does not "restrain" it from taking those actions. Limiting

§1252(f)(1) to injunctions would render the term "restrain" superfluous and would violate the principle that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). Congress's deliberate inclusion of the phrase "enjoin or restrain" in §1252(f)(1), compared alongside its use of only "enjoin" in §1252(f)(2), confirms that §1252(f)(1) cannot plausibly be read to apply only to injunctions.

## B. The Expedited-Removal Procedures Congress Provides Satisfy Due Process for Aliens With Less Than Two Years of Presence

1. The Supreme Court has long held that "the due process rights of an alien seeking initial entry" are no greater than "[w]hatever the procedure[s] authorized by Congress." *Thuraissigiam*, 591 U.S. at 139. For such aliens, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892).

The Supreme Court has also long applied this so-called "entry fiction" to aliens beyond those literally seeking entry at the border. For

instance, "aliens who arrive at ports of entry … are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139. So too are aliens who have been "paroled elsewhere in the country for years pending removal." *Id.*; *accord Kaplan v. Tod*, 267 U.S. 228, 230-31 (1925).

Across its cases, the Supreme Court has distinguished between aliens who have at some point been lawfully admitted into the United States, and those whose presence has never been sanctioned. While the former (*e.g.*, an alien who overstays a visa, or is later determined to have been admitted in error) may claim due-process protections beyond what Congress has provided, even when their legal status changes, *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50 (1950), the Supreme Court has never held that aliens who have entered the country clandestinely are entitled to additional rights. "[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence"—a status that, by definition, unlawful entrants are legally barred from obtaining—"his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). An alien who clandestinely enters "does not become one of the people to whom these things are

secured by our Constitution by an attempt to enter, forbidden by law."

*United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904).

Those principles—which the *Thuraissigiam* Court affirmed—resolve this case. The *Thuraissigiam* Court upheld the current expedited-removal system against a due-process challenge, 591 U.S. at 140, holding that where an alien is legally "treated" as an "applicant for admission," he is entitled to only what process the political branches provide. *Id.* That describes those aliens covered by the 2025 Designation, Huffman Memorandum and the 2025 Guidance: Where an alien "has not been admitted" lawfully into this country at any point, he is treated under the immigration laws as an "applicant for admission." 8 U.S.C. §1225(a)(1). For them, "[w]hatever the procedure authorized by Congress is, it is due process." *Thuraissigiam*, 591 U.S. at 139 (citation omitted).[1]

2. The district court limited *Thuraissigiam* to its facts and applied it to those stopped at the border—and "25 yards" beyond—but not to any

---

[1] Plaintiff identifies only members who entered the country unlawfully, not aliens subject to the 2025 Designation who entered lawfully, like aliens paroled into the country whose parole was revoked.

aliens who had reached the "interior" of the country. JA-12-13. That is untenable.

To start, the court's rationale is irreconcilable with *Thuraissigiam*. The reason *Thuraissigiam* was able to extend the entry fiction into the country's interior is the longstanding precedent that an alien does not "effect[] an entry" for constitutional purposes until he is lawfully admitted. Gov't Merits Br. 36-37 (collecting cases). This is because an alien's physical presence is not what is necessary for him to "effect[] an entry" into the United States; he must be "admitted into the country pursuant to law" at some point. *Thuraissigiam*, 591 U.S. at 138-40 (quotations omitted). The *Thuraissigiam* Court stressed that the law's "entry fiction" applied in full measure to those aliens paroled into the country "for years" pending their removal. 591 U.S. at 139. It would be wholly nonsensical for the Constitution to treat aliens who qualified for parole *worse* than those who unlawfully barge past the border. Neither the Due Process Clause nor Supreme Court precedent offer a windfall for those who flout our laws.

The district court's contrary view would thrust the federal courts into an area that the Constitution exclusively assigns to the political

14

branches. Courts lack any judicially manageable standard to determine whether an alien's "established connections" are sufficient to merit additional process. *Thuraissigiam*, 591 U.S. at 107. Even Plaintiff agrees that aliens here for short time-periods can be expeditiously removed, JA-17 n.12, but offer no cogent principle for courts to determine whether due process attaches at 14 days, 3 months, or 5 years.

In holding otherwise, the district court misread controlling precedent, reasoning that the Due Process Clause "applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." JA-22 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). That means even aliens who are unlawfully here must receive more process in their removal proceedings than is statutorily permitted.

