[DECIDED JUNE 23, 2026]

No. 25-05320

# United States Court of Appeals

## for the

## District of Columbia Circuit

_____

MAKE THE ROAD NEW YORK, et al.,

*Plaintiffs-Appellees*

v.

MARKWAYNE MULLIN, et al.,

*Defendants-Appellants*

_____

Appeal From the United States District Court for the District of Columbia
Case No. 1:25-cv-190-JMC (Hon. Jia M. Cobb)

_____

**APPELLEE'S PETITION FOR REHEARING EN BANC**

_____

Morgan Russell
Hannah Steinberg
Michael K.T. Tan
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*mrussell@aclu.org*
*hsteinberg@aclu.org*
*m.tan@aclu.org*
*cwofsy@aclu.org*

Lucia Goin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
(212) 549-2500
*lgoin@aclu.org*

Amy Belsher
Robert Hodgson
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

Anand Balakrishnan
*Counsel of Record*
Sidra Mahfooz
Grace Choi
Omar C. Jadwat
Lee Gelernt
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*smahfooz@aclu.org*
*gchoi@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Arthur B. Spitzer
Aditi Shah
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 420
Washington, D.C. 20045
(202) 457-0800
*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

    I.   Expedited Removal and the Challenged Directives......................................2

    II.  The District Court and Motions Panel Orders...............................................5

    III. The Government's Disclosures on Appeal ...................................................7

    IV. The Merits Panel Opinions...........................................................................9

ARGUMENT .....................................................................................................9

    I.   The Panel Opinion Conflicts with *A.A.R.P.* .................................................9

    II.  At Minimum, the Court Should Grant Rehearing and then Vacate and Remand for the District Court to Address the Adequacy of the Government's Actual Procedures in the First Instance................................14

    III. This Petition Raises a Question of Exceptional Importance that No Other Circuit Can Decide .....................................................................................16

CONCLUSION ................................................................................................18

CERTIFICATE OF COMPLIANCE..................................................................20

CERTIFICATE OF SERVICE ..........................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*A.A.R.P. v. Trump,*
  605 U.S. 91 (2025).................................................... 1, 6, 10, 11, 12, 13, 14

*Gordon v. Holder,*
  721 F.3d 638 (D.C. Cir. 2013)..............................................................15

*Grimm v. City of Portland,*
  971 F.3d 1060 (9th Cir. 2020) ............................................................16

*Marseille-Kliniken AG v. Republic of Equatorial Guinea,*
  153 F.4th 1262 (D.C. Cir. 2025)..........................................................16

*Mathews v. Eldridge,*
  424 U.S. 319 (1976)...............................................................5, 9, 16

*Memphis Light, Gas & Water Div. v. Craft,*
  436 U.S. 1 (1978)..........................................................................11

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950)...................................................................9, 11, 16

*In re Sealed Case,*
  80 F.4th 355 (D.C. Cir. 2023)..............................................................16

*Wye Oak Tech., Inc. v. Republic of Iraq,*
  24 F.4th 686 (D.C. Cir. 2022)..............................................................15

**Statutes**

5 U.S.C. § 705 ......................................................................................5

8 U.S.C. § 1182(a)(6)(C) .......................................................................3

8 U.S.C. § 1182(a)(7)............................................................................3

8 U.S.C. § 1225(b)(1)(A)(i) ...............................................................3, 4

8 U.S.C. § 1225 (b)(1)(A)(ii) ................................................................4

8 U.S.C. § 1225(b)(1)(A)(iii)(II)...........................................................3

8 U.S.C. § 1225(b)(1)(B)(v) ..................................................................................4

8 U.S.C. § 1229b .................................................................................................4

8 U.S.C. § 1252(a)(2)(A) ..................................................................................17

8 U.S.C. § 1252(e)(2) ...................................................................................13, 17

8 U.S.C. § 1252(e)(3) ..........................................................................................1

8 U.S.C. § 1252(e)(3)(A) ...................................................................................17

8 U.S.C. § 1252(e)(4) ...................................................................................13, 17

8 U.S.C. § 1252(e)(5) ...................................................................................13, 17

8 U.S.C. § 1255 ...................................................................................................4

## Rules & Regulations

8 C.F.R. § 235.3(b)(2)(i) .....................................................................................4

Fed. R. App. P. 40(b)(2)(B) ................................................................................1