Yet the district court's primary authority, *Zadvydas*, involved due-process objections to potentially indefinite *detention* of aliens with final removal orders, not the constitutionality of expedited removal procedures. 533 U.S. at 682. That is a crucial distinction. The Supreme Court has never held—and in *Zadvydas* rejected—the notion that the political branches have plenary authority to set detention procedures,

which implicate an alien's liberty interests regardless of legal status. The opposite is true, however, for purposes of *admission and removal*. For that, the Supreme Court emphasized that the Due Process Clause compels nothing more than what the political branches provide with respect to illegal aliens never lawfully admitted. *See Qatanani v. Att'y Gen.*, 144 F.4th 485, 507-08 (3d Cir. 2025) (Matey, J., dissenting).

Likewise, the district court invoked decisions like *Yamataya v. Fisher*, 189 U.S. 86 (1903), *Trump v. J.G.G.*, 604 U.S. 670 (2025), and *A.A.R.P. v. Trump*, 605 U.S. 91 (2025). But these decisions offer no help. In *Yamataya*, the Supreme Court *disclaimed* the proposition that the district court cited it for—that aliens "have a liberty interest in remaining—no matter how they entered." JA-12-13. In fact, the *Yamataya* Court declined to answer "whether an alien can rightfully invoke the due process clause of the Constitution who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population." 189 U.S. at 100. And in *J.G.G.* and *A.A.R.P.*, the Court was reviewing actions taken under the Alien Enemies Act—a statute where Congress set forth procedures required under *that* source of law. But in so doing, it did not

disrupt a century-plus-worth of precedent that has distinguished whether an alien has been lawfully admitted for constitutional purposes.

3. Inadmissible aliens lack a liberty interest in remaining in the country. Thus, the district court further erred in applying the *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test to evaluate the constitutionality of expedited-removal procedures under §1225(b).

Indeed, in *A.A.R.P.* and *J.G.G.*, the Supreme Court did not invoke *Mathews* at all. *A.A.R.P.*, 605 U.S. at 94-95; *J.G.G.*, 604 U.S. at 673. The Court relied upon *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950). *Mullane* stands for the proposition that the cornerstone of due process is notice and an opportunity to be heard—not *Mathews* balancing. 339 U.S. at 314. *Mullane* instructs courts to look to "general principles" rather than "any formula" prescribing the appropriate notice "in a particular proceeding." *Mullane*, 339 U.S. at 314.

*Mullane* governs here instead of *Mathews*, because *Matthews* presupposes the existence of a liberty or property interest. 424 U.S. at 332, 335. But there is simply no right "deeply rooted in this Nation's history and tradition" for aliens not lawfully admitted to remain in the country. *See Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024); *Make the*

*Rd. N.Y. v. Noem*, 2025 WL 3563313, at *22 (D.C. Cir. Nov. 22, 2025) (evaluating "an individual's liberty interest in *avoiding a wrongful removal*") (emphasis added). "On the contrary, the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911-12. Aliens subject to expedited removal under §1225(b)(1) are "applicants for admission." 8 U.S.C. §1225(a)(1). Such individuals, at least those present for less than two years, are entitled only to "[w]hatever the procedure authorized by Congress is," and nothing more. *Thuraissigiam*, 591 U.S. at 139 (quotation omitted).

### C. Even if the Aliens Here Possess a Liberty Interest in Remaining, the Expedited Removal Procedures Provide Sufficient Process

Even accepting the district court's faulty premise of a liberty interest, the court misapplied the remaining *Mathews* factors as to both categories of aliens the Stay Panel identified. JA-27-42.

1. As the Stay Panel held, the government "is likely to succeed in showing that, for those persons determined to be eligible for Expedited Removal, its Credible Fear Procedures are sufficient." *Make the Rd.*, 2025 WL 3563313, at *21. Individuals who express a fear of return are

18

referred for a credible fear interview with an asylum officer, and, if found to have a credible fear, receive full consideration in §240 removal proceedings. *See* 8 C.F.R. §§235.3(b)(4), 208.30; Gov't Merits Br. 43-46. Those who claim lawful permanent resident status, U.S. citizenship, or prior asylum or refugee status must be referred to an immigration judge for review if their status cannot be verified. 8 C.F.R. §235.3(b)(5). If an asylum officer declines to refer an alien for asylum proceedings, the decision is subject to supervisory review and then to a prompt *de novo* hearing before an immigration judge. 8 U.S.C. §1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 208.30(e)(8), 1003.42(d), 1208.30(g).