Fed. R. App. P. 40(b)(2)(D) ................................................................................1

## Other Authorities

Designating Aliens for Expedited Removal,
   90 Fed. Reg. 8139 (Jan. 21, 2021) ..................................................................2

Madeleine Ngo, *Mullin Promises to Maintain Surge in Immigration
   Arrests Even After Shootings*, N.Y. Times (July 17, 2026) ..............................17

## INTRODUCTION AND RULE 40(b)(2) STATEMENT

En banc rehearing is warranted and badly needed. Under *A.A.R.P. v. Trump*, noncitizens facing summary removal must receive "information about how to exercise due process rights to contest that removal" that is sufficient to allow them to actually "pursue appropriate relief." 605 U.S. 91, 95 (2025). But the panel opinion lets the government order and effectuate the expedited removal of noncitizens in mere days or hours without *any* notice of the only way many of them can contest that removal: by showing that they have been continuously present in this country for at least two years. That holding "conflicts with [the] decision of the United States Supreme Court" in *A.A.R.P.*, and it presents a "question[] of exceptional importance" because it puts millions of longtime undocumented residents at risk of being erroneously subjected to summary removal. Fed. R. App. P. 40(b)(2)(B), (D). And only this Circuit can resolve that question. *See* 8 U.S.C. § 1252(e)(3).

At minimum, because the government failed to disclose its actual procedures implementing the challenged directives below, this Court should vacate both the panel decision and the order below and remand for the district court to analyze those procedures in the first instance.

1

## BACKGROUND

### I.    Expedited Removal and the Challenged Directives

Expedited removal authorizes immigration officers to summarily arrest, detain, and remove noncitizens. Removal orders are usually issued within a few days of apprehension, if not hours, and removal can follow immediately thereafter. Add.113.

Since its inception in 1996, the use of expedited removal has been largely limited to individuals arriving at a port of entry and to those apprehended within 14 days of their entry and within 100 miles of the border. Add.62.

On January 21, 2025, the Acting Secretary of the Department of Homeland Security ("DHS") authorized the expedited removal of certain noncitizens arrested anywhere in the country who cannot show at least two years continuous presence "to the satisfaction of an immigration officer." 90 Fed. Reg. 8139, 8139 ("Designation"). On January 23, 2025, the Acting Secretary issued a memorandum to DHS officers to consider expedited removal "[f]or any noncitizen DHS is aware of who is amenable to expedited removal." JA-192-93 ("Memorandum").

A person placed in expedited removal is detained until their removal, and the immigration officer's determinations are reviewed "only on paper by a supervisor and [are] not subject to administrative appeal." Add.68. By statute, judicial review is severely limited. Add.69-70.

2

Congress initially applied expedited removal to certain noncitizens "arriving in the United States" who are determined to be inadmissible for lack of valid entry documents or fraud. 8 U.S.C. § 1225(b)(1)(A)(i) (referencing 8 U.S.C. §§ 1182(a)(6)(C), 1182(a)(7)). However, the DHS Secretary may "designate for Expedited Removal 'any or all aliens'" inadmissible under those two enumerated grounds "who have not been admitted or paroled and have not 'affirmatively shown' to an immigration officer's satisfaction that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of the inadmissibility.'" Add.67 (quoting 8 U.S.C. § 1225(b)(1)(A)(iii)(II)).

Expedited removal begins and often ends when an immigration officer determines a noncitizen is inadmissible under one the covered grounds and orders them removed. But Congress has provided noncitizens who lack permanent lawful status and are inadmissible as charged limited ways to seek relief from expedited removal.