As the Stay Panel concluded, DHS's procedures sufficiently evaluate an alien's eligibility for credible fear processing and notice of the same: they provide aliens with notice that their fear of harm is relevant to their potential removal, and they "invite individuals to provide information about the source and nature of their fear to the immigration officer." *Make the Rd.*, 2025 WL 3563313, at *30.[2] Further, before the

---

[2] In making its determination, the Stay Panel relied upon the language of Form I-867B, a version of which Plaintiffs provided to the district court. ECF No. 50-23, at 94. The Stay Panel noted that the form contains four questions. *Make the Rd.*, 2025 WL 3563313 at *29-31. Although the (continued . . .)

interview, aliens "may consult" with persons of their choosing and, during the interview, the individual "may present other evidence, if available." *Id*. An adverse decision may be appealed, and "individuals are not expected at the time of initial detention to produce hard evidence of their credible fear." *Id*.

As a result, the Stay Panel concluded that the Government is likely to succeed on the merits in establishing that this interlocking system of multiple procedures, decisionmakers and ample opportunities to test allegations, satisfies due process. *Id*. at *31.

2. As to the other group of aliens the district court identified—*i.e.*, aliens with procedural objections, such as that they were present for *more* than two years, JA-34-40—those claims are even more flawed. To start,

---

form was not a focus of the stay briefing (and the government did not cite or rely upon that form in making any of its arguments), it has come to counsel's attention that on February 11, 2025, Form I-867B was amended to include only the first and the fourth questions the Stay Panel quoted. *Id*. The Government hereby submits the updated Form I-867B, which is used in all expedited-removal proceedings, as Exhibit A. This change leaves the due process analysis unchanged because the form continues to elicit information about why an alien departed their home country, and likewise, procedures exist to evaluate any claim of fear related to returning to that country. 8 U.S.C. §§1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (b)(1)(B)(iv), (v); *see* 8 C.F.R. §§235.3(b)(4), 208.30.

Plaintiff never identifies anyone who contests expedited removal on this basis and thus lacks associational standing to pursue such a claim. *See* Merits Hear. Tr. 80:02-82:07.

For Plaintiff to sue on behalf of its members, it must demonstrate that its members would have "standing to sue in their own right." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quotations omitted). Absent identification of "at least one identified member had suffered or would suffer harm," the group lacks associational standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). But here, Make the Road was the only Plaintiff who requested preliminary relief; Mary and John Doe, who were allegedly subject to expedited removal after more than two years of continuous presence, disclaimed "seek[ing] interim relief through this motion." JA-108 n.1; *See* Merits Hear. Tr. 54:07-55:05 (clarifying to the Court that Mary and John Doe are not Make the Road members). Moreover, Make the Road never asserts that any members were placed or were likely to be placed in expedited removal after being in the United States for more than two years. JA-382 ¶¶98-101; JA-166-71. Indeed, Plaintiff admits its Doe members were never placed in expedited removal

proceedings at all, and the only identified members in removal proceedings are *in §240 proceedings—not* expedited ones. *Id.* Those Doe members thus did not even *encounter* any expedited removal procedures, let alone suffer any injury from alleged deficiencies in them. Make the Road thus lacks associational standing for this claim, *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C. Cir. 1996), and cannot secure relief for an injury that it has failed to show will affect *any* of its members. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Regardless, this claim fails on the merits because the statute and regulations provide all the process due for allowing an alien to demonstrate continuous presence. The district court was incorrect to assert that no procedures exist to identify individuals who have been present for more than two years. JA-35-38. Indeed, the statute and regulations plainly allow such claims to be raised and considered. Specifically, the alien has the burden to demonstrate that they are not subject to expedited-removal, including by showing two years of continuous physical presence, 8 C.F.R. §235.3(b)(1)(ii)—something that should not be difficult to prove. Guidance issued by ICE and Border Patrol to their officers provides both a list of documents aliens can use to

establish continuous presence and time to gather those documents. 2025 Guidance at 3; Border Patrol Guidance at 2. An alien has an opportunity to demonstrate continuous presence by offering evidence including banknotes, leases, deeds, licenses, bills, receipts, and employment records. 2025 Guidance at 3; Border Patrol Guidance at 2. And "[i]f an alien is unable to personally provide such evidence at the time of encounter but claims to have access to such evidence, the alien shall be permitted a brief but reasonable opportunity to obtain it or communicate with a third party to obtain such evidence." 2025 Guidance at 3; Border Patrol Guidance at 2.

Regardless, the statute places the burden on the alien to demonstrate continuous presence, making proof of at least two years' continuous presence analogous to an affirmative defense to expedited removal. Like in criminal cases, "[a]n affirmative defense stands differently; due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed." *Mitchell v. Scully*, 746 F.2d 951, 956-57 (2d Cir. 1984). The alleged deficiency in notice—for which there is

*zero* record evidence that any member of Make the Road has *ever* encountered—is thus not cognizable.