First, a noncitizen can seek to "affirmatively show[], to the satisfaction of an immigration officer," that they have been "physically present in the United States continuously for [a] 2-year period." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Second, if a noncitizen "indicates either an intention to apply for asylum" or "fear of persecution," the case is referred for a "credible fear" interview where the noncitizen

must demonstrate a "significant possibility" of establishing asylum eligibility. *Id.* § 1225(b)(1)(A)(i)-(ii), (B)(v). Noncitizens who make either showing are ineligible for expedited removal and must receive regular removal proceedings.[1]

The central disagreement between the five judges of this Court who have reviewed this case to date concerns the adequacy of notice given to noncitizens in expedited removal proceedings. Notice is provided via two forms: Form I-867AB, which includes a statement and questions that must be read to noncitizens; and Form I-860, the expedited removal order itself, which contains the charges of inadmissibility. 8 C.F.R. § 235.3(b)(2)(i); Add.55-56, 119-20; *see* Add.32 (quoting Form I-860).

The version of Form I-867AB in the record developed below was created in 1997 for use at the border and required officers to first inform noncitizens of the availability of protection from persecution and torture and the importance of raising any fear of removal "because [they] may not have another chance"; and then to specifically ask whether noncitizens fear being harmed if removed. Add.119-20; JA-34-35, 259.

---

[1] In expedited removal proceedings, noncitizens cannot pursue several forms of relief, such as adjustment of status or cancellation of removal, which are available in regular removal proceedings. *See* 8 U.S.C. §§ 1229b, 1255.

After the district court had ruled, and after two arguments in this Court, the government revealed that it had in fact revised Form-I867AB in February 2025 to eliminate both the asylum advisals and fear-related questions. *Infra* 7-8.

Neither the longstanding version of Form I-867AB in the record nor the new version disclosed on appeal require officers to provide any notice to the noncitizen that they should "inform the officer if [they have] been present in the United States continuously for two or more years." Add.120. The result is that even noncitizens who have lived in the United States continuously for two years or much longer can be quickly removed with no notice at all that they are not in fact subject to expedited removal. For example, Plaintiffs Mary and John Doe, a mother and son who had lived in the United States for ten years, were arrested, placed in expedited removal, and removed to Mexico within a day of being detained. Add.113-14.

Appellee Make the Road New York, a nonprofit, membership-based organization serving immigrant and working-class communities, joined with Mary and John Doe to challenge the Designation and Memorandum. Add.73.

## II.    The District Court and Motions Panel Orders

On August 29, 2025, the district court stayed the challenged directives under 5 U.S.C. § 705. JA-1-49. Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court concluded that appellee's members and others at risk of expedited removal under the Designation and Memorandum have a weighty liberty interest in

remaining in this country and that the procedures those directives impose create an intolerable risk of error because they (1) fail to require notice to noncitizens "that they are only subject to expedited removal if they have been present less than two years" or provide meaningful opportunity to demonstrate how long they have been present; and (2) fail to require adequate protections to identify asylum seekers. JA-31-37.

The government moved to stay the district court's order pending appeal. After briefing and oral argument, a motions panel denied the government's motion "except to the extent that the district court's order required any changes to the procedures for determining credible fear." Add.61. Judge Rao dissented on threshold grounds. Add.142-60.

The motions panel reasoned that under *A.A.R.P.*, due process requires the government to "afford detained persons notice and some reasonable opportunity to meet" their "burden of proving two-year residency." Add.118 (citing *A.A.R.P.*, 605 U.S. at 94-95). The panel explained that *A.A.R.P.* dictates that such notice "'must' afford detained individuals 'sufficient time and information to reasonably be able to' demonstrate their ineligibility for Expedited Removal." Add.125 (quoting *A.A.R.P.*, 605 U.S. at 95).

The motions panel rejected the government's position that it need not provide notice of "every possible defense to expedited removal," explaining that because the

continuous presence provision "forecloses the application of Expedited Removal to an entire category of persons," due process requires basic notice and opportunity to be heard "to ensure compliance with that restriction on [the government's] power." Add.122.