## II. The District Court's Order Irreparably Harms Defendants and the Equities Favor a Stay

The district court's order continues to significantly harm the Government and the public. The government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025).

The district court's order halts expedited-removal of potentially hundreds of thousands of inadmissible aliens from fifteen days to two years who are encountered more than 100 miles from the border, despite clear statutory authorization to expand expedited removal to those aliens. The order interferes with the Executive's constitutional and statutory responsibility to remove aliens who have no right to remain in the country—including aliens with criminal records. Gov't Stay Brief 25 (citing Castano Decl. ¶¶10, 12). The order continues to impose substantial administrative burdens by requiring DHS to litigate §240 removal hearings if it chooses to pursue removal. Castano Decl. ¶¶5, 7, 12-14. The consequence is reduced detention capacity for aliens who are

removal priorities. *Id.* ¶12. And longer detention times from §240 removal proceedings means the Government is still incurring additional cost to detain those aliens. *Id.* ¶11.

The harm to Defendants and the public interest outweighs Plaintiff's members' alleged harms. The streamlined expedited-removal process stems from Congress's decision to permit DHS to remove aliens expeditiously without the more cumbersome and duplicative §240 proceedings. *Id.* ¶¶5, 7, 12-14; *Thuraissigiam*, 591 U.S. at 108-09, 118. Plaintiff, meanwhile, has not established irreparable harm. It waited nearly five months after initiating this lawsuit to move for a stay. And Plaintiff does not even allege that any of its members are currently in expedited-removal proceedings. *Supra* pp. 21-24. Nor does Plaintiff dispute that the credible-fear process would provide members placed in expedited removal the opportunity to establish a "significant possibility" they have meritorious claims for asylum or protection. Gov't Merits Br. 44, 57. The balance of harms favors Defendants.

## III. The District Court's Overbroad Relief Exceeded its Authority

At minimum, the district court exceeded its authority by issuing a universal stay. Plaintiff sued on behalf of its members, and complete

relief is provided by a remedy that applies to those members it can identify as affected by the challenged agency actions.

Section 705 states a court may order relief only "to the extent necessary to prevent irreparable injury." 5 U.S.C. §705. The phrase "irreparable injury," in the context of interim equitable relief, refers to irreparable injury to the plaintiff—not third parties. *CASA, Inc.*, 606 U.S. at 841-46. The Ninth Circuit held *CASA*'s "complete-relief principle provides some useful guidance for crafting interim equitable relief" in §705 cases, which uses the same traditional equitable principles that govern the preliminary injunctions at issue in *CASA*. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 996 (9th Cir. 2025). That makes sense, given that Congress gave no clear command that §705 displaces "the party-specific principles that permeate our understanding of equity." *CASA*, 606 U.S. at 844; *Starbucks v. McKinney*, 602 U.S. 339, 346 (2024). Thus, the Ninth Circuit proceeded to "limit the district court's §705 Stay order" to plaintiff's clients under *CASA*. *Id*. This Court should do the same.

This Court should at least make clear that the district court's stay applies only to aliens who were never lawfully present in the country.

Plaintiff Make the Road asserted associational standing on behalf of four members who all entered the country unlawfully. JA-380-381 ¶¶98-101; *supra* p.21-24. Plaintiff does not identify any member who *entered* the country *lawfully*, *i.e.*, because they were granted humanitarian parole that was subsequently revoked. Plaintiff admitted it was not "suing on behalf of parolees" and claimed the district court's stay applies only to "nonparolees." Stay Hear. Tr. 83:01-05. The district court therefore lacked jurisdiction to stay agency actions beyond the context of aliens who entered the country unlawfully and are subject to expedited removal.

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

CAROLINE McGUIRE
*Senior Litigation Counsel*

ELISSA P. FUDIM
JOSEPH McCARTER
*Trial Attorneys*
U.S. Department of Justice,
Civil Division
Office of Immigration
Litigation
P.O. Box 868 Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*

/s/ *Drew C. Ensign*
DREW C. ENSIGN
*Deputy Assistant Attorney General*

Drew.C.Ensign@usdoj.gov
(202) 514-2000

TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil
Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dated: January 29, 2026

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5,150 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Century Schoolbook type.

/s/ *Drew C. Ensign*
Drew C. Ensign

Dated: January 29, 2026          Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


/s/ *Drew C. Ensign*
Drew C. Ensign

Dated: January 29, 2026          Attorney for Appellants