However, the motions panel stayed the district court's order insofar as it required changes to asylum screening procedures. Relying on the Form I-867AB in the record, it reasoned that, "unlike the procedures' marked silence with respect to residency length," officers provided "affirmative and official notice to individuals that their fear of harm is relevant to their potential removal through the immigration officer's repeated raising of the issue." Add.127.

### III.  The Government's Disclosures on Appeal

The record below reflected the government's representations to the district court in June 2025 that the procedures in place under the Designation and Memorandum "have been in place for nearly 27 years." D. Ct. ECF No. 56 (Defendants' Opposition to Section 705 Motion) at 2; *accord id.* at 18 (asserting relevant procedures "have been in place since the statute's adoption decades ago"). As the district court noted, "the Government's briefing had nothing to say about how immigration officers determine whether an individual has been present for fewer than two years." JA-40. Even after being "asked at oral argument" about any such procedures, the government never thereafter "provide[d] an answer." JA-40.

However, in a series of disclosures spanning several months during this appeal, the government revealed that its representations to the court below were inaccurate. The government asserted that two types of policy changes had been in place throughout the proceedings below. First, in October and December 2025, the government filed guidance documents and emails from January and February 2025, which it argued showed that DHS had instituted some procedures for noncitizens subjected to the challenged directives to attempt to show continuous presence. *See* Appellants' Brief 10, 50-51 (Oct. 20, 2025); Appellants' Letter, Doc. No. 2151957 (Dec. 23, 2025).[2]

Second, in January 2026, in a renewed motion for a stay pending appeal, which the merits panel denied, the government disclosed that in early February 2025, DHS had eliminated both the asylum-related notice and the specific questions about fear of removal from Form I-867AB. *See* Appellants' Renewed Emergency Motion for Stay Pending Appeal 19-20 n.2 (Jan. 29, 2026); Appellants' Corrected Reply in Support of Renewed Motion for Stay Pending Appeal 4 (Feb. 18, 2026).

---

[2] In its original motion for a stay pending appeal, the government asserted for the first time that detained noncitizens who "*sua sponte* raise their ineligibility for Expedited Removal on residency grounds" can attempt to demonstrate their residency by "offer[ing] evidence like 'banknotes, leases, deeds, licenses, bills, receipts, employment records, and the like.'" Add.121. But the government did not produce any current guidance to that effect at the stay stage.

## IV.    The Merits Panel Opinions

On June 23, 2026, the merits panel vacated the district court's order and held that the Designation and Memorandum do not violate due process. Add.30.

The panel first concluded that the district court had erred by applying the *Mathews* balancing test and that *A.A.R.P.* instead "favors application of" the notice-specific standard set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Add.30. The merits panel therefore agreed with the motions panel that *A.A.R.P.* governs this case. But it then reached the opposite outcome, reasoning that *A.A.R.P.* does not require the government "to instruct individuals on available defenses" against removal. Add.33. Judge Wilkins dissented, concluding that the failure to ask or advise about the two-year limit on the use of expedited removal violates due process. Add.56-57.

On July 17, 2026, the merits panel fully stayed the district court's order pending issuance of the mandate.

## ARGUMENT

## I.    The Panel Opinion Conflicts with *A.A.R.P.*

For reasons that Judges Millett, Childs, and Wilkins have explained, the merits panel's due process holding conflicts with *A.A.R.P.* The merits panel acknowledged that *A.A.R.P.* governs this case but characterized the two-year limitation as a "defense[] or exemption[]" for which *A.A.R.P.* does not require

notice. Add.33. Under the panel's view, the fact that an expedited removal order lists the charged U.S. Code section satisfies due process. Add.32. That squarely conflicts with *A.A.R.P.*

Like the form on which the panel relied here, the notice in *A.A.R.P.* provided the statutory charge of removal. *See* Appendix to Emergency Application for Emergency Injunction 64-65, *A.A.R.P. v. Trump*, 605 U.S. 91 (2025) (No. 24-1177) (reproducing notice). But it nowhere informed noncitizens that they could contest summary removal by filing a habeas petition in district court. *Id.* The Supreme Court held the notice "surely [did] not pass constitutional muster" because it was "devoid of information about how to *exercise* due process rights to *contest that removal*." 605 U.S. at 95 (emphasis added). Adequate notice instead had to be provided "in such a manner as will allow them to *actually seek* habeas relief," which would entail not just "sufficient time" but also the "*information* to reasonably be able to contact counsel, file a petition, and *pursue appropriate relief*." *Id.* (emphasis added).

For appellee's members and longtime undocumented resident noncitizens across the country who now face being detained and charged with expedited removal under the challenged directives, the *only* "information" that would allow them to actually "contest that removal" is the fact that they are not subject to expedited removal if they can show they have been present for at least two years. *See id.* By permitting the government to withhold what is for so many people the sole piece of

10

information relevant to actually contesting removal, the panel opinion turns the notice requirement into the sort of "mere gesture" the Supreme Court has warned against. *Mullane*, 339 U.S. at 315.

The merits opinion's attempts to distinguish *A.A.R.P.* fail. First, the panel reasoned that notice need not be given of an "available defense[.]" Add.33. But that distinction has no basis in *A.A.R.P.*, which required notice that would allow noncitizens to "actually seek habeas *relief.*" 605 U.S. at 95 (emphasis added). More than mere notice of a defense that noncitizens could raise at the time, that meant providing "information" that would permit noncitizens "to contact counsel" and "*file a petition*"—that is, to initiate an affirmative lawsuit in district court distinct from the administrative removal process. *Id.* (emphasis added).

The merits panel sought to justify its "available defense[]" distinction as "well established in the context of criminal law." Add.34. But a criminal defendant has the right to counsel (appointed if needed), time to work with counsel to investigate all possible defenses, trial, and appeal. Undocumented noncitizens charged with expedited removal have no such rights, which makes notice of the limited ways they *can* contest summary removal critical. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13-15 (1978) (reiterating that *Mullane* requires notice tailored to the circumstances and holding in non-criminal context that due process required government agency to "notify the [individual] of the availability of an avenue of

11

redress"). The precedent governing in the summary removal context is *A.A.R.P.*, which held that notice must include not just the removal charge but "information about how to exercise due process rights to contest that removal." 605 U.S. at 695.

*A.A.R.P.* therefore supports the conclusion, reached by three judges of this Court, that notice of the two-year continuous presence requirement is required because it is a key legislative limit on the agency's power. The statute categorically "forecloses the application of Expedited Removal to an entire category of persons" present for at least two years. Add.122 (Millett & Childs, JJ.); *accord* Add.54 (Wilkins, J.) (DHS has "no authority to remove [such] individuals … using expedited removal"). That the statute places the burden on the noncitizen and not the government to demonstrate continuous presence only underscores why notice is necessary. As the motions panel explained, noncitizens "are not informed that they are facing a form of summary removal that could be cut off by evidence of continuous residence, so they do not even know to raise the issue." Add.121-22; *accord* Add.55 (Wilkins, J.).

Second, the merits panel reasoned that the understanding of *A.A.R.P.* adopted by Judges Millett, Childs, and Wilkins "would require immigration officers to provide what amounts to legal advice," Add.35, but that *A.A.R.P.* did not require the government to provide detainees a "memo about whether Tren de Aragua was an arm of the Maduro regime, walk them through a corpus linguistics of 'invasion' as

12

it was understood in 1798, or explain the XYZ Affair and the Quasi-War with France to provide historical context for the [Alien Enemies] Act." Add.34. That straw man does not accurately characterize the view expressed by three members of this Court, who instead recognized that the government must give noncitizens basic factual "information about *how* … to contest [their summary] removal." *A.A.R.P.*, 605 U.S. at 695 (emphasis added).

Finally, the merits panel reasoned that due process was satisfied because 8 U.S.C. § 1252(e)(2) permits some noncitizens to contest expedited removal in habeas and "the challenged directives [do not] prevent aliens from pursuing [this] limited relief that Congress has allowed." Add.35-36. But § 1252(e)(2) limits the grounds for relief to showing that one is a citizen or has permanent lawful status. *See also* 8 U.S.C. § 1252(e)(4)-(5). It is therefore irrelevant to the millions of noncitizens without lawful status who have been living in this country for years. For *those* noncitizens, Congress has provided other "statutory limits on [the government's] removal power," Add.122 (Millett & Childs, JJ.): the government has "no authority" to remove noncitizens with credible asylum claims or two years of continuous presence, Add.54 (Wilkins, J.).[3]

---

[3] Because there are so few bases on which undocumented noncitizens can contest expedited removal, the panel was mistaken to assert that there is no "limiting principle" to the view of *A.A.R.P.* expressed by other members of the Court. *See* Add.35.

For decades, the government recognized the need to provide straightforward notice of the first issue. *See* Add.119-20 (Millett & Childs, JJ.). To lawfully expand expedited removal away from the border, straightforward notice of the second is needed. *Id.* at 117, 120-21; Add.56 (Wilkins, J.). The vast majority of undocumented individuals present have been living here for over two years—and "are thus statutorily ineligible for Expedited Removal if given a chance to prove the duration of their residence." Add.117. And "those living further away from the border … are less likely to have recently entered[.]" *Id.*

On this point too, *A.A.R.P.* squarely controls. Under the Alien Enemies Act, noncitizens must receive notice that permits them to "actually seek habeas relief." *A.A.R.P.*, 605 U.S. at 95 (cleaned up). For many—perhaps most—undocumented noncitizens, showing adequate continuous presence is the only way to avoid expedited removal and receive a full hearing. A notice "devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster." *Id.*

## II.    At Minimum, the Court Should Grant Rehearing and then Vacate and Remand for the District Court to Address the Adequacy of the Government's Actual Procedures in the First Instance.

The government's extraordinary series of untimely disclosures over the course of the appeal supports vacatur, even if the Court chooses at this time not to take the case en banc. *Cf. A.A.R.P.*, 605 U.S. at 95 ("[I]t is not optimal for this Court, far

removed from the circumstances on the ground, to determine in the first instance the precise process necessary to satisfy the Constitution in this case.").

Because of the government's belated disclosures, the record does not reflect the actual procedures in place—or even the procedures that were in place during the district court proceedings. *Supra* 7-8. The government failed to disclose its procedures even when directly asked by the district court. Add.56 n.1; JA-40. The government instead told the district court that all relevant procedures "have been in place for nearly 27 years." D. Ct. ECF No. 56 at 2. Only on appeal did the government begin asserting that it had new procedures in place—and even then its disclosures were piecemeal and constantly evolving. Nonetheless, the government repeatedly argued that these newly disclosed procedures, not before the district court, were relevant to the merits of appellants' due process claim. *E.g.,* Appellants' Brief 50-51; Appellants' Reply 21-23.

Once the extent of the government's failure to inform the district court of its actual procedures became clear, appellee urged the merits panel to remand so that the district court could consider these newly disclosed procedures in the first instance. *See* Appellee's Opposition to Appellants' Renewed Emergency Motion for Stay Pending Appeal 3-4, 13-14 (Feb. 9, 2026); *see, e.g.*, *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 703 (D.C. Cir. 2022); *Gordon v. Holder*, 721 F.3d 638, 651-52 (D.C. Cir. 2013).

But rather than remanding, the merits panel took up the constitutional questions itself. It did so even after faulting the district court for applying *Mathews* rather than *Mullane* to address appellee's due process claims. Add.30-31. But if the district court failed to apply the correct legal standard—perhaps because the government never argued below that *Mullane* applies—that was even more reason to simply remand. *E.g.*, *In re Sealed Case*, 80 F.4th 355, 367, 371, 373 (D.C. Cir. 2023) (remanding for application of correct standard in first instance); *Grimm v. City of Portland*, 971 F.3d 1060, 1068 (9th Cir. 2020) (clarifying that *Mullane* applied and remanding for its application in first instance).

Instead, the panel's sweeping holding risks foreclosing the district court from ever ascertaining and assessing the actual procedures the government has in place. The district court should have that opportunity, which would permit this Court to address these important constitutional issues on an accurate record and in a manner consistent with its role as "a court of review, not of first view." *Marseille-Kliniken AG v. Republic of Equatorial Guinea*, 153 F.4th 1262, 1271 (D.C. Cir. 2025).

## III. This Petition Raises a Question of Exceptional Importance that No Other Circuit Can Decide

The panel opinion gives the government a free hand to summarily shuttle thousands of such longtime undocumented residents out of the country "within a few days, if not hours," without any notice of how they may seek relief from expedited removal—as happened to plaintiffs Mary and John Doe despite their ten years of

16

continuous residence. Add.65; *see id.* at 74, 113. The opinion puts millions of others at risk of the same fate, since "the 'vast majority' of undocumented individuals present in the United States have been living here for over two years." Add.117. The administration's actions that led to *A.A.R.P.* leave little doubt of its desire to quickly remove large numbers of people with no questions asked. Indeed, in late June— contemporaneously with the panel opinion—DHS imposed an aggressive new "standard of 2,000 arrests a day," leading to record-high immigration arrests at "roughly double the rate of earlier this year."[4]

And this Court of Appeals alone can review whether the government's decision to expand expedited removal nationwide without requiring notice of that limitation violates due process. 8 U.S.C. § 1252(e)(3)(A) (placing review of expedited removal directives solely in D.C. district court). By statute, those erroneously removed due to the panel's decision have no judicial recourse to challenge the violation of the continuous residence limitation in their individual cases. *See* 8 U.S.C. § 1252(a)(2)(A), (e)(2), (e)(4)-(5).

---

[4] Madeleine Ngo, *Mullin Promises to Maintain Surge in Immigration Arrests Even After Shootings*, N.Y. Times (July 17, 2026), https://www.nytimes.com/2026/07/17/us/politics/mullin-ice-shootings-arrests.html.

**CONCLUSION**

The Court should grant rehearing en banc of the merits panel's decision. At minimum, the Court should vacate and remand to the district court to consider in the first instance the effect of the government's recently revealed procedures.

Dated: July 27, 2026

Morgan Russell
Hannah Steinberg
Michael K.T. Tan
Cody Wofsy
American Civil Liberties Union
Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*mrussell@aclu.org*
*hsteinberg@aclu.org*
*m.tan@aclu.org*
*cwofsy@aclu.org*

Lucia Goin
American Civil Liberties Union
Foundation
Immigrants' Rights Project
915 15th Street NW
Washington, DC 20005
(212) 549-2500
*lgoin@aclu.org*

Amy Belsher
Robert Hodgson

Respectfully submitted,

*/s/ Anand Balakrishnan*
Anand Balakrishnan
*Counsel of Record*
Sidra Mahfooz
Grace Choi
Omar C. Jadwat
Lee Gelernt
American Civil Liberties Union
Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*smahfooz@aclu.org*
*gchoi@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Arthur B. Spitzer
Aditi Shah
American Civil Liberties Union
Foundation of the District of Columbia
529 14th Street, NW, Suite 420
Washington, D.C. 20045
(202) 457-0800

18

New York Civil Liberties Union
Foundation
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs-Appellees*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that the preceding document complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A), because it contains 3,887 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Anand Balakrishnan*
Anand Balakrishnan
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*

20

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2026, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Anand Balakrishnan
Anand Balakrishnan
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
abalakrishnan@aclu.org

